**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Maia Kats
*mkats@cspinet.org*
William Thanhauser
*wthanhauser@cspinet.org*
1220 L Street, Northwest, Suite 300
Washington, District of Columbia  20005
Telephone: (202) 777-8381
Facsimile: (202) 265-4954

**MEHRI & SKALET, PLLC**
Steven A. Skalet
*sskalet@findjustice.com*
Craig L. Briskin
*cbriskin@findjustice.com*
1250 Connecticut Avenue, Northwest, Suite 300
Washington, District of Columbia  20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTEN MANTIKAS, KRISTIN BURNS, and LINDA CASTLE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG COMPANY,<br><br>Defendant. | No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Kristen Mantikas, Kristin Burns, and Linda Castle (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Classes," as defined below), by and through their undersigned counsel, bring this Class Action Complaint against Kellogg Company ("Kellogg" or "Defendant") and respectfully allege as follows. Plaintiffs base the allegations herein on personal knowledge as to matters related to, and known to, Plaintiffs. As to all other matters, Plaintiffs base the allegations on information and belief, through investigation of their counsel. Plaintiffs believe substantial evidentiary support exists for their claims, and they seek a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      "Cheez-It Whole Grain" is a cracker that Kellogg manufactures, markets, and sells through major retail stores nationwide.

2.      Kellogg promotes Cheez-It Whole Grain crackers as "whole grain" crackers. Kellogg conspicuously labels the product as "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" (collectively "WHOLE GRAIN") on the front of the box.

3.      Kellogg's "WHOLE GRAIN" representation, however, is false and misleading, because the primary ingredient in Cheez-It Whole Grain crackers is enriched white flour.  White flour is refined so that only the endosperm of the wheat remains, which is mostly starch.  The bran and germ, which are high in fiber, vitamins, minerals, antioxidants and other nutrients, are removed.

4.      The 2015 Dietary Guidelines for Americans recommends that at least half of the grains in a healthy diet should be whole grains.[1]

---

[1] U.S. Dep't of Agric. and U.S. Dep't of Health & Human Servs., *Dietary Guidelines for Americans 2015–2020* (8th ed. 2015), *available at* http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").

5.      Cheez-It Whole Grain crackers are virtually indistinct nutritionally from Cheez-It Original crackers.  They contain only one gram of dietary fiber per serving.  Neither Whole Grain variety increases whole grains beyond half, as recommend by the Dietary Guidelines.

6.      Thus, Cheez-It Whole Grain crackers are not predominantly whole grain, despite the reasonable expectations that Kellogg has created by distinguishing Cheez-It Whole Grain crackers from other crackers in the "Cheez-It" product line by denominating them "WHOLE GRAIN."

7.      By contrast, Nabisco Wheat Thins Whole Grain are 100% whole grain, as are Nabisco Triscuit crackers.  Similarly, Pepperidge Farm Goldfish "Baked With Whole Grain" are predominantly whole grain flour (whole wheat flour being the first ingredient).

8.      Plaintiffs would not have purchased or paid more for Cheez-It Whole Grain crackers had they known the product contains more refined grain than whole grain.

9.      Plaintiffs seek damages, other monetary relief, declaratory relief, and an order enjoining Kellogg from continuing its false and misleading marketing of Cheez-It Whole Grain crackers.

**PARTIES**

**Plaintiff Kristen Mantikas**

10.     Plaintiff Kristen Mantikas is a resident of New York.

11.     Ms. Mantikas purchased Cheez-It Whole Grain crackers on a regular basis, i.e., about once per week, for her son and herself, from Stop and Shop and Target in Glen Cove, New York.

12.     The packaging of the Cheez-It Whole Grain crackers that Ms. Mantikas purchased contained the representation that they were "WHOLE GRAIN" on the front in large font.

13.     Ms. Mantikas believed Defendant's representation that the Cheez-It crackers were "WHOLE GRAIN." She relied on the "WHOLE GRAIN" representation in making her purchase decisions, and would not have purchased the products had she known they were not, in fact, predominantly whole grain.

14.     Ms. Mantikas paid for "WHOLE GRAIN" Cheez-It crackers, but she received products that were not predominantly whole grain.

15.     Ms. Mantikas purchased, purchased more of, or paid more for, the Cheez-It Whole Grain crackers than she would have had she known the truth about the products.

