UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

KRISTEN MANTIKAS, KRISTIN BURNS, and
LINDA CASTLE, individually and on behalf of
all others similarly situated,

      Plaintiffs,

v.

KELLOGG COMPANY,

      Defendant.

Case No. 2:16-cv-02552-SJF-AYS

Hon. Sandra J. Feuerstein

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Kenneth K. Lee (NY Reg. No. 4056750)
klee@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: (213) 239-5100
Fax: (213) 239-5199

*-and-*

Dean N. Panos (admitted *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

*Attorneys for Defendant*
KELLOGG COMPANY

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

I.     THE PACKAGING FOR CHEEZ-IT ACCURATELY DISCLOSES
THAT WHOLE GRAIN IS ONE OF THE INGREDIENTS AND
FURTHER DISCLOSES THE PRECISE AMOUNT OF WHOLE
GRAINS PER SERVING. ....................................................................................... 3

II.    PLAINTIFFS FILE A CLASS ACTION LAWSUIT AGAINST
KELLOGG ALLEGING DECEPTION. ................................................................... 4

ARGUMENT ................................................................................................................. 5

I.     PLAINTIFFS HAVE NOT PLAUSIBLY SHOWN THAT THE
FACTUALLY TRUE "MADE WITH WHOLE GRAIN" STATEMENT
WILL LIKELY DECEIVE A REASONABLE CONSUMER .................................... 5

II.    PLAINTIFFS' CLAIMS ARE PREEMPTED BECAUSE "MADE
WITH WHOLE GRAINS" CONSTITUTES A PERMISSIBLE
IMPLIED NUTRIENT CLAIM UNDER FEDERAL LAW .................................... 10

III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST
ENRICHMENT. ................................................................................................. 13

       A.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs'
Unjust Enrichment Claim Under Michigan Law. ......................................... 14

       B.    Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because
Plaintiffs Have Not Conferred a Benefit On Kellogg. ................................... 14

       C.    Plaintiffs' Attempt to Apply Michigan Law to a Nationwide Class
Is Improper. .............................................................................................. 15

IV.   PLAINTIFFS LACK STANDING FOR INJUNCTIVE RELIEF. .......................... 16

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A & M Supply Co. v. Microsoft Corp.*,
   No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008)...............................................15

*Ackerman v. Coca-Cola*,
   No. 09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...................................................12

*Anderson v. The Hain Celestial Group, Inc.*,
   87 F. Supp. 3d 1226 (N.D. Cal. 2015) ..................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................6, 7

*Backus v. Nestle USA, Inc.*,
   No. 15-1963, 2016 WL 879673 (N.D. Cal. Mar. 8, 2016) ....................................................12

*Brod v. Sioux Honey Ass'n, Co-op.*,
   927 F. Supp. 2d 811 (N.D. Cal. 2013) ...................................................................................5

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012) ..........................................................................................8

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...........................................................................12, 13

*City of Los Angles v. Lyons*,
   461 U.S. 95 (1983).............................................................................................................16

*Cohen v. JP Morgan Chase & Co.*,
   498 F.3d 111 (2d. Cir. 2007)..............................................................................................5, 9

*Dodge v. Cnty. of Orange*,
   103 Fed. App'x 688 (2d Cir. 2004)......................................................................................17

*Elkind v. Revlon Consumer Prods. Corp.*,
   No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015)................................................16

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)...........................................................................................5, 10

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ..................................................................................................9

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
   No. 13-05222, 2014 WL 2451290 (N.D. Cal. June 2, 2014) ................................................18

*Grund v. Delaware Charter Guarantee & Trust Co.*,
   788 F. Supp. 2d 226 (S.D.N.Y. 2011) ................................................................................16

*Hairston v. S. Beach Beverage Co.*,
   No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ............................................10, 13

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) ......................................................................18

*Henderson v. Gruma Corp.*,
   No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..........................................6, 9

*Hidalgo v. Johnson & Johnson Consumer Cos, Inc.*,
   No. 15-5199, 2015 WL 8375196 (S.D.N.Y. Dec. 8, 2015) ..................................................17

*Hill v. Roll International Corp.*,
   195 Cal. App. 4th 1295 (2011) ............................................................................................5

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ............................................................................................17

*In re Aftermarket Filters Antitrust Litig.*,
   No. 08-4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ..................................................15

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................................................16

*In re Hydrogen, L.L.C.*,
   431 B.R. 337 (Bankr. S.D.N.Y. 2010) ................................................................................16

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011) ............................................................................14

*In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008) ................................................................................11

*In re Refrigerant Compressors Antitrust Litig.*,
   No. 09-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ............................................15

*Karaus v. Bank of New York Mellon*,
   300 Mich. App. 9 (2012) ....................................................................................................14

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ..........................................................................................5, 9

iii

*Machlan v. Procter & Gamble Co.*,
    77 F. Supp. 3d 954, 960 (N.D. Cal. 2015) ...........................................................................18

*Manchouck v. Mondelez*,
    No. 13-02148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ..................................................7