16.     The Cheez-It Whole Grain crackers that Ms. Mantikas received were worth less than the crackers for which she paid. Ms. Mantikas was injured in fact and lost money as a result of Defendant's improper conduct.

17.     If Ms. Mantikas knew the Cheez-It Whole Grain crackers' labels were truthful and non-misleading, she would continue to purchase the products in the future. At present, however, Ms. Mantikas cannot purchase the products because she cannot be confident that the labeling of the products is, and will be, truthful and non-misleading.

**<u>Plaintiff Kristin Burns</u>**

18.     Plaintiff Kristin Burns is a resident of California.

19.     Ms. Burns purchased Cheez-It Whole Grain crackers for her son and husband as a snack on a regular basis (consuming approximately one box every week) for several years from Safeway in San Jose, California.

20.     Ms. Burns seeks out "whole grain" versions of products such as bread and crackers because she believes they are predominantly whole grain and because she knows that whole grain products are healthier than refined grain products.

21.     The packaging of the Cheez-It Whole Grain crackers that Ms. Burns purchased contained the representation that they were "WHOLE GRAIN" on the front in conspicuous font.

22.     Ms. Burns believed Defendant's representation that the Cheez-It crackers were "WHOLE GRAIN." She relied on the "WHOLE GRAIN" representation in making her purchase decisions and would not have purchased the products had she known they were not, in fact, predominantly whole grain.

23.     Ms. Burns paid for "WHOLE GRAIN" Cheez-It crackers, but she received products that were not predominantly whole grain.

24.     Had Defendant not made the false and misleading representation that the Cheez-It Whole Grain crackers were "WHOLE GRAIN," Ms. Burns would not have been willing to pay the same amount for the products, and, consequently, she would not have been willing to purchase the products.

25.     Ms. Burns purchased, purchased more of, or paid more for, the Cheez-It Whole Grain crackers than she would have had she known the truth about the products.

26.     The Cheez-It Whole Grain crackers that Ms. Burns received were worth less than the crackers for which she paid. Ms. Burns was injured in fact and lost money as a result of Defendant's improper conduct.

27.     If Ms. Burns knew the Cheez-It Whole Grain crackers' labels were truthful and non-misleading, she would continue to purchase the products in the future. At present, however, Ms. Burns cannot purchase the products because she cannot be confident that the labeling of the products is, and will be, truthful and non-misleading.

**Plaintiff Linda Castle**

28.     Plaintiff Linda Castle is a resident of California.

29.     In 2013, Ms. Castle purchased Cheez-It Whole Grain crackers approximately three times for herself from Ralph's Market in Torrance, California.

30.     The packaging of the Cheez-It Whole Grain crackers that Ms. Castle purchased contained the representation that they were "WHOLE GRAIN" on the front in conspicuous font.

31.     Ms. Castle believed Defendant's representation that the Cheez-It crackers were "WHOLE GRAIN." She relied on the "WHOLE GRAIN" representation in making her purchase decisions and would not have purchased the products had she known they were not, in fact, predominantly whole grain.

32.     Ms. Castle paid for "WHOLE GRAIN" Cheez-It crackers, but she received products that were not predominantly whole grain.

33.     Ms. Castle purchased, purchased more of, or paid more for, the Cheez-It Whole Grain crackers than she would have had she known the truth about the products.

34.     The Cheez-It Whole Grain crackers that Ms. Castle received were worth less than the crackers for which she paid. Ms. Castle was injured in fact and lost money as a result of Defendant's improper conduct.

35.     If Ms. Castle knew the Cheez-It Whole Grain crackers' labels were truthful and non-misleading, she would continue to purchase the products in the future. At present, however, Ms. Castle cannot purchase the products because she cannot be confident that the labeling of the products is, and will be, truthful and non-misleading.

**Defendant Kellogg Company**

36.     Defendant Kellogg Company is a public corporation organized and existing under the laws of the State of Delaware.

37.     Kellogg's principal place of business is located at One Kellogg Square, Battle

Creek, Michigan 49016.

38.     Kellogg is one of the world's largest food companies, producing and marketing products under the "Cheez-It" brand name throughout New York, California, and the rest of the United States.