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) .................................................................................................3

*Mayfield v. U.S.*,
    599 F.3d 964 (9th Cir. 2010) ...............................................................................................17

*McKinniss v. Sunny Delight Beverages Co.*,
    No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ..............................................5, 8

*Mills v. Giant of Md., LLC*,
    441 F. Supp. 2d 104 (D.D.C. 2006) .....................................................................................10

*Morales v. Unilever U.S., Inc.*,
    No. 13-2213, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) ....................................................14

*Mosely v. Vitalize Labs LLC*,
    Nos. 13 CV 2470(RJD)(RLM), 14 CV 4474(RJD)(RLM),
    2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015) ......................................................................14

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................................16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (1995) .............................................................................................................5

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ..................................................................................................6

*Peviani v. Hostess Brands, Inc.*,
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ................................................................................11

*Red v. Kraft Foods, Inc.*,
    754 F. Supp. 2d 1137 (C.D. Cal. 2010) .........................................................................6, 9, 12

*Salazar v Honest Tea, Inc.*,
    74 F. Supp. 3d 1304 (E.D. Cal. 2014) ..................................................................................12

*Samet v. Procter & Gamble*,
    No. 12-01891, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ..................................................7

*Sensible Foods, LLC v. World Gourmet, Inc.*,
No. 11-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ....................................6, 8

*Smith v. Glenmark Generics, Inc., USA*,
No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014)...........................14

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ...........................10, 14

*Storey v. Attends Healthcare Prods., Inc.*,
No. 15-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016) ................................15

*Tomasino v. Estee Lauder Cos., Inc.*,
44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ............................................................18

*Verzani v. Costco Wholesale Corp.*,
No. 09-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ....................................8

*Workman v. Plum Inc.*,
141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...............................................................7, 9

*Wright v. Gen. Mills, Inc.*,
No. 08-1532, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009)....................................3

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
84 N.Y.2d 309 (N.Y. 1994) .................................................................................16

STATUTES

21 U.S.C. § 341 *et seq.*..........................................................................................10, 11

California's Consumer Legal Remedies Act (CAL. CIV. CODE § 1750) .........................5

California's False Advertising Law (CAL. BUS. & PROF. CODE § 17500) ......................5

California's Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200)....................4

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ................................10

N.Y. GEN. BUS. LAW §§ 349, 350 .................................................................................4

OTHER AUTHORITIES

21 C.F.R. § 100.1 ......................................................................................................11

21 C.F.R. § 101.13 ...............................................................................................11, 12

H.R. Rep. No. 101-538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336 .......................10

## <u>INTRODUCTION</u>

The Kellogg Company makes Cheez-It, the iconic brand of baked crackers that consumers have enjoyed for nearly a century. Over the years, Kellogg has introduced different varieties of Cheez-It, including one that includes whole grains.  The 2016 version of the packaging for the whole grain variety of Cheez-It states "MADE WITH WHOLE GRAIN" — a factually true statement saying that one of the ingredients is whole grain.  Notably, the box does not state that the product is made with whole grains exclusively.  As the ingredient list on the box discloses, Cheez-It contains both enriched flour and whole wheat flour (which is the third-highest ingredient by weight in the product).  And the front of the Cheez-it box discloses exactly how many whole grains are in each serving: A prominent banner in high-contrast block font states, "MADE WITH 8g OF WHOLE GRAINS PER SERVING."

Despite this transparency, Plaintiffs have filed this putative class action lawsuit, alleging that they were deceived into believing that Cheez-It is made exclusively with whole grains and that therefore they mistakenly believed that there were more whole grains than there actually are in the snack.  This lawsuit — which invokes the laws of New York, California, and Michigan — must be dismissed for several reasons.

<u>First</u>, Plaintiffs have failed to plausibly show that a reasonable consumer would likely be deceived by the Cheez-It packaging.  The statement "Made with Whole Grain" is a factually true statement because Plaintiffs do not dispute that whole grains are indeed one of the ingredients in Cheez-It.  Plaintiffs' objection is that they incorrectly construed that statement to mean that it has only 100% whole grains only and no other types of grain or flour ingredients.  But over a half-dozen federal courts in recent years have rejected that same argument in virtually identical food labeling cases, where plaintiffs alleged that similar phrases (such as "Made with Vegetables" or "Made with Fruits") misleadingly suggested that the food products contained substantially more amounts of vegetables or fruits than they believed.  Court after court has dismissed such claims, ruling that the challenged statements are not deceptive as a matter of law because they merely indicate what they say — that "fruit" or "vegetable" (or "whole grain" in this case) is one of the

ingredients.