39.     Kellogg acquired the "Cheez-It" brand in 2001 as part of its acquisition of Keebler Foods Company.

## JURISDICTION AND VENUE

### Jurisdiction

40.     This Court has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because Plaintiffs are citizens of New York and California, and Defendant is a citizen of Delaware and Michigan, at least one member of the plaintiff class is a citizen of a State different from Defendant. Further, Plaintiffs allege the matter in controversy is well in excess of $5,000,000 in the aggregate, exclusive of interest and costs. Finally, Plaintiffs allege "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

41.     This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: Plaintiffs' claims arise out of Defendant's conduct within New York, including Defendant's dissemination of false and misleading representations about Cheez-It

Whole Grain crackers in New York.

**Venue**

42.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District, including Ms. Mantikas's purchases of Cheez-It Whole Grain crackers based on Defendant's dissemination of false and misleading information about the nature, quality, and ingredients of Cheez-It Whole Grain crackers.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### I.     Whole Grains Are Nutritionally Superior to Non-Whole Grains

43.     "Whole grains" are grains that include the entire grain seed—its endosperm, bran, and germ.[2]

44.     The bran and germ of a grain seed contain important nutrients, including dietary fiber, iron, zinc, folate, magnesium, thiamin, niacin, selenium, riboflavin, manganese, copper, vitamin A, and vitamin B6.[3] "Non-whole grains" or "refined grains" have been processed to remove their bran and germ, thereby removing the dietary fiber and most other nutrients.[4]

45.     Most refined grains are enriched, a process that adds back *some* of the previously removed iron and B vitamins (thiamin, riboflavin, niacin, and folic acid). Because of this process, the term "enriched" is often used to describe these refined grains.[5]   Other nutrients, including vitamin E, vitamin B6, vitamin K, magnesium, manganese, potassium, phosphorus, copper,

---

[2] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 1, at Ch. 1 (click "A Closer Look Inside Healthy Eating Patterns").

[3] *Id.*

[4] *Id.*

[5] AM. HEART ASS'N, *Whole Grains and Fiber*, HEART.ORG (2016), http://goo.gl/3g1XVF.

calcium, and selenium, are not added back in.[6] Significantly, the fiber removed is not replaced.

46. The Scientific Report of the 2015 Dietary Guidelines Advisory Committee found "strong and consistent evidence" demonstrating that higher consumption of whole grains and lower intakes of refined grains is associated with decreased risk of cardiovascular disease.[7] The Dietary Guidelines itself recommends that Americans dramatically increase their intake of whole grains, and that at least 50% of grains consumed be whole grains.[8]

## II. Consumers Increasingly Prefer Whole Grain Products

47. Consumers, cognizant of the healthfulness of whole grains relative to non-whole grains, are increasingly purchasing whole grain products. A 2015 survey found that 64% of Americans claim to have increased their whole grain consumption in the past five years, and consumer strategists anticipate this trend growing in the future.[9]

48. As of 2015, 31% of Americans report that they now "nearly always" choose whole grains over non-whole grains, compared to only 4% five years ago.[10]

---

[6] THE WHOLE GRAINS COUNCIL, NUTRIENTS IN WHEAT FLOUR: WHOLE, REFINED AND ENRICHED (2010), http://goo.gl/rbl80Z (last viewed May 18, 2016).

[7] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Scientific Report of the 2015 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Health and Human Services and the Secretary of Agriculture*, at Part D, Chapter 2, pp. 8–9 (Feb. 2015), *available at* http://goo.gl/YjXWlr.

[8] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 1, at Ch. 1 & 2 (click "A Closer Look at Current Intakes and Recommended Shifts"); *see also* U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 7, at Part D, Chapter 2, pp. 8–9.

[9] Eric Schroeder, *Survey Shows Spike in Whole Grains Consumption*, FOOD BUS. NEWS, Aug. 31, 2015, *available at* http://goo.gl/BRupWU; Elizabeth Crawford, *7 Trends Influencing the Evolution of Health, Wellness and Consumers' Views of Food*, FOODNAVIGATOR-USA.COM (Jan. 15, 2016, 10:36 AM), http://goo.gl/aCqb7e (identifying "the emerging focus on ancient grains" as one of seven consumer food trends to grow in 2016).