Plaintiffs' assertion of deception is even more implausible because they cannot solely fixate on "Made with Whole Grain" statement and cast a blind eye on the rest of the packaging. As the Second and Ninth Circuits have held, courts must review the packaging "as a whole" and "in context" in determining whether it is deceptive at the pleading stage.   And here, the ingredient list discloses that Cheez-It contains both enriched flour and whole wheat flour.  And to ensure there is no doubt about the ingredients in the product, the front of the Cheez-It box puts consumers on notice exactly how many whole grains are in Cheez-It: A banner prominently states that it is "MADE WITH 8g of WHOLE GRAIN PER SERVING."   In other words, Plaintiffs knew exactly how much whole grains were in Cheez-It, and they now cannot claim that they were duped about the amount of whole grains in the snack.

<u>Second</u>, Plaintiffs' claims are preempted because federal law expressly allows food companies to make nutrient content claims on the packaging.  "Made with Whole Grain" and "Made with 8g of Whole Grain Per Serving" are implied and express nutrient content claims, respectively, under FDA's food labeling regulations.  Several courts have accordingly dismissed similar statements (*e.g.*, "Made With Whole Grain Oat") on preemption grounds.  Likewise here, Plaintiffs cannot invoke state law to challenge these federally sanctioned statements.

<u>Third</u>, Plaintiffs' unjust enrichment claim under Michigan law must be dismissed for several reasons.  For starters, Plaintiffs — who are citizens of New York or California and who bought Cheez-It in their home states — cannot invoke Michigan law merely because Kellogg is based there.  In addition to this jurisdictional defect, Plaintiffs' claim lacks merit substantively because Michigan requires plaintiffs to have previously provided *direct* benefits to defendants to assert unjust enrichment. But Plaintiffs bought Cheez-It from retailers, not directly from Kellogg.

<u>Finally</u>, Plaintiffs lack standing for their injunctive relief claim because they no longer face any imminent threat of future harm.  In their complaint, they allege that they will no longer purchase Cheez-It now that they are aware of the allegedly deceptive packaging.  Many courts in similar food labeling cases have held that plaintiffs in such situations lack standing to demand

injunctive relief because there is no likelihood that they will be deceived in the future.

## BACKGROUND

I.    **The Packaging for Cheez-It Accurately Discloses That Whole Grain Is One of the Ingredients and Further Discloses the Precise Amount of Whole Grains Per Serving.**

Kellogg offers Cheez-It baked snack crackers in a wide variety of flavors and ingredients, including a version that includes whole grains.  Over the class period, the packaging of the whole grain variety of Cheez-It has varied.  Plaintiffs take issue with the 2016 version of the Cheez-It packaging which stated in the front of the box "MADE WITH WHOLE GRAINS" along with a prominent statement "MADE WITH 8g OF WHOLE GRAINS PER SERVING" below it. Ex. A.[1]   The Nutrition Facts panel on the packaging further discloses that a serving size is 30 grams, which is guided by federal regulations governing serving sizes for various foods.  Ex. A (Nutrition Facts).

Notably, Plaintiffs' allegations notwithstanding, Cheez-It has never been advertised as containing whole grains only.  To the contrary, the ingredient list on the Cheez-It packaging discloses that it contains both enriched flour and whole wheat flour (as the third-highest ingredient by weight).  *Id.*, ¶ 52.  And the front of the packaging makes clear exactly how many whole grains are found in each serving ("MADE WITH 8g OF WHOLE GRAIN PER SERVING"):

---

[1] The amount of whole grains in each serving can vary depending on the size/variety of the Cheez-Its product.  Images of the Cheez-It box are attached to the accompanying Declaration of Kenneth K. Lee.  This Court can take judicial notice of the Cheez-It packaging because courts are entitled to consider "evidence on which the complaint 'necessarily relies,'" even if the evidence is not physically attached to the complaint, in deciding a Rule 12 motion.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Plaintiffs' Complaint "necessarily relies" upon the packaging of Cheez-Its in alleging that the packaging is deceptive.  *See also Wright v. Gen. Mills, Inc.*, No. 08-1532, 2009 WL 3247148, at *4-5 (S.D. Cal. Sept. 30, 2009) (taking judicial notice of and incorporating by reference product labels and packaging items that served as the basis for the allegations in plaintiff's complaint).



Ex. A.

## II.    Plaintiffs File a Class Action Lawsuit Against Kellogg Alleging Deception.

Despite the prominent disclosures on the Cheez-It box, Plaintiffs allege that they were deceived into believing that the crackers were "predominantly whole grain." *See* Compl., ¶¶ 56-60.  Plaintiffs assert causes of action for violations of New York's Consumer Protection from Deceptive Acts and Practices law (N.Y. GEN. BUS. LAW §§ 349, 350), California's Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200), California's False Advertising Law (CAL.

BUS. & PROF. CODE § 17500), and California's Consumer Legal Remedies Act (CAL. CIV. CODE § 1750), as well as a claim for unjust enrichment under Michigan law.  Compl., ¶¶ 82-141. Plaintiffs seek injunctive relief, restitution, and statutory, compensatory, and punitive damages. *See id.* at 26-27 (Prayer for Relief).