[10] Schroeder, *supra* note 9.

### III.    Kellogg Markets Cheez-It Whole Grain Crackers as a "Whole Grain" Product

49.     The Federal Trade Commission ("FTC") has stated that consumers are likely to perceive unqualified whole grain claims to mean that a product is 100% or nearly 100% whole grain.[11]

50.     In conspicuous, capitalized, and high-contrast font across five of the six package panels, including the principal display panel ("PDP"), Kellogg labels the Cheez-It crackers at issue as "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN."

**Illustration 1**



51.     By contrast, Kellogg prominently labels Cheez-It Original crackers with the word "ORIGINAL."

---

[11] Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission, *In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements*, Docket No. 2006-0066, at 13 (Apr. 18, 2006), *available at* https://goo.gl/WqvBqi.

**Illustration 2**



## IV.   Kellogg's Marketing of Cheez-It Whole Grain Crackers Is False and Misleading, as the Product Contains Mostly Non-Whole Grains and Contains Only a Small Amount of Whole Grains

52.     Cheez-It Whole Grain crackers are not predominantly whole grain, as advertised. Their primary ingredient is enriched flour. Whole wheat flour is the third ingredient, after "soybean and palm oil with TBHQ for freshness," or more recently in some instances the second ingredient.

53.     In small print on the front of the Cheez-It Whole Grain box, Kellogg states that the product has 5 grams—or sometimes 8 grams—of whole grain per serving. Nothing else on the box provides any context for how much 5 or 8 grams of whole grain is, in relationship to the much larger amount of refined grain.

54.     The Dietary Guidelines recommends that someone consuming 2,000 calories per day consume 3 ounce-equivalents—or, about 50 grams—of whole grains per day.  Moreover, the Dietary Guidelines recommends that at least 50% of grains consumed be whole grains, and encourages Americans to shift from refined to whole grain consumption.

55.     Absent context, as both the FDA and the FTC have warned, consumers can be misled by statements about whole grain foods.[12]

## RELIANCE AND ECONOMIC INJURY

56.     When purchasing Cheez-It Whole Grain crackers, Plaintiffs sought a product that was predominantly whole grain.

57.     Plaintiffs read and relied on Kellogg's false and misleading labeling in purchasing Cheez-It Whole Grain crackers, including the representation that the crackers were "WHOLE GRAIN."

58.     Plaintiffs would not have purchased Cheez-It Whole Grain crackers absent these misrepresentations.

59.     Instead of receiving a product that contained predominantly whole grains, Plaintiffs received a product that had more refined, non-whole grains than whole grains.

60.     Plaintiffs lost money as a result of Kellogg's deception because Plaintiffs did not receive the product they sought to purchase.

61.     Plaintiffs altered their positions to their detriment and suffered damages as a consequence of purchasing Cheez-It Whole Grain crackers.

62.     Plaintiffs would purchase Cheez-It Whole Grain crackers again in the future, should the product have the whole grain attributes that Kellogg advertised and labeled.

63.     By engaging in the false and misleading marketing set forth herein, Kellogg reaped, and continues to reap, increased sales and profits.

64.     Kellogg is familiar with marketing research and knows that many of its customers

---

[12] Comments, *supra* note 11, at 3–4; Experimental Study on Consumer Responses to Whole Grain Labeling Statements on Food Packages, 77 Fed. Reg. 11,547, 11,547 (Feb. 27, 2012), *available at* https://goo.gl/aW0Nm8.

purchase Cheez-It Whole Grain crackers because they believe that the product is predominantly whole grain. Kellogg knows this quality is material to a consumer's decision to purchase Cheez-It Whole Grain crackers.

65.     Kellogg deliberately capitalizes on foreseeable consumer misconceptions about Cheez-It Whole Grain crackers in its marketing and sales scheme.

## CLASS ACTION ALLEGATIONS

66.     Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of a proposed class (the "Injunctive Relief Class") defined as follows:

> **The Injunctive Relief Class.** All persons residing in the United States and its territories who have purchased Cheez-It Whole Grain crackers for their own use (which includes feeding their families), and not for resale, since May 19, 2010. Plaintiffs ask the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class; the Injunctive Relief Class does not seek any form of monetary relief.