## ARGUMENT

**I.      Plaintiffs Have Not Plausibly Shown That the Factually True "Made With Whole Grain" Statement Will Likely Deceive a Reasonable Consumer.**

To prevail on their consumer fraud claims under New York and California statutes, Plaintiffs "must establish that [Kellogg's] allegedly deceptive statements were likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034, 2007 WL 4766525, at *2 (C.D. Cal. Sept. 4, 2007) (same).

Under the "reasonable consumer" standard, Plaintiffs must show that it is "*probable* that a *significant portion of the general consuming public* or of target consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (emphasis added); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d. Cir. 2007) ("The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'") (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).  Plaintiffs must show "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 415 (9th Cir. 2015).  Put another way, the challenged terms must be evaluated with reference to the "reasonable consumer," not the "unwary consumer" or "least sophisticated consumer."  *Hill v. Roll International Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).

Additionally, to survive dismissal, a claim must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, there must be "more than a sheer possibility that a defendant has acted unlawfully."   *Id.*; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (dismissal is appropriate where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2012 WL 566304, at \*6 (N.D. Cal. Feb. 21, 2012) (the court "must determine, relying on its judicial experience and common sense, whether. . .allegations amount to a plausible claim.").

Federal courts have time and time again dismissed virtually identical claims where the plaintiffs have alleged that a "Made with [certain ingredient]" claim is misleading because the product did not contain sufficient amounts of the depicted or stated ingredient.  These courts have held that such statements are factually true if the product indeed contains such an ingredient, and that they are therefore not deceptive as a matter of law.

- In *Red v. Kraft*, the plaintiffs claimed that the statement "Made with Real Vegetables" on the packaging of Vegetable Thins crackers was misleading because they believed that the product contained large amounts of vegetables when in reality it contained only small amounts of vegetable powder.  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), *enforced*, 2012 WL 5502359 (C.D. Cal. Oct. 26, 2012).  The court dismissed the claim, ruling that it the statement is factually true because vegetables are indeed one of the ingredients.  It rejected the plaintiffs' claim of deception, stating that it "strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers . . . contains huge amounts of vegetables simply because there are pictures of vegetables and the true phrase "Made with Real Vegetables" on the box."  *Id.* at \*4.

- Similarly, in *Henderson v. Gruma Corp.*, the plaintiff claimed that a dip labeled "With Garden Vegetables" was mislabeled because it suggested that there were more vegetables in the dip than there actually were.  No. 10-04173, 2011 WL 1362188, at \*12 (C.D. Cal.

Apr. 11, 2011).  The court dismissed the complaint, ruling that dip "in fact contain vegetables that can be grown in a garden" and that the "labeling statement does not claim a specific amount of vegetables in the product, but rather speaks to their presence in the product, which is not misleading [as a matter of law]." *Id.*

- Another class action lawsuit challenged Plum's Organics baby food, arguing that images of healthy and expensive fruits (*e.g.*, pomegranate) in the packaging were deceptive because they were not in fact the most prominent ingredients in the products and that the product in fact had more cheap ingredients (*e.g.*, banana puree).  *See Workman v. Plum Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015).  The court dismissed the complaint, ruling that there were no "affirmative misrepresentations" and that no reasonable consumer would be misled.  *See id.* at 1035-37.  It added that "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA.  As our court of appeals stated in this context, 'reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.'"  *Id.* at 1035.

- In *Manchouck v. Mondelez*, the plaintiff challenged the term "Made with Real Fruit" in strawberry and raspberry Newtons, arguing that they were made primarily of "small amount of processed fruit puree."  No. 13-02148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013), *aff'd* 603 Fed. App'x. 632 (9th Cir. 2015).  The court dismissed the complaint stating that the plaintiff has not met the *Iqbal* plausibility requirement because the "complaint does not dispute that the cookies contain real fruits."  *Id.* at *3.

- Similarly in *Samet v. Procter & Gamble*, the plaintiffs objected to the statement "Made with Real Fruit" on Fruity Snacks, arguing that the products contained little amount of fruits.  No. 12-01891, 2013 WL 3124647, at *6 (N.D. Cal. June 18, 2013).  The court dismissed that claim, ruling that "made with real fruit" is accurate because Fruity Snacks contain "apple puree concentrate."  *Id.*

- A plaintiff challenged the name of a product — Apple Straws — on the grounds that it was made primarily of potatoes, not apples.  The court dismissed the claim, holding that the name of the product was not deceptive because it did indeed contain apples.  *See Sensible Foods, LLC v. World Gourmet, Inc*., 2012 WL 566304, at \*6 (N.D. Cal. Feb. 21, 2012).