67.     Additionally, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of a proposed class (the "Monetary Relief Class") defined as follows:

> **The Monetary Relief Class.** All persons residing in the United States and its territories who have purchased Cheez-It Whole Grain crackers for their own use (which includes feeding their families), and not for resale, since May 19, 2010. Plaintiffs ask the Court to adjudicate all remedies through the Monetary Relief Class.

68.     Additionally, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Kristen Mantikas brings this action individually and on behalf of a proposed subclass (the "New York Subclass") defined as follows:

> **The New York Subclass.** All persons residing in New York who have purchased Cheez-It Whole Grain crackers for their own use

(which includes feeding their families), and not for resale, since May 19, 2010. Plaintiff Mantikas asks the Court to adjudicate all remedies through the New York Subclass.

69.     Additionally, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs Kristin Burns and Linda Castle bring this action individually and on behalf of a proposed subclass (the "California Subclass") defined as follows:

> **The California Subclass.** All persons residing in California who have purchased Cheez-It Whole Grain crackers for their own use (which includes feeding their families), and not for resale, since May 19, 2012. Plaintiffs Burns and Castle ask the Court to adjudicate all remedies through the California Subclass.

70.     Collectively, the Injunctive Relief Class, the Monetary Relief Class, the New York Subclass, and the California Subclass are the "Class" or the "Classes."

71.     Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

72.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

73.     **Numerosity.** The Classes each consist of many thousands of persons, throughout the United States, New York, or California, as appropriate. Each Class is so numerous that joinder of all members is impracticable, and the disposition of each Class's claims in a class action will benefit the parties and the Court.

74.     **Commonality and Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. These common questions have the capacity to generate common answers that will drive resolution of this action. These common questions include, but are not limited to, the following:

a.      whether Kellogg contributed to, committed, or is responsible for the conduct alleged herein;

b.      whether Kellogg's conduct constitutes the violations of law alleged herein;

c.      whether Kellogg acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein;

d.      whether Plaintiffs and the Class members are entitled to injunctive relief; and

e.      whether Plaintiffs and the Class members are entitled to restitution and damages.

75.     Because they saw the name, labeling, and marketing of Cheez-It Whole Grain crackers, and because they purchased Cheez-It Whole Grain crackers, all Class members were subject to the same wrongful conduct.

76.     Absent Kellogg's material deceptions, misstatements, and omissions, Plaintiffs and the other Class members would not have purchased Cheez-It Whole Grain crackers.

77.     **Typicality.** Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs and the other Class members all purchased Cheez-It Whole Grain crackers and were injured thereby. The claims of Plaintiffs and the other Class Members are based on the same legal theories and arise from the same false and misleading conduct.

78.     **Adequacy of Representation.** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with those of the other Class members. Each Class member seeks damages reflecting a similar and discrete purchase, or similar and discrete

purchases, that each Class member made. Plaintiffs have retained competent and experienced class action counsel who intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

79.     **Injunctive or Declaratory Relief.** The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

80.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The amount at stake for each Class member, while significant, is such that individual litigation would be inefficient and cost-prohibitive. Additionally, adjudication of this controversy as a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein. Plaintiffs anticipate no difficulty in the management of this action as a class action.

81.     **Notice to the Class.** Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS FOR RELIEF

## FIRST CLAIM

**Unjust Enrichment / Breach of Quasi-Contract under Michigan Law
By Plaintiffs, on Behalf of the Class**

82.     Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

83. Plaintiffs bring this claim for unjust enrichment / breach of quasi-contract under Michigan law on behalf of the Class.

84. As a direct and proximate result of Defendant's acts set forth herein, Defendant has been unjustly enriched.

85. As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of Cheez-It Whole Grain crackers, Defendant unjustly enriched itself at the expense of Plaintiffs and the Class members, through Plaintiffs' and the Class members' payment of the purchase price for the crackers.

86. Defendant's conduct created a quasi-contract with Plaintiffs and the Class members, through which Defendant received a benefit of monetary compensation without providing the "WHOLE GRAIN" benefits Defendant promised to Plaintiffs and the Class members.

87. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class members, in light of the fact that the Cheez-It Whole Grain crackers Plaintiffs and the Class members purchased were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the Class members for the monies paid to Defendant for the Cheez-It Whole Grain crackers.