- And in *McKinniss v. Sunny Delight*, the plaintiff alleged that Sunny Delight drinks misleadingly suggested that they contained substantial amount of fruits in light of their fruit names and images of fruits.  No. 07-02034, 2007 WL 4766525, \*1-4 (C.D. Cal. 2007). The court dismissed the complaint, ruling that "no reasonable consumer, upon review of the label as a whole…would conclude that Defendant's products contain significant quantities of fruit or fruit juice" because the bottle truthfully identifie[d] that each of its products contains 2% of less of concentrated [fruit] juice," and included a Nutrition Facts panel listing water and high fructose corn syrup as the most prominent ingredients.  *Id.* at \*3-4.  As the court explained, "[w]here a consumer can readily and accurately determine the composition and nutritional value of a product (here, by reading the front and back of the label), no reasonable consumer would be misled or deceived by depictions of fruit on a label." *Id.* at \*4.[2]

As in all of the cited cases above, the statement "Made with Whole Grains" is not deceptive as a matter of law because it is a factually true statement.  That statement merely indicates what it says — that whole grains are one of the ingredients in Cheez-It.  And it is undisputed that Cheez-It has whole grains, as disclosed in the ingredient list as the third-highest

---

[2] *See also, e.g., Verzani v. Costco Wholesale Corp.*, No. 09-2117, 2010 WL 3911499, at \*2 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir. 2011) (dismissing lawsuit alleging net weight of "shrimp tray with cocktail sauce" was deceptive because it included weight of cocktail sauce because a "reasonable consumer reading the tray's label would not pick up 'shrimp' to the exclusion of all the information on the label"); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal of UCL, CLRA, and FAL claims and rejecting the plaintiff's attempt to interpret words on a product's label out of context).

ingredient by weight.  Nowhere does the packaging suggest that it has only whole grains, but rather that statement "speaks to their presence in the product, which is not misleading." *Henderson*, 2011 WL 1362188, at *12.  In fact, the only reason why Plaintiffs know that Cheez-It contains other types of grains is that it is fully disclosed in the ingredient list on the box.  *See Workman*, 141 F. Supp. 3d at 1035 ("any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA").  And critically, the *front of the Cheez-It* box prominently discloses precisely how many whole grains are present in each serving ("Made with 8g of Whole Grains Per Serving").  Ex. A. Plaintiffs' claim is thus even weaker than those in *Red, Henderson* and the other cited cases because the front of the Cheez-It box informs consumers exactly how many whole grains are in each serving.  Simply put, Plaintiffs' claims are not plausible because they have not shown that it is "probable that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances" would find "Made with Whole Grains" and "Made with 8g of Whole Grains Per Serving" to be deceptive.  *Lavie*, 105 Cal. App. 4th at 508; *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d at 126 (2d. Cir. 2007) (applying similar standard under NY law).

And even putting aside the half-dozen courts that have dismissed similar "Made with [certain ingredient]" claims as a matter of law and believes that "Made with Whole Grain" is potentially ambiguous, Plaintiffs' claims still must fail because the entire packaging must be viewed as a whole.  Plaintiffs essentially ask this Court to ignore the prominent statement in the *front* of the box — "Made with 8g of Whole Grains Per Serving" — and focus exclusively on "Made with Whole Grains," which she claims could be misleading.  But both the Second and Ninth Circuits have held that the entire packaging or advertisement "as a whole" must be viewed in context in determining at the pleading stage whether it is deceptive.[3]  And it is simply

---

[3] As the Ninth Circuit put it, the challenging statement must be read "in the context of the entire document."  *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (dismissing consumer protection claims because "[a]ny ambiguity that [plaintiff] would read into any particular

implausible that a reasonable consumer could believe that Cheez-It contains only whole grains when the ingredient list states that it has both whole wheat and enriched flour, and the front of the box prominently discloses exactly how many grams of whole grains are in each serving.

## II.     Plaintiffs' Claims Are Preempted Because "Made with Whole Grains" Constitutes A Permissible Implied Nutrient Claim Under Federal Law.

Plaintiffs' state law claims must also be dismissed because they are preempted under federal law. The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (FDCA), establishes a comprehensive and uniform federal scheme of food regulation to ensure that food is safe and labeled in a manner that does not mislead consumers.  *See* 21 U.S.C. § 341 *et seq.* Congress amended the FDCA through the passage of the Nutrition Labeling and Education Act (NLEA) to "clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods."  H.R. Rep. No. 101-538, at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337.  The NLEA sets forth specific requirements for the labeling of nutrition information and the making of nutrient content claims. *See* 21 U.S.C. § 343(q), (r).

The NLEA establishes a uniform standard for food labeling by including a broad express preemption provision.  21 U.S.C. § 343-1(a)(3); *see Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting the expansive scope of the NLEA preemption clause). Congress established this express preemption provision because it did not want food makers to comply with potentially 50 different state food labeling standards, the costs of which would then

---

statement is dispelled by the promotion as a whole.").  *See also Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (dismissing plaintiff's false advertising claims "based on a single out-of-context phrase found in one component of [defendants' product] label.").  Likewise, the Second Circuit recognized that "context is crucial." *Fink*, 714 F.3d at 742 ("the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Id.  See also Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015) ("[I]t is necessary to consider not only the allegedly misleading statement but also the surrounding context based on the content of the entire label or advertisement at issue.").

be ultimately borne by consumers.  Accordingly, the NLEA provides that "*no State* or political subdivision of a State *may directly or indirectly establish . . . any requirement for nutrition labeling of food . . . that is not identical* to the requirement[s]" set forth in the NLEA. 21 U.S.C. § 343-1(a)(4), (5) (emphasis added).  "'Not identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or its implementing regulations. 21 C.F.R. § 100.1(c)(4).  In other words, states cannot impose their own unique labeling standards that go "beyond, or [are] different from" the federal labeling standards that Congress has established.  *In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532, 534 (S.D.N.Y. 2008); *see also Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118-20 (C.D. Cal. 2010) (explaining claim must be preempted where it seeks to impose obligations different from or in addition to those imposed by federal law).