88. Plaintiffs and the Class members seek restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and compensation Defendant obtained from its improper conduct alleged herein.

89. Therefore, Plaintiffs pray for relief as set forth below.

## SECOND CLAIM

**Violation of New York's Consumer Protection from Deceptive Acts and Practices Act**
**N.Y. GEN. BUS. LAW § 349 *et seq.***
**New York General Business Law Section 349**
**By Plaintiff Kristen Mantikas, on Behalf of the New York Subclass**

90.     Plaintiff Kristen Mantikas repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

91.     Plaintiff Mantikas brings this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. GEN. BUS. LAW § 349 *et seq.*

92.     Section 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a).

93.     Kellogg's labeling and marketing of Cheez-It Whole Grain crackers, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff Mantikas and the other members of the New York Subclass as to the whole-grain / non-whole-grain ratio and the overall whole grain content of Cheez-It Whole Grain crackers.

94.     In accordance with subsection (h) of section 349, Plaintiff Mantikas seeks an order enjoining Kellogg from continuing these unlawful deceptive acts and practices. Absent enjoining these unlawful deceptive acts and practices, Kellogg will continue its false and misleading marketing of the whole-grain / non-whole-grain ratio and the overall whole grain content of Cheez-It Whole Grain crackers and, in doing so, irreparably harm each of the New York Subclass members.

95.     As a consequence of Kellogg's deceptive acts and practices, Plaintiff Mantikas and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Mantikas and other members of the New York Subclass also seek actual

damages or statutory damages of $50 per violation, whichever is greater, as well as punitive

damages. N.Y. GEN. BUS. LAW § 349(h).

96.     Therefore, Plaintiff Mantikas prays for relief as set forth below.

## THIRD CLAIM

**Violation of New York's Consumer Protection from Deceptive Acts and Practices Act**
**N.Y. GEN. BUS. LAW § 349 *et seq.***
**New York General Business Law Section 350**
**By Plaintiff Kristen Mantikas, on Behalf of the New York Subclass**

97.     Plaintiff Kristen Mantikas repeats each and every allegation contained in the

paragraphs above and incorporates such allegations by reference herein.

98.     Plaintiff Mantikas brings this claim on behalf of the New York Subclass for

violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices

Act, N.Y. GEN. BUS. LAW § 349 *et seq.*

99.     Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or

commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 350.

100.     New York General Business Law section 350-a defines "false advertising" as

"advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of

any employment opportunity if such advertising is misleading in a material respect." N.Y. GEN.

BUS. LAW § 350-a. The section also provides that advertising can be false by omission, as it further

defines "false advertising" to include "advertising [that] fails to reveal facts material in the light

of such representations with respect to the commodity … to which the advertising relates." *Id.*

101.     Kellogg's labeling, marketing, and advertising of Cheez-It Whole Grain crackers,

as alleged herein, are "misleading in a material respect," and thus "false advertising," as they

falsely represent Cheez-It Whole Grain crackers as both having more whole grains than non-whole

grains and having a meaningful overall amount of whole grains.

102.   Plaintiff Mantikas seeks an order enjoining Kellogg from continuing this false advertising. Absent enjoining this false advertising, Kellogg will continue to mislead Plaintiff Mantikas and the other members of the New York Subclass as to the relative whole-grain content and overall whole-grain content of Cheez-It Whole Grain crackers and, in doing so, irreparably harm each of the New York Subclass members.

103.   As a direct and proximate result of Kellogg's violation of New York General Business Law section 350, Plaintiff Mantikas and the other members of the New York Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Mantikas and the other members of the New York Class also seek actual damages and punitive damages.

104.   Therefore, Plaintiff Mantikas prays for relief as set forth below.

## FOURTH CLAIM

**Violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.***
**Unlawful Conduct Prong**
**By Plaintiffs Kristin Burns and Linda Castle, on Behalf of the California Subclass**

105.   Plaintiffs Kristin Burns and Linda Castle repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

106.   Plaintiffs Burns and Castle bring this claim on behalf of the California Subclass for violation of the "unlawful" prong of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").

107.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200.

108.   The acts, omissions, misrepresentations, practices, and non-disclosures of Kellogg, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "FFDCA"), and its implementing

regulations, including, at least, the following sections:

    a.    21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material," 21 U.S.C. § 321(n);

    b.    21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

    c.    21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients; and

    d.    21 C.F.R. § 102.5(c), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein.