Federal regulations issued pursuant to the NLEA expressly permit a food manufacturer to make both an "expressed nutrient content claim" and an "implied nutrient content claim."  An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'"  21 C.F.R. § 101.13(b)(1).  In other words, it makes an explicit assertion about the amount of a nutrient in a product.  An implied nutrient content claim, in contrast, is defined as "any claim that . . . [d]escribes the food or an ingredient therein in a manner that suggests a nutrient is absent or present in a certain amount." 21 C.F.R. § 101.13(b)(2).  As its name suggests, an implied nutrient content claim does not make an explicit statement about the amount of nutrients, but rather implies that it has a certain amount of nutrients in a product.

Here, both "whole grain" statements on Cheez-Its are nutrient content claims and are expressly preempted:

"Made with 8g of Whole Grain":  There can be no doubt that this statement is an express nutrient content claim because it expressly refers to the amount of whole grain in the product.

*See Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1139 (C.D. Cal. 2010) ("'whole grain' per serving [claims] were not actionable on the ground that they are preempted by federal law").[4] Accordingly, this statement is preempted.

"Made with Whole Grain": Likewise, this statement is preempted because it is an implied nutrient content claim. Based on Plaintiffs' own reading of that statement, it "suggests a nutrient is . . . present in a certain amount" in an implicit manner (*i.e.*, Plaintiffs suggest that "Made With Whole Grain" implies that it has a very substantial amount — 100% only— of whole grains). 21 C.F.R. § 101.13(b)(2). A highly instructive decision is *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121-22, 1127 (N.D. Cal. 2010). The plaintiffs there had challenged, among other things, the statement "Made With Whole Grain Oats," even though "Plaintiffs do not contend that [the] statement is directly false" as "they acknowledge that Chewy Bars contain whole grain oats." *Id.* at 1121-22. The court explained that while "a simple statement of an ingredient need not necessarily count as a nutrient content claim," it noted that the "FDA has instructed, however, that it may function as such a claim under some circumstances." *Id.* at 1121 (citing *Ackerman v. Coca-Cola*, No. 09-0395, 2010 WL 2925955, at *3 (E.D.N.Y. July 21, 2010). And in that case, the court held that "Made With Whole Grain Oats" was an implied nutrient content statement because, based on the plaintiffs' theory of the case, that statement suggested that it had certain amount of whole grain oats and lacked certain unhealthful ingredients to be healthy. *See id.* at 1121-22. The court therefore ruled that "Made With Whole Grain Oats" was an implied nutrient content statement. Likewise here, "Made with Whole Grains" is an implied nutrient content claim that suggests a certain amount of nutrients because, under Plaintiffs' theory, that statement implies it has a substantial ("100% only")

---

[4] *Cf. e.g.*, *Backus v. Nestle USA, Inc.*, No. 15-1963, 2016 WL 879673, at *7-8 (N.D. Cal. Mar. 8, 2016) (declaration of "0g Trans Fat" permitted by FDA regulations and therefore UCL claim preempted); *Salazar v Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1312 (E.D. Cal. 2014) (UCL claims about alleged misrepresentation of antioxidant levels preempted);

amount of whole grain.  Therefore, Plaintiffs' state law claim challenging the "Made With Whole Grain" statement is preempted.

Even if "Made with Whole Grain" was not determined to be an implied nutrient content claim, Plaintiffs' argument still fails under a preemption analysis because this Court cannot separate "Made with Whole Grain" from "Made with 8g of Whole Grain."  A case directly on-point is *Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).  There, the plaintiff alleged that SoBe Lifewater drinks were deceptively mislabeled due to the "all natural" label (because they allegedly had artificial or synthetic ingredients) and the names of fruits on the bottle (because the drinks did not have such fruits).  The court ruled that state law claims challenging the names of various fruits were preempted because federal law permits the use of fruit names to indicate flavoring.  *See id.*  at *3-4.  And while the "all natural" claim was not preempted, the court dismissed it because "once the preempted statements regarding fruit names and vitamin labeling are removed, Plaintiffs' claim is based on a single out-of-context phrase found in one component of Lifewater's label."  *Id.* (ruling that "Plaintiff's selective interpretation of individual words or phrases from a product's labeling cannot support" a claim).