109.    Kellogg's conduct is further "unlawful" because it violates California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* (the "FAL") and California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* (the "CLRA"), as discussed in the claims below.

110.    Kellogg's conduct also violates California's Sherman Food, Drug, and Cosmetic Law, CAL. HEALTH & SAFETY CODE § 109875 *et seq.* (the "Sherman Law"), including, at least, the following sections:

    a.    Section 110100 (adopting all FDA regulations as state regulations);

    b.    Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");

    c.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . . An advertisement is false if it is false or misleading in any particular.");

    d.      Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

    e.      Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

    f.      Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food[.]"); and

    g.      Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

111.    Each of the challenged statements made and actions taken by Kellogg violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

112.    Kellogg leveraged its deception to induce Plaintiffs Burns and Castle and the members of the California Subclass to purchase products that were of lesser value and quality than advertised.

113.    Kellogg's deceptive advertising caused Plaintiffs Burns and Castle and the members of the California Subclass to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain. Had Plaintiffs Burns and Castle and the members of the California Subclass been aware of Kellogg's false and misleading advertising tactics, they would not have purchased Cheez-It Whole Grain crackers at all, or they would have paid less than what they did for the product.

114.    In accordance with California Business and Professions Code section 17203, Plaintiffs Burns and Castle seek an order enjoining Kellogg from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

115.    Plaintiffs Burns and Castle also seek an order for the disgorgement and restitution

of all monies from the sale of Cheez-It Whole Grain products that Kellogg unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

116.    Therefore, Plaintiffs Burns and Castle pray for relief as set forth below.

## FIFTH CLAIM

**Violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.***
**Unfair and Fraudulent Conduct Prongs**
**By Plaintiffs Kristin Burns and Linda Castle, on Behalf of the California Subclass**

117.    Plaintiffs Kristin Burns and Linda Castle repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

118.    Plaintiffs Burns and Castle bring this claim on behalf of the California Subclass for violation of the "unfair" and "fraudulent" prongs of the UCL.

119.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200.

120.    The false and misleading labeling of Cheez-It Whole Grain crackers, as alleged herein, constitute "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Kellogg's conduct outweighs any conceivable benefit of such conduct.

121.    The acts, omissions, misrepresentations, practices, and non-disclosures of Kellogg, as alleged herein, constitute "fraudulent" business acts and practices, because Kellogg's conduct is false and misleading to Plaintiffs Burns and Castle and the members of the California Subclass.

122.    Kellogg's labeling and marketing of Cheez-It Whole Grain crackers is likely to deceive reasonable consumers about the whole-grain / non-whole-grain ratio and the overall whole grain content of the crackers.

123.    Kellogg either knew or reasonably should have known that the claims on the labels

of Cheez-It Whole Grain crackers were likely to deceive reasonable consumers.

124.    In accordance with California Business & Professions Code section 17203, Plaintiffs Burns and Castle seek an order enjoining Kellogg from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

125.    Plaintiffs Burns and Castle also seek an order for the disgorgement and restitution of all monies from the sale of Cheez-It Whole Grain crackers that were unjustly acquired through act of unlawful, unfair, and/or fraudulent competition.

126.    Therefore, Plaintiffs Burns and Castle pray for relief as set forth below.

## SIXTH CLAIM

**Violation of California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.*
By Plaintiffs Kristin Burns and Linda Castle, on Behalf of the California Subclass**

127.    Plaintiffs Kristin Burns and Linda Castle repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

128.    Plaintiffs Burns and Castle bring this claim on behalf of the California Subclass for violation of the FAL.

129.    The FAL prohibits making any false or misleading advertising claim. CAL. BUS. & PROF. CODE § 17500.

130.    As alleged herein, Kellogg, in its labeling of Cheez-It Whole Grain crackers, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the whole-grain / non-whole-grain ratio and the overall whole grain content of Cheez-It Whole Grain crackers.

131.    In reliance on these false and misleading advertising claims, Plaintiffs Burns and Castle and the members of the California Subclass purchased and used Cheez-It Whole Grain crackers without the knowledge that the product contains only a small amount of whole grains and

is predominantly comprised of non-whole grains.