Similarly here, the statement "Made with 8g of Whole Grain" is undisputedly an express nutrient content claim that preempts state law causes-of-action.  And "once [that] preempted statement" is "removed, Plaintiff's claim is based on a single out-of-context phrase" that is not actionable.  *Id.* at *4.  In short, the statements "Made with 8g of Whole Grain" and "Made with Whole Grain" appear both in prominent font in the front of packaging, and must be read in context.  Plaintiffs cannot selectively pick-and-choose one statement, especially where one of them is inarguably permitted under federal law.

III.   <u>Plaintiffs Fail to State A Claim For Unjust Enrichment.</u>

Plaintiffs — who are citizens of New York or California — assert an unjust enrichment claim under Michigan law.  Their claim fails for three independent reasons.

### A. The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Unjust Enrichment Claim Under Michigan Law.

Plaintiffs lack standing to bring an unjust enrichment claim under Michigan law because they are citizens of New York or California and purchased Cheez-Its in their home states. Compl., ¶¶ 10, 11, 18, 19, 28, 29. They have no connection to Michigan, and any alleged injury thus occurred outside of the state of Michigan.

It is black-letter law that "named plaintiffs lack standing to assert claims under the laws of states in which they do not reside or in which they suffered no injury." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011); *see also Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *12-13 (E.D.N.Y. Sept. 22, 2015) ("Plaintiffs cannot assert claims under the laws of states for which they have not established standing."); *Morales v. Unilever U.S., Inc.*, No. 13-2213, 2014 WL 1389613, at *6 (E.D. Cal. Apr. 9, 2014) ("Accordingly, because neither plaintiff has standing to sue under the laws of any state but her own, the court must grant defendant's motion to dismiss plaintiffs' claims on behalf of the Class to the extent they arise under the laws of states other than California and Massachusetts."). Moreover, Plaintiffs cannot invoke Michigan law merely "based on the fact that defendant[] . . . [is] headquartered" in that state. *Cf. Mosely v. Vitalize Labs LLC*, Nos. 13 CV 2470(RJD)(RLM), 14 CV 4474 (RJD)(RLM), 2015 WL 5022635, at *8 (E.D.N.Y. Aug. 24, 2015) (examining the question as it relates to New York law).

### B. Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because Plaintiffs Have Not Conferred a Benefit On Kellogg.

Under Michigan law, "[t]o sustain an action for unjust enrichment, [a] plaintiff must 'establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party.'" *Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (quoting *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 22 (2012)).

Critically, the first element of unjust enrichment additionally requires "that defendant *directly* receive[] a benefit from the plaintiff." *Smith* at *1 (affirming dismissal of unjust enrichment claim because plaintiff purchased contraceptives from a pharmacy instead of from the defendant) (emphasis added).[5]

Here, Plaintiffs plead that they purchased the product through retailers such as Stop and Shop, Target, Safeway, and Ralph's.  Compl., ¶¶ 11, 19, 29.  Plaintiffs therefore do not allege any *direct* contact or transaction between themselves and Kellogg, nor do they allege that they have in any way directly conferred a benefit upon Kellogg.  Because unjust enrichment in Michigan is generally only available to plaintiffs and defendants who directly transact with one another and where the plaintiff has directly conferred a benefit upon the defendant, and because Plaintiffs have failed to plead that in this case, this cause of action must be dismissed.

### C.  Plaintiffs' Attempt to Apply Michigan Law to a Nationwide Class Is Improper.

Even assuming for argument's sake that Plaintiffs have standing to bring the unjust enrichment claim and the claim has been adequately pled under Michigan law, it would still be improper for to apply Michigan's unjust enrichment law to the nationwide class.  "[A] federal

---

[5]  *See also, e.g.*, *Storey v. Attends Healthcare Prods., Inc.*, No. 15-13577, 2016 WL 3125210, at *13 (E.D. Mich. June 3, 2016) ("Plaintiffs have failed to state a claim for unjust enrichment under Michigan law because they have not alleged that they directly conferred a benefit on Defendant."); *In re Refrigerant Compressors Antitrust Litig.*, No. 09-02042, 2013 WL 1431756, at *26 (E.D. Mich. Apr. 9, 2013) (dismissing unjust enrichment count because "[o]nly the direct purchasers conferred a direct benefit on Defendants by paying Defendants artificially inflated prices for Hermetic Compressors" and plaintiffs were not direct purchasers); *In re Aftermarket Filters Antitrust Litig.*, No. 08-4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010) ("Plaintiffs are unable to allege that they have conferred a benefit on defendants except to argue that they are the ultimate end users.  Any benefit that plaintiffs have conferred, however, would be on others in the chain of distribution from whom they purchased, not on defendants.  Only the direct purchasers have conferred a direct benefit on defendants."  The court went on to dismiss an unjust enrichment claim brought under Michigan law.); *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) ("Plaintiff here can point to no similar direct contact between Microsoft and the indirect purchasers in the class they seek to have certified.  Nor can they show that Microsoft received any direct payment or other benefit from those purchasers.  We conclude that the unjust enrichment doctrine does not apply under the facts alleged by plaintiff here.").

court generally must apply the choice-of-law principles of the state in which it sits," in this case New York. *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008).