132.     Kellogg knew or should have known that its labeling and marketing was likely to deceive consumers.

133.     As a result, Plaintiffs Burns and Castle and the California Subclass members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Kellogg was unjustly enriched.

134.     Therefore, Plaintiffs Burns and Castle pray for relief as set forth below.

**SEVENTH CLAIM**

**Violation of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.*
By Plaintiffs Kristin Burns and Linda Castle, on Behalf of the California Subclass
Seeking Injunctive Relief Only**

135.     Plaintiffs Kristin Burns and Linda Castle repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

136.     Plaintiffs Burns and Castle bring this claim on behalf of the California Subclass for violation of the CLRA, seeking injunctive relief only.

137.     The CLRA adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

138.     Kellogg's policies, acts, and practices were designed to, and did, result in the purchase and use of Cheez-It Whole Grain crackers primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a.     section 1770(a)(5), which prohibits representing that goods have a particular composition or contents that they do not have;

b.     section 1770(a)(5), which also prohibits representing that goods have characteristics, uses, or benefits that they do not have;

    c.    section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

    d.    section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

    e.    section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

139.    As a result, in accordance with California Civil code section 1780(a)(2), Plaintiffs Burns and Castle and the members of the California Subclass have suffered irreparable harm and seek injunctive relief in the form of an order:

    a.    enjoining Kellogg from continuing to engage in the deceptive practices described above;

    b.    requiring Kellogg to provide public notice of the true nature of Cheez-It Whole Grain crackers; and

    c.    enjoining Kellogg from such deceptive business practices in the future.

140.    Pursuant to section 1782 of the CLRA, Plaintiffs Burns and Castle are hereby notifying Kellogg in writing of its particular violations of section 1770 of the CLRA (the "Notice") and are demanding, among other actions, that Defendant cease marketing Cheez-It Whole Grain crackers as set forth in detail above and correct, repair, replace, or otherwise rectify the Cheez-It Whole Grain crackers that are in violation of section 1770 as set forth in detail above. If Defendant fails to respond to Plaintiff's demand within 30 days of this Notice, pursuant to section 1782 of the CLRA, Plaintiffs will amend this Class Action Complaint to request, in addition to the above relief, statutory damages, actual damages, punitive damages, interest, and attorneys' fees.

141.    Therefore, Plaintiffs Burns and Castle pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Class,

respectfully request the Court to enter an Order:

      A.      certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

      B.      declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

      C.      declaring that Defendant has committed the violations of law alleged herein;

      D.      providing for any and all injunctive relief the Court deems appropriate;

      E.      awarding statutory damages in the maximum amount for which the law provides;

      F.      awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

      G.      providing for any and all equitable monetary relief the Court deems appropriate;

      H.      awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

      I.      awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

      J.      awarding pre- and post-judgment interest to the extent the law allows; and

      K.      for such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims so triable.

Date: May 19, 2016                          Respectfully submitted,

                                            **REESE LLP**

                                            By:_____/s/_____
                                                Michael R. Reese
                                                *mreese@reesellp.com*
                                                George V. Granade
                                                *ggranade@reesellp.com*
                                                100 West 93rd Street, 16th Floor
                                                New York, New York  10025
                                                Telephone: (212) 643-0500
                                                Facsimile: (212) 253-4272

                                            **CENTER FOR SCIENCE IN THE PUBLIC
                                            INTEREST**
                                            Maia Kats
                                            *mkats@cspinet.org*
                                            William Thanhauser
                                            *wthanhauser@cspinet.org*
                                            1220 L Street, Northwest, Suite 300
                                            Washington, District of Columbia  20005
                                            Telephone: (202) 777-8381
                                            Facsimile: (202) 265-4954

                                            **MEHRI & SKALET, PLLC**
                                            Steven A. Skalet
                                            *sskalet@findjustice.com*
                                            Craig L. Briskin
                                            *cbriskin@findjustice.com*
                                            1250 Connecticut Avenue, Northwest, Suite 300
                                            Washington, District of Columbia  20036
                                            Telephone: (202) 822-5100
                                            Facsimile: (202) 822-4997

                                            *Counsel for Plaintiffs and the Proposed Class*