New York applies a "significant-contacts" test for unjust enrichment, which "focuses upon (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile or place of business of the contracting parties." *Id.* at 149 (citing *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 618 (N.Y. 1994). In similar circumstances to the current case, courts have found that "the significant-contacts test requires the application of the law of the state of purchase" to unjust enrichment or breach of warranty claims. *Id. See also Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 251 n. 9 (S.D.N.Y. 2011) ("Under New York choice of law rules, interest analysis is applied to claims arising in equity, such as claims for unjust enrichment. . . . As with the tort claims, the states in which Plaintiffs resided have the most significant contacts, as they are the places of contracting, where performance was to occur, and where Plaintiffs suffered losses."); *In re Hydrogen, L.L.C.,* 431 B.R. 337, 359 (Bankr. S.D.N.Y. 2010) ("The law of the place where the allegedly actions giving rise to the unjust enrichment claim occurred – should also govern the unjust enrichment claim.").

In sum, this Court should dismiss the first cause of action because it improperly seeks to apply Michigan law for all plaintiffs when New York choice of law provisions would require applying the law of each plaintiff's home state.

**IV.**    **Plaintiffs Lack Standing for Injunctive Relief.**

Plaintiffs' alleged past harm does not confer standing to seek injunctive relief. *See City of Los Angles v. Lyons*, 461 U.S. 95, 95-96 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL 2344134, at *3

(E.D.N.Y. May 14, 2015) ("Plaintiffs are now aware of the alleged misrepresentations that they challenge, so there is no danger that they will again be deceived by them . . . .  Accordingly, because the Amended Complaint fails to establish any likelihood of future or continuing harm, injunctive relief is inappropriate here."); *Anderson v. The Hain Celestial Group, Inc.*, 87 F. Supp. 3d 1226, 1234 (N.D. Cal. 2015) ("Generally, '[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects.'") (quoting *Mayfield v. U.S.*, 599 F.3d 964, 970 (9th Cir. 2010)).

Further, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.  Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question of whether the named plaintiffs are entitled to the injunctive relief they seek."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999); *see also Dodge v. Cnty. of Orange*, 103 Fed. App'x 688, 690, (2d Cir. 2004) ("The parties also contend that this case differs materially from *Shain II* for the purposes of standing because this case is a class action.  The argument is unavailing, because the named plaintiffs in this action must themselves have standing to seek injunctive relief.").

Plaintiffs themselves admit that they will not continue to purchase Cheez-It in the future. Compl., ¶17 ("Ms. Mantikas cannot purchase the products because she cannot be confident that the labeling of the products is, and will be, truthful and non-misleading."); ¶27 ("Ms. Burns cannot purchase the products because she cannot be confident that the labeling of the products is, and will be, truthful and non-misleading."); ("Ms. Castle cannot purchase the products because she cannot be confident that the labeling of the product sis, and will be, truthful and non-misleading").

Courts have found that when a complaint lacks any allegation of continuing harm, a plaintiff will lack standing to sue for injunctive relief.  *See, e.g.*, *Hidalgo v. Johnson & Johnson Consumer Cos, Inc.*, No. 15-5199, 2015 WL 8375196, at *5 (S.D.N.Y. Dec. 8, 2015) ("A plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct.  As the

complaint contains no allegations that Hidalgo intends to purchase the Bedtime Products again, she has not plausibly alleged any future injury from these products."); *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (Denying standing because plaintiff "has made clear that she does not believe the ANR products have the effects advertised by Estee Lauder, and that she would not have purchased them in the first place absent the allegedly misleading advertisements.").

Courts have singled out deception as something which is particularly unlikely to be repeated and therefore not worthy of an injunction. *See Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 960 (N.D. Cal. 2015) ("But when the alleged unfair practice is deception, the previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article III to ask a federal court to grant an injunction."); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) ("Consumers who were misled by deceptive food labels lack standing for injunctive relief because there is 'no danger that they will be misled in the future.'") (quoting *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-05222, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014)); *Garrison*, 2014 WL 2451290 at *5 (Court, stating while denying preliminary injunction, that "[t]he named plaintiffs in this case allege that had they known the Whole Foods products they purchased contained SAPP, they would not have purchased them. (Compl., ¶ 13). Now they know.  There is therefore no danger that they will be misled in the future.")

Accordingly, because Plaintiffs have admitted that they have no intention to purchase the products at issue in the future, and because they cannot suffer any harm of being deceived again, they have no standing and therefore their seventh claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint must be dismissed.

Dated:  August 5, 2016

Respectfully submitted,

JENNER & BLOCK LLP

By:____/s/ Kenneth K. Lee_____
Kenneth K. Lee (NY Reg. No. 4056750)

Attorneys for Defendant
KELLOGG COMPANY