**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KRISTEN MANTIKAS, KRISTIN BURNS, and LINDA CASTLE, individually and on behalf of all others similarly situated, | No. 2:16-cv-2552-SJF-AYS |
| Plaintiffs, | Hon. Sandra J. Feuerstein |
| v. | |
| KELLOGG COMPANY, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

**<u>Table of Contents</u>**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ........................................................................................................ 3

    A.   Legal Standard .......................................................................................... 3

    B.   Plaintiffs Sufficiently Allege Violations of New York and California Consumer
        Protection Law. .......................................................................................... 3

    C.   Federal Law Does Not Preempt Plaintiffs' Claims ......................................... 8

        1.   Federal Statutory and Regulatory Background ......................................... 8

        2.   There Is a Presumption Against Federal Preemption of State Law, Especially with
               Respect to State Law Governing Areas the States Traditionally Have Regulated,
               Such as Food Labeling. ........................................................................ 9

        3.   Plaintiffs Seek to Enforce Requirements under State Law That Are Identical to the
               Requirements of Federal Law. ............................................................. 11

        4.   Defendant's Arguments in Favor of Preemption Are Wrong ..................... 14

    D.   Plaintiffs Have Stated a Claim for Unjust Enrichment. ................................ 17

        1.   Plaintiffs May Bring an Unjust Enrichment Claim under Michigan Law against
               Defendant. ........................................................................................ 17

        2.   Plaintiffs Have Conferred a Monetary Benefit on Defendant Sufficient to
               Support their Unjust Enrichment Claim. ................................................ 19

        3.   Choice-of-Law Principles Do Not Warrant Dismissal of Plaintiffs' Unjust
               Enrichment Claim under Michigan Law ................................................. 20

    E.   Plaintiffs Have Standing to Seek Injunctive Relief. .................................... 22

III.  CONCLUSION ................................................................................................... 25

## Table of Authorities

**Cases**

*Ackerman v. Coca-Cola Co.*, No. 09-cv-395 (JG) (RML), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .................................................................................................................. *passim*

*Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412 (S.D.N.Y. 2015)...................................... 4

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981)........................................................................ 18

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ............................................................................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 3

*Atik v. Welch Foods*, Inc., No. 1:15-cv-05405-MKB-VMS, 2016 U.S. Dist. LEXIS 106497 (E.D.N.Y. Aug. 5, 2016)........................................................................................... 4, 5, 7

*Bank v. Am. Home Shield Corp.*, No. 10-CV-4014, 2013 WL 789203 (E.D.N.Y. Mar. 4, 2013) 21

*Barber v. SMH (U.S.), Inc.*, 509 N.W.2d 791 (Mich. Ct. App. 1993) .......................................... 17

*Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015) .................................... 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 3

*Bonanno v. The Quizno's Franchise Co. LLC*, No. CIV.A. 06-CV-02358-W, 2008 WL 638367 (D. Colo. Mar. 5, 2008).................................................................................................. 18

*Boswell v. Costco Wholesale Corp.*, No. 8:16-cv-00278-DOC, 2016 WL 3360701 (C.D. Cal. June 6, 2016) ............................................................................................................ 23, 24

*Campagna v. Language Line Services, Inc.*, No. 08-CV-02488, 2012 WL 1565229 (N.D. Cal. May 2, 2012)................................................................................................................. 19

*Cassese v. Washington Mut., Inc.*, 255 F.R.D. 89 (E.D.N.Y. 2008)............................................. 20

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................... 16

*Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr. 605 (Ct. App. 1987)....................................... 18

*Coe v. Gen. Mills, Inc.*, No. 15-CV-05112-TEH, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) 8, 11, 13

*Collazo v. Wen by Chaz Dean, Inc.*, No. 215CV01974ODWAGR, 2015 WL 4398559 (C.D. Cal. July 17, 2015)................................................................................................................ 18

*Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1189 (S.D. Cal. 2015)................................. 11

*Delgado v. Ocwen Loan Servicing*, No. 13-cv-4427, 2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ........................................................................................................................... 24

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) ................................................... 22

*Elkind v. Revlon Consumer Prods. Corp.*, No. 2:14-cv-02484-JS-AKT (E.D.N.Y. May 6, 2014) ..................................................................................................................................... 23

*Hairston v. South Beach Beverage Co.*, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ............. 17

*Harris v. Las Vegas Sand L.L.C.*, No. 2:12-cv-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) .......................................................................................................................................... 24

*Henderson v. Gruma Corp.*, No. 10 CV 4173, 2011 WL 1362188 (C.D.Cal. Apr. 11, 2011)..... 25

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285 (S.D.N.Y. 2015)..... 23

*Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009).................................................... 10

*Holt v. Foodstate, Inc.*, No. 15CV78 L (JMA), 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015)... 11

*In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1021 (E.D. Mich. 2014) .......................... 20

*In re Checking Account Overdraft Litig.*, 307 F.R.D. 630 (S.D. Fla. 2015)................................. 22

*In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM), 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) ........................................................................................ 4, 6

*In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008) .... 21

*In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) .............................. 22

*In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297 (E.D.N.Y. 2006) ........................ 20

*In re Packaged Ice Antitrust Litigation*, 779 F. Supp. 2d 642 (E.D. Mich. 2011)................. 18, 19

*In re PepsiCo, Inc., Bottled Water Marketing & Sales Practices Litigation*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008) ........................................................................................................................ 16

*Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) ...... 10

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ........................................................ 20

*LaFaro v. New York Cardiothoracic Grp.*, PLLC, 570 F.3d 471 (2d Cir. 2009) .......................... 3

*Lam v. Gen. Mills*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012) .......................................................... 6

*Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998) ..................................................................... 4

*Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936 (N.Y. 1993) ............................................ 21

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ............................................................................... 9

*Miller v. MSX-IBS Holding, Inc.*, No. 16-CV-10596, 2016 WL 4138238 (E.D. Mich. Aug. 4, 2016) .......................................................................................................................................... 20

*Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104 (D.D.C. 2006)........................................ 16

*National Consumers League v. Doctor's Associates*, 2014 D.C. Super. LEXIS 15 (D.D.C. Sept. 12, 2014) ..................................................................................................................................... 7

*NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145 (2d Cir. 2012).. 24

*New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009).... 8

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................. 21

*Plumley v. Com. of Mass*., 155 U.S. 461 (1894)........................................................................... 10

*Portanova v. Trump Taj Mahal Associates*, 704 N.Y.S.2d 380 (2000)........................................ 21

*R.B. Dev., Co. v. Tutis Capital LLC*, No. 12CV1460CBASMG, 2015 WL 10567830 (E.D.N.Y.
     Nov. 6, 2015) ........................................................................................................................... 21

*Red v. Kraft*, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) ...................................... 7

*Rice v. Santa Fe Elevator Corp*., 331 U.S. 218 (1947).................................................................. 10

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) ..................................... 23

*Romantics v. Activision Publ'g, Inc*., 574 F. Supp. 2d 758 (E.D. Mich. 2008) ........................... 17

*Tomasino v. Estee Lauder Cos., Inc*., No. 1:13-cv-04692-ERK-RML (E.D.N.Y. Oct. 15, 2013) 23

*Williams v. Gerber Prods. Co*., 552 F.3d 934 (9th Cir. 2008)................................................ 3, 4, 7

*Wyeth v. Levine*, 555 U.S. 555 (2009) .......................................................................................... 10

## Statutes

21 U.S.C. § 301................................................................................................................................ 8

21 U.S.C. § 321.................................................................................................................... 9, 11, 13

21. U.S.C. § 343............................................................................................ 8, 9, 11, 13, 14, 15, 16

21. U.S.C. § 343-1 ..................................................................................................................... 8, 14

GBL §§ 349 & 350 ........................................................................................................................... 4

## Regulations

21 C.F.R. § 1.21 .......................................................................................................................... 9, 16

21 C.F.R. § 101.13 ....................................................................................................................... 9, 15

21 C.F.R. § 101.15 ........................................................................................................................... 9

21 C.F.R. § 101.18 .................................................................................................................. 9, 13, 16

21 C.F.R. § 101.54 ........................................................................................................................... 9

21 C.F.R. § 101.65 ....................................................................................................................... 9, 15

21 C.F.R. § 102.5 .............................................................................................................. 9, 11, 12, 13

**Rules**

56 Fed. Reg. 60,528, 60,530 (Nov. 27, 1991)...................................................................... 8

Fed. R. Civ. P. 23(b)(3)(D) ............................................................................................. 21

Kristen Mantikas, Kristin Burns, and Linda Castle ("Plaintiffs") hereby respectfully submit their opposition to the motion to dismiss ("Mem.") filed by defendant Kellogg Co. ("Defendant").  As Plaintiffs argue below, the Court should deny Defendant's motion in full.

## I.      INTRODUCTION

Plaintiffs allege that Defendant Kellogg markets and sells "Cheez-It WHOLE GRAIN" crackers, emblazoning "WHOLE GRAIN" in large lettering on the front of the box over an enlarged picture of three of crackers, next to images of stalks of unprocessed wheat.  ¶ 50, Illustration 1.[1]  A reasonable consumer would rely on the large-print representations on the front of the box as an accurate description of its contents.  This is material to consumers because they are increasingly aware of the important health benefits derived from consuming whole grain as opposed to refined grain.

These "WHOLE GRAIN" representations are deceptive and misleading.  Defendant intends to convey that the grain in Cheez-It Whole Grain is from whole grain and not refined grain and, consequently, a healthy and nutritious product.  Indeed, the Federal Trade Commission ("FTC") has found that these type of claims are misleading to consumers as they are likely to perceive them to mean that a product is 100% or nearly 100% whole grain.  ¶ 49 (citing Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission, In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066, at 13 (Apr. 18, 2006)).

In reality, the primary ingredient in the product is not whole grain, but refined grain, which is considered inferior to whole grain.  Whole grain is only a minor ingredient in the

---

[1] Citations beginning with "¶" are to paragraphs of the complaint in this action, Dkt. No. 1.

product.  There is more *oil* in the product than there is whole grain.  ¶ 52.  "WHOLE GRAIN"

Cheez-It crackers are not any healthier than "ORIGINAL" Cheez-It crackers.  ¶ 5.  The amount

of whole grains in the "WHOLE GRAIN" product does not meet the United States Dietary

Guidelines, which cite "strong and consistent evidence" that higher consumption of whole grains

and lower intake of refined grains is associated with decreased risk of cardiovascular disease,

and recommend that people dramatically increase their intake of whole grains.  ¶ 46.  In sum,

consumers are deceived and not getting what they paid for.

Despite these compelling facts, Defendant has moved to dismiss.  First, Defendant asks

this Court to rule as a matter of law on the pleadings that no reasonable consumer could be

misled (as Plaintiffs were) to think that the grain in the product is whole grain, when in fact it is

not.  As courts repeatedly have recognized, it is improper to find as a matter of law on a motion

to dismiss how a reasonable consumer would interpret the marketing of a food product such as at

issue here.

Second, Defendant's preemption argument fails.  Preemption of misleading labeling

claims only occurs if there is *express* preemption.  Here, Defendant's argument fails because

federal law, like state law, ***prohibits misleading labelling of food***.  Plaintiffs seek to enforce the

same standard as federal law, so there is no preemption.

Third, Defendant's argument against Plaintiffs' unjust enrichment claim also fails.

Courts routinely allow a consumer the protection of the state law in which the Defendant is

located and alleged to have formulated the misleading representations at issue.

Last, Plaintiffs have standing to seek injunctive relief, because they allege that they

would purchase the product if it conformed with its labeling.  And even if they did not make

such allegations, plaintiffs have standing to enjoin an ongoing practice on behalf of consumers.

Accordingly, Defendant's Motion to Dismiss should be denied in its entirety.

## II.    ARGUMENT

### A.    Legal Standard

A motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).   Moreover, plausibility does *not* require probability.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.   Indeed, courts have repeatedly stated that food labeling cases where motions to dismiss should be granted are "rare." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("*Gerber*") (stating that the allegations of the complaint "do not amount to the rare situation in which granting a motion to dismiss is appropriate.").  Here, given the compelling claims of deceptive advertising practices, well-supported with factual allegations, the Complaint more than meets the notice pleading standards of the Federal Rules.

### B.    Plaintiffs Sufficiently Allege Violations of New York and California Consumer Protection Law.

Plaintiffs allege that Defendant's representations of its Cheez-It "Whole Grain" crackers are false and misleading, in violation of the consumer protection laws of New York and California.  ¶¶ 90-141.  As courts in this District and elsewhere have observed, these claims are

3

all governed by the "reasonable consumer" test. *Atik v. Welch Foods, Inc.*, No. 1:15-cv-05405-MKB-VMS, 2016 U.S. Dist. LEXIS 106497, at *24-25 (E.D.N.Y. Aug. 5, 2016) (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998)) (GBL §§ 349 & 350); *Gerber*, 552 F.3d at 983 (9th Cir. 2008) (UCL, FAL, and CLRA). Courts uniformly "have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on" a motion to dismiss. *See e.g. In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM), 2013 U.S. Dist. LEXIS 123824, *49 (E.D.N.Y. Aug. 29, 2013) (stating that whether labeling is deceptive "is generally not resolved on a motion to dismiss"); *Gerber*, 552 F.3d at 938.

The leading case construing the "reasonable consumer" standard in the food labeling context is the Ninth Circuit's decision in *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), which has since been adopted by courts in this District. The district court in *Gerber* had concluded that a reasonable consumer reviewing the package *as a whole* could not have been misled. The Ninth Circuit disagreed and reversed:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.* at 939-40.

Courts within the Eastern District of New York have adopted the Ninth Circuit's logic in *Gerber*. For example, in *Ackerman v. Coca-Cola Co.*, No. 09-cv-395 (JG) (RML), 2010 WL 2925955, at *1 (E.D.N.Y. July 21, 2010), consumers alleged that the defendants made false and

4

misleading marketing health claims regarding their "vitaminwater" product, and brought claims under New York and California consumer protection statutes. Plaintiffs alleged several misleading statements on the product's labeling, portraying the product as healthy, when it was essentially a fortified junk food. Defendants contended that no reasonable consumer could have been misled by the product's labeling, because the ingredient label contained accurate information about the amount of sugar per serving. This Court rejected Defendant's contention, quoting the passage from *Gerber* above: "the presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing." *Id.* at *62-63. The court in *Ackerman* concluded that consumers could reasonably be expected to rely on the label claims as accurate descriptions of the food, stating "it seems clear that such an impression was precisely what defendant intended to convey. If that were not the case, it is difficult to understand what defendant had in mind." *Id.* at *67 (quoting *Miller v. Am. Family Publishers,* 663 A.2d 643 (N.J. Super. 1995)).

In *Atik v. Welch Foods, Inc.,* No. 15-CV-5405 (MKB) (VMS), 2016 U.S. Dist. LEXIS 106497 (E.D.N.Y. Aug. 5, 2016), plaintiffs brought claims under the UCL and GBL, alleging that Welch's deceptively marketed a "fruit snack" product as "Made With REAL Fruit," when in fact the product was no more healthy than candy, and was predominantly made of sugar and unhealthy ingredients. The court credited plaintiffs' allegations on defendants' motion to dismiss, "that the effect of the labeling was to mislead potential purchasers into believe there is a significant amount of the fruit depicted on the packaging in the Fruit Snacks when, in fact, there is not[.]" *Id.* at *27-28. The court stated, "it would be premature to hold that no reasonable consumer would be misled by Defendants' misrepresentations." *Id.* at *28. *See also Lam v. Gen. Mills,* 859 F. Supp. 2d 1097, 1099–1100 (N.D. Cal. 2012) (fruit roll-up products' names, in

5

combination with their "made with real fruit" claims, could mislead a reasonable consumer into thinking the product was made primarily of fruit); *Wilson v. Frito–Lay N. Am.*, 2013 WL 1320468, at *12 (N.D. Cal. Apr. 1, 2013) (claim "Made with ALL NATURAL Ingredients" on the products' labels could mislead a reasonable consumer into thinking the products were entirely made of natural ingredients); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418-19 (S.D.N.Y. 2015) (sustaining claims under New York and California consumer law; manufacturer conveyed impression that almond milk products contained a significant amount of almonds, with the health benefits ascribed to almonds, when in fact the product was mostly water and contained a small percentage of almonds).

The case here fits squarely with the holdings and reasoning of *Gerber, Ackerman, Albert* and *Atik,* denying motions to dismiss in food cases.  Defendant's statement that its product is "WHOLE GRAIN" is false and misleading, which Defendant knew or should have known was false and misleading, and which has a capacity or deceive or confuse a reasonable consumer.  Kellogg represents that Cheez-It is "WHOLE GRAIN" to create the impression that the product is composed substantially or entirely of whole grain, and consumers purchase the product to obtain the nutritional benefits that whole grain foods provide.

Defendant makes the same argument that *Gerber* and other courts have rejected:  "Cheez-It has never been advertised as containing whole grains only.  To the contrary, the ingredient list on the Cheez-It packaging discloses that it contains both enriched flour and whole wheat flour (as the third-highest ingredient by weight)."  Mem. at 3.   It is well-established that a retailer cannot make any representations it wants on the front of its packaging as long as it corrects itself in small print on the side of the box.  *See, e.g., Gerber*, 552 F.3d at 939 (quoted above).  It is

precisely this kind of misleading behavior that consumer protection laws seek to remedy and deter.

Finally, two relatively recent cases in the District of Columbia sustained consumer claims that "whole grain" products were deceptively labeled.  *See National Consumers League v. Doctor's Associates*, 2014 D.C. Super. LEXIS 15 (D.D.C. Sept. 12, 2014) ("The court finds that whether the overall representations made by BBUSA are representations about the "characteristics, ingredients, uses, benefits, or quantities," "particular standard," or "quality" is an issue of fact, which should not be resolved at the motion to dismiss stage but more appropriately at trial."); *National Consumers League v. Bimbo Bakeries USA*, 2015 D.C. Super. LEXIS 5, 2-4 (D.D.C. Apr. 2, 2015) (products marketed as containing significant amounts of whole grain in fact contained minimal amounts of whole grain, which would mislead consumers as to other products that did contain substantial amounts of whole wheat).[2]

Accordingly, Defendant's argument regarding the reasonable consumer must be rejected.

---

[2] Defendant *only* argues that Plaintiffs have not plausibly "shown" that the phrase "Made With Whole Grain," which they make clear only appears on a version of the box that they sold only in 2016, is likely to deceive a reasonable consumer, and limits its argument to cases featuring a "made with" claim. Mem. at 5-10. Even if this argument were dispositive here, it has no merit. The primary authority that Defendant relies on, *Red v. Kraft*, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) completely undermines this argument, and Defendant ignores *Atik*, which distinguishes that very case. Plaintiffs in *Red* alleged that Kraft cracker products carrying the claim "Made with Real Vegetables" were deceptive because they did not contain significant amounts of vegetables. The court concluded that no reasonable consumer would look at box of crackers claiming that it was "made with real vegetables," and conclude that it contained significant amounts of vegetables. "[T]he product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables." *Id.* It is a very different "fact of life" when the misrepresentation concerns the *primary* ingredient of the product, as this Court explained in *Atik*: *"Red* dealt with a product that made clear it was one food item, crackers, while advertising that it included another type of food item, vegetables. The packaging at issue made it clear to the consumer that they were purchasing a box of crackers, which the ordinary person would know are not generally made of vegetables." Atik, 2016 U.S. Dist. LEXIS 106497, at *34. Thus, in *Atik*, a claim that fruit snacks were "made with real fruit" *was* potentially deceptive, because "Fruit Snacks are advertised as primarily fruit." *Id.* A cracker that is "made with real vegetables" only suggests that it contains real vegetables in some amount, not that they predominate over some other similar, lesser ingredient. By its reasoning, *Red* would have gone the other way if its claim was "made with whole grain," because grain is the primary ingredient in crackers. That is the case here: "WHOLE GRAIN" is represented not as a flavoring or a supporting player in crackers, but as the main event.

### C.     Federal Law Does Not Preempt Plaintiffs' Claims.

Defendant argues that federal law preempts Plaintiff's claims.  Mem. at 10–13.

Defendant is wrong.  It is black letter law that actions for misleading food labels are not

preempted, as the federal law Defendant relies upon itself prohibits "labeling [that] is false or

misleading"  *See, e.g., Coe v. Gen. Mills, Inc.*, No. 15-CV-05112-TEH, 2016 WL 4208287, at *3

(N.D. Cal. Aug. 10, 2016) ("By its terms, the express preemption provision does not bar the

enforcement of state laws imposing requirements [that mirror] the requirement in § 343(a)(1)

addressing false or misleading labels.").  Accordingly, Defendant's preemption arguments must

be rejected.

### 1.     Federal Statutory and Regulatory Background

Congress enacted the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* in

1938 ("FDCA"). The FDCA generally prohibits misbranding of food.  21 U.S.C. § 343; *New*

*York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009).   In

1990, Congress amended the FDCA by enacting the Nutrition Labeling and Education Act of

1990, Pub. L. No. 101–535, 104 Stat. 2353 (1990) (the "NLEA").  Among other things, the

NLEA added an express preemption provision to the FDCA.  *See* 21 U.S.C. § 343-1.  Congress

expressly limited the NLEA's preemptive reach, stating that the statute "shall not be construed to

preempt any provision of State law, unless such provision is expressly preempted under [21

U.S.C. § 343-1]." NLEA § 6(c) (statutory note to 21 U.S.C. § 343-1); *accord New York State*

*Rest. Ass'n*, 556 F.3d at 123.  As the FDA has explained, this statutory language "clearly

manifests Congress' intention that the 1990 amendments" are not to preempt state law unless

they fall within the NLEA's express terms.  56 Fed. Reg. 60,528, 60,530 (Nov. 27, 1991).

Claims are not preempted "(1) if the plaintiffs' claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) if the requirements plaintiffs seek to impose are not with respect to claims of the sort" set forth in the express preemption clause. *See Ackerman*, 2010 WL 2925955, at *6. ("If there is no applicable Federal requirement that has been given preemptive status by Congress, there is no competing claim of jurisdiction, and, therefore, no basis under the 1990 amendments for Federal preemption[.]").

Significantly, the FDCA states that a food is misbranded and in violation of the law if:

- "its labeling is false or misleading in any particular," § 343(a)(1); *see also* 21 U.S.C. § 321(n); 21 C.F.R. §§ 1.21(a)–(b), 101.18(b);

- the information the FDCA requires to appear on the label "is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use," § 343(f); *see also* 21 C.F.R. § 101.15(a).

- its label does not bear "the common or usual name of the food, if any there be," § 343(i); *see also* 21 C.F.R. § 102.5, *or*

- its label bears "nutrient content claims" that fail to comply with federal law. *See* § 343(r)(1)(A), (r)(2); *see also* 21 C.F.R. §§ 101.13, 101.54, 101.65

**2.     There Is a Presumption Against Federal Preemption of State Law, Especially with Respect to State Law Governing Areas the States Traditionally Have Regulated, Such as Food Labeling.**

A court's inquiry into the preemptive effect of a federal statute "is guided by the rule that 'the purpose of Congress is the ultimate touchstone in every pre-emption case." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996). "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic*, 518 U.S. at 485. In all preemption cases, and particularly in those in which Congress has "legislated . . . in a field which the States have traditionally occupied," the courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was

the **clear and manifest** purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218,

230 (1947) (emphasis added); *accord Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Health and safety regulation (including regulation of food labeling) is a field that states

have traditionally occupied, and for this reason, "there is a strong presumption against federal

preemption." *Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065, at *5 (E.D.N.Y.

Sept. 27, 2013); *accord Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009)

("Health and safety issues have traditionally fallen within the province of state regulation. This is

true of the regulation of food and beverage labeling and branding."); *Ackerman*, 2010 WL

2925955, at *6. Indeed, as the U.S. Supreme Court has held: "[i]f there be any subject over

which it would seem the states ought to have plenary control . . . it is the protection of the people

against fraud and deception in the sale of food products." *Plumley v. Com. of Mass.*, 155 U.S.

461, 472 (1894).

> ### 3. Plaintiffs Seek to Enforce Requirements under State Law That Are Identical to the Requirements of Federal Law.

Federal law does not preempt Plaintiffs' state law claims because, as detailed below,

Plaintiffs' claims align with the FDCA and its implementing regulations. ***Specifically,***

***Plaintiffs' state law claims for false or misleading advertising parallel the general federal***

***prohibition in 21 U.S.C. § 343(a) against false and misleading food labeling.*** Accordingly, the

FDCA's express preemption provision does not apply to these claims here. *See, e.g., Coe v.*

*Gen. Mills, Inc.*, No. 15-CV-05112-TEH, 2016 WL 4208287, at *3 (N.D. Cal. Aug. 10, 2016)

("By its terms, the express preemption provision does not bar the enforcement of state laws

imposing requirements [that mirror] the requirement in § 343(a)(1) addressing false or

misleading labels."); *Holt v. Foodstate, Inc.*, No. 15-CV-78 L (JMA), 2015 WL 9592534, at *4

(S.D. Cal. Dec. 31, 2015); *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1189 (S.D. Cal.

2015); *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010); *Zupnik v. Tropicana Products, Inc.*, No. CV 09-6130 DSF RZX, 2010 WL 6090604, at *6 (C.D. Cal. Feb. 1, 2010).

Second, independent of the general prohibition under the NLEA against false or misleading labeling, Plaintiffs' state law claims align with 21 C.F.R. § 102.5, which states:

> The common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance[.]

21 C.F.R. § 102.5(c).

In promulgating § 102.5, the FDA stated that the disclosure of the amount (or, by implication, the presence) of a characterizing ingredient is a "material fact" within the meaning of 21 U.S.C. § 321(n) and that "[d]isclosure of this fact is often necessary for the consumer to choose between two competing products when the amount of the ingredient is important to the value of the food." *Common or Usual Names for Nonstandardized Foods*, 38 Fed. Reg. 6964, 6964 (Mar. 14, 1973).

Plaintiffs' state law claims seek to impose requirements that are identical to the requirements of § 102.5.  Plaintiffs allege that enriched flour is a characterizing ingredient of "Whole Grain" Cheez-It that has a material bearing on the product's price and on consumer acceptance of the product. ¶¶ 43–48, 56–65.  The common or usual name of the product, "baked snack crackers whole grain" or "baked snack crackers made with whole grain," misleadingly fails to mention the presence of this characterizing ingredient.  ¶ 50.  Thus, Plaintiffs allege the "Whole Grain" Cheez-It product's name violates § 102.5(c) and identical state laws prohibiting misleading labeling, and, as a result, federal law does not preempt Plaintiffs' claims.

11

Similarly, Plaintiffs' state law claims parallel § 102.5(b), which requires that:

> The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.

Plaintiffs allege that whole grain is a characterizing ingredient of "Whole Grain" Cheez-It that has a material bearing on price or consumer acceptance, as the level of whole grain is material to consumers' decisions to purchase the product. ¶¶ 43–48, 56–65.  Further, the name "baked snack crackers whole grain," or "baked snack crackers made with whole grain," is misleading because it creates the misimpression that whole grain is present in the product in an amount greater than is actually the case.  ¶ 50.  Thus, Plaintiffs allege the "Whole Grain" Cheez-It product's name violates § 102.5(b) and identical state laws prohibiting misleading labeling, and, as a result, federal law does not preempt Plaintiffs' claims.

Third, under § 101.18(b), the FDA recognizes that "[t]he labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 101.18(b); *see also* 21 U.S.C. § 321(n).

Plaintiffs' state law claims align with § 101.18(b). Plaintiffs allege that while Defendant prominently identifies whole grain in the name of the "Whole Grain" Cheez-It product, Defendant fails to state that the primary ingredient in the product is enriched white flour, and that this omission misleads reasonable consumers.  ¶¶ 1-9.   Thus, Plaintiffs' state law misleading

labeling claims are identical to claims based on a violation of § 101.18(b) and, consequently, federal law does not preempt Plaintiffs' claims.

Finally, regardless of whether the product violates 21 C.F.R. § 102.5 or 101.18, it falls within the catch-all, anti-consumer deception provision of ***21 U.S.C. § 343(a)*, which prohibits any false or misleading food label.** The recent case of *Coe v. General Mills, Inc.*, No. 15-CV-05112-TEH, 2016 WL 4208287, at *3 (N.D. Cal. Aug. 10, 2016) (N.D. Cal. 2016), illustrates this point: plaintiffs alleged that defendant's product label, and specifically its name, "Cheerios Protein," was misleading because consumers expected that the product would contain substantially more protein than regular Cheerios. Defendant moved to dismiss on preemption grounds. The court rejected the argument:

> Under 21 U.S.C. § 343(a)(1), a food is "misbranded" if its "labeling is false or misleading in any particular." This catch-all prohibition against false or misleading labeling is a more general obligation to refrain from deceptive conduct. By its terms, the express preemption provision does not bar the enforcement of state laws imposing requirements of that type –that is, a state-law mirror of the requirement in § 343(a)(1) addressing false or misleading labels. Fairly but narrowly construed, § 343-1(a) does not prohibit Plaintiffs from asserting a claim premised on a violation of § 343(a)(1).
>
> * * *
>
> Because Congress has also allowed states, at the very least, to pass statutes identical to § 343(a), a private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a), just as the FDA would be able to sue to enforce § 343(a) itself.

*Id.* at *3. In sum, because Plaintiffs seek to enforce state law requirements that are identical to federal law requirements that prohibit misleading labeling, nothing in the NLEA's express preemption provision, or federal law generally, preempts Plaintiffs' claims.

### 4.        Defendant's Arguments in Favor of Preemption Are Wrong.

Kellogg argues that federal law preempts Plaintiffs' claims because "Made with 8g of Whole Grain"[3] is an express nutrient content claim, and "Made with Whole Grain" is an implied nutrient content claim, and "[f]ederal regulations issued pursuant to the NLEA expressly permit a food manufacturer to make both an 'expressed nutrient content claim' and an 'implied nutrient content claim.'" Mem. at 11.

First, Defendant is wrong to assert that Made with Whole Grain is an implied nutrient claim.  Specifically, 21 C.F.R. § 101.65 states as follows:

> (b) *Label statements that are not implied claims*. Certain label statements about the nature of a product are not nutrient content claims unless such statements are made in a context that would make them an implied claim under § 101.13(b)(2). *The following types of label statements are generally not implied nutrient content claims* and, as such, are not subject to the requirements of § 101.13 and this section:
>
> *    *    *    *    *
>
> (3) A claim about the presence of an ingredient that is perceived to add value to the product, e.g., "made with real butter," *"made with whole fruit,"* or "contains honey," except that claims about the presence of ingredients other than vitamins or minerals or that are represented as a source of vitamins and minerals are not allowed on labels or in labeling of dietary supplements of vitamins and minerals that are not in conventional food form.

21 C.F.R. § 101.65(b)(3) (emphasis added).[4]   The FDA has further clarified that:

> A few comments stated that claims about ingredients that provide added value to products convey important information about the quality of the products and *should not be considered implied nutrient content claims.* The comments suggested that claims such as "made with butter," "contains buttermilk," *"made with whole wheat flour,"* "contains real

---

[3] With respect to the statements "Made with 5g of Whole Grain" and "Made with 8g of Whole Grain," Plaintiffs allege that nothing on the "Whole Grain" Cheez-It product's box "provides any context for how much 5 or 8 grams of whole grain is, in relationship to the much larger amount of refined grain." ¶ 53.

[4] Cheez-it Whole Grain (which is the label that is the focus of the Complaint, but which Defendant ignores) is also not an implied nutrient claim.

fruit," or "made with natural, not processed, cheese" would be examples
of added value claims.

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 58

Fed. Reg. 2302, 2369 (Jan. 6, 1993) (emphasis added).

Nonetheless, even assuming *arguendo* that the Whole Grain statement is a nutrient

content claim (which it is not), simply stating that a representation is a "nutrient content claim"

does not mean that a product label can be false and misleading.  If it did, any nutrient content

claim would immunize a manufacturer from liability.  Mem. at 11-13.  Rather, it is subject to the

catch-all anti-consumer deception provision of 21 U.S.C. § 343(a)(1) that prohibits and false or

misleading labeling.  *See also* 21 C.F.R. § 101.13 (f) & (i)(3) (requiring that any nutrient content

claim not be "false or misleading in any respect," and moreover, not be unduly prominent in

size).

Plaintiffs' state law claims do not seek to impose requirements with respect to the status

of the representations at issue as nutrient content claims.  Rather, Plaintiffs assert that the

representations are false and misleading, in violation of 21 U.S.C. § 343(a)(1), and, additionally,

that they violate 21 C.F.R. § 102.5(b) and (c), and 21 C.F.R. § 101.18(b).  *See* ¶ 108.

Consequently, the NLEA's express preemption provision does not bar Plaintiffs' claims.

The cases Defendant cites are inapposite.  In *Mills v. Giant of Maryland, LLC*, 441 F.

Supp. 2d 104 (D.D.C. 2006) (cited in Mem. at 10), plaintiffs did not bring consumer fraud

claims; rather, they claimed that milk products should inform consumers that they were likely to

be lactose-intolerant, and their failure to do so constituted a negligent failure to warn.  *Id.* at 105.

*Mills* is also off-point because the effect of the plaintiffs' claims, if they were successful, would

have been to impose requirements that contradicted the requirements of the standard of identity

of the milk products at issue, *id.* at 108.  Here, there is no standard of identity for the "Whole

Grain" Cheez-It products, and no FDA requirement that is contradicted.[5]

Defendant also cites *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal.

2010), in which the plaintiffs alleged that Quaker's "Chewy Bars" labeling was misleading

because it represented the bars were "made with whole grain oats," which, according to the

plaintiffs, implied the products were "wholesome and healthful," even though the products also

contained "dangerous amounts" of artificial trans fat.  Mem at 11 citing *Chacanaca*, 752 F.

Supp. 2d at 1121-22.  The court held that federal law preempted these claims because they would

effectively treat trans fat as a "disqualifying nutrient," even though the FDA had "expressly

decided *not* to recognize trans fats as a disqualifying nutrient." *Id.* at 1122.   Here, Plaintiffs do

not seek to treat enriched flour as a disqualifying nutrient; rather, they allege Kellogg represents

the products at issue are made of "WHOLE GRAIN," when in fact the products are made

primarily of inferior, refined grain.

Finally, the decision in *Hairston v. South Beach Beverage Co.*, 2012 WL 1893818 (C.D.

Cal. May 18, 2012) (cited in Def. Mem. at 13), is also inapposite.  In *Hairston*, the label stated

that the products were "all natural with vitamins" or "all natural with B vitamins." *Id.* at *4.  The

court concluded that "no reasonable consumer would read the 'all natural' language as

modifying the 'with vitamins' language and believe that the added vitamins are suppose[d] to be

'all natural vitamins.'"  *Id.* at *5.  Plaintiffs do not ask the Court to make the sort of illogical leap

that was at issue in *Hairston*.

---

[5] Similarly, Kellogg's citation to *In re PepsiCo, Inc., Bottled Water Marketing & Sales Practices Litigation*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008) ("*PepsiCo*") (*see* Mem. at 11), is misplaced, because in *PepsiCo*, the court held the plaintiffs' claims would impose requirements that exceeded the requirements of the standard of identity for the purified water products at issue. *PepsiCo*, 588 F. Supp. 2d at 534–37.

D.      **Plaintiffs Have Stated a Claim for Unjust Enrichment.**

      1.      **Plaintiffs May Bring an Unjust Enrichment Claim under Michigan Law against Defendant.**

Defendant argues that Plaintiffs "lack standing to bring an unjust enrichment claim under Michigan law because they are citizens of New York or California and purchased Cheez-Its in their home states."  Mem. at 14.  Defendant is wrong.  Under Michigan law, "[t]he elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Romantics v. Activision Publ'g, Inc*., 574 F. Supp. 2d 758, 771 (E.D. Mich. 2008) (quoting *Barber v. SMH (U.S.), Inc.,* 509 N.W.2d 791, 796 (Mich. Ct. App. 1993)).  Plaintiffs have plainly satisfied both requirements.  They allege that "Defendant received a benefit of monetary compensation without providing the 'WHOLE GRAIN' benefits Defendant promised to Plaintiffs and the Class members."  ¶ 86.  Plaintiffs also allege that it would be inequitable to for Defendant to retain the benefits it received from Plaintiffs and the proposed class, given that the product and its benefits were not from Defendant represented them to be.  ¶ 87.

Furthermore, Plaintiffs may assert an unjust enrichment claim under Michigan law against Defendant because: (i) its headquarters are in Michigan, ¶ 37; (ii) its misrepresentations concerning the "Whole Grain" Cheez-It products originated in, and emanated from, Michigan; and (iii) its misrepresentations concerning the Cheez-It products directly led to Plaintiffs' injuries.  These connections between Plaintiffs' injuries and Michigan are sufficient to enable Plaintiffs to invoke Michigan law.  *See e.g. Collazo v. Wen by Chaz Dean, Inc.*, No. 215CV01974ODWAGR, 2015 WL 4398559, at *5 (C.D. Cal. July 17, 2015) ("Decisions regarding contents of a product and advertising a product are decisions that inherently begin and end at a company's principal place of business.")*; Allstate Ins. Co. v. Hague*, 449 U.S. 302, 317–

17

18 (1981) ("By virtue of its presence, Allstate can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved."); *Bonanno v. The Quizno's Franchise Co. LLC*, No. CIV.A. 06-CV-02358-W, 2008 WL 638367, at *3 (D. Colo. Mar. 5, 2008) ("Here, the Plaintiffs allege that the Defendants have perpetuated a fraud arising out of business practices conducted in Colorado by a Colorado company. The alleged deceptive trade practices resulted from corporate policies and decisions instituted in Colorado."); *Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr. 605, 609–10 (Ct. App. 1987) ("Clothesrigger identified California's fraud deterrence and consumer protection interests in applying its law to the claims of nonresident plaintiffs. Under certain facts California may have an important interest in applying its law to punish and deter the alleged wrongful conduct.").[6]

The question of whether Plaintiffs may bring an unjust enrichment claim under Michigan law is not jurisdictional, given the facts Plaintiffs have alleged. The court's analysis in *Campagna v. Language Line Services, Inc.*, No. 08-CV-02488, 2012 WL 1565229 (N.D. Cal. May 2, 2012) is on point. In *Campagna*, the plaintiffs, which included an Iowa resident, brought employment-related claims under California law against their employer, the defendant, which had employees throughout the country. *Id*. at *1. The defendant argued the court did not have subject matter jurisdiction over the claims of non-California employees, including the Iowa-based plaintiff, because California law did not apply to those employees. *Id.* at *2. The court, however, stated that resolution of this issue was "not truly jurisdictional" and was "better viewed as a request for judgment on the pleadings." *Id.* The court further stated that "[t]o justify

---

[6] *In re Packaged Ice Antitrust Litigation*, 779 F. Supp. 2d 642 (E.D. Mich. 2011), which Defendant cites (Mem. at 14), is distinguishable because the plaintiffs pled claims for violation of the laws of 26 states in which the plaintiffs did not reside, but the plaintiffs pled no facts on which to find a "connection" between an alleged injury and some wrongful conduct that would implicate the laws of any of the 26 states. *See In re Packaged Ice Antitrust Litigation*, 779 F. Supp. 2d at 646–51, 657–59.

dismissal for lack of subject matter jurisdiction on the grounds requested by [the defendant], the court would have to conclude that the facts alleged cannot support a claim on behalf of a class that would give rise to federal jurisdiction" and that "[n]one of [the defendant's] arguments is sufficiently persuasive on the facts before the court at this time to justify dismissal for want of jurisdiction." *Id.* Here as in *Campagna*, none of Kellogg's arguments are sufficiently persuasive on the facts to justify dismissal for want of jurisdiction.

### 2. Plaintiffs Have Conferred a Monetary Benefit on Defendant Sufficient to Support their Unjust Enrichment Claim.

Defendant argues that Plaintiffs cannot state a claim for unjust enrichment under Michigan law because Plaintiffs have not pled facts to satisfy the first element of the claim, as they "do not allege any *direct* contact or transaction between themselves and Kellogg, nor do they allege that they have in any way directly conferred a benefit upon Kellogg." Mem. at 15. Defendant is wrong. "Michigan law does not require a benefit to be conferred directly by plaintiff to a defendant." *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1021 (E.D. Mich. 2014); *accord Miller v. MSX-IBS Holding, Inc.*, No. 16-CV-10596, 2016 WL 4138238, at *7 (E.D. Mich. Aug. 4, 2016) ("Plaintiffs are correct that Michigan law does not require a direct link between defendants' benefit and plaintiffs' detriment; rather, the question is whether plaintiffs have shown that their detriment and defendants' benefit 'are related and flow from the challenged conduct.'"); Here, Plaintiffs have alleged Kellogg unjustly received from Plaintiffs the purchase price of the Cheez-It products Plaintiffs purchased. ¶ 85. This is sufficient to support a Michigan claim for unjust enrichment. *Id.* at *7.

19

**3.      Choice-of-Law Principles Do Not Warrant Dismissal of Plaintiffs' Unjust Enrichment Claim under Michigan Law.**

Without explaining why a conflict-of-law analysis is necessary on a motion to dismiss, Defendant argues that conflict-of-law principles prohibit Plaintiffs from bringing an unjust enrichment claim under Michigan law.  Mem. at 15–16.  The Court should reject Kellogg's argument for at least three reasons.[7]

First, Defendant's conflict-of-law argument is premature. Most courts in the Second Circuit "have declined to consider potential variation in state law among the plaintiffs' claims" even at the class certification stage.  *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 305 (E.D.N.Y. 2006) (certifying class despite alleged conflicts in state law); *see also Cassese v. Washington Mut., Inc.*, 255 F.R.D. 89, 97 (E.D.N.Y. 2008) (certifying nationwide class despite "potential variations among state consumer protection statutes").  Moreover, the question of whether material differences among state laws render the proposed nationwide class unmanageable "is not independent of the class certification inquiry [under Rule 23(b)(3)] and should not be applied prior to that stage of the litigation." *See Bank v. Am. Home Shield Corp.*, No. 10-CV-4014, 2013 WL 789203, at *3 (E.D.N.Y. Mar. 4, 2013); Fᴇᴅ. R. Cɪᴠ. P. 23(b)(3)(D).

Second, Defendant has not carried its burden of showing, on the facts of this case, an actual conflict between application of Michigan law and the law of another jurisdiction. According to the Court of Appeals of New York, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993); *accord R.B. Dev., Co. v. Tutis Capital LLC*, No. 12CV1460CBASMG, 2015 WL

---

[7] Plaintiffs agree that New York's choice-of-law rules apply.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity must apply the choice-of-law rules of the state in which the court is located). (*See* Mem. 15–16.)

10567830, at *3 (E.D.N.Y. Nov. 6, 2015).[8] "An actual conflict exists when there are 'relevant substantive differences that could have a significant impact on the outcome of the case.'" *R.B. Dev., Co.*, 2015 WL 10567830, at *3.  If there is no actual conflict, the choice-of-law analysis ends. *Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E.2d at 938; *accord Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12CV5354KAMRLM, 2016 WL 1274014, at *3 (E.D.N.Y. Mar. 31, 2016); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit.").  The burden is on the party raising the choice-of-law issue to assert that a conflict actually exists. *Portanova v. Trump Taj Mahal Associates*, 704 N.Y.S.2d 380, 383 (2000).

As the party asserting that a choice-of-law analysis is necessary, Defendant bears the burden of showing an actual conflict between Michigan's unjust enrichment law and the unjust enrichment laws of the other states.  *Id.* at 383.  Yet Defendant simply omits this step from its analysis.  It provides no examples of conflicts between the relevant state laws, let alone conflicts that, based on the facts of this litigation, might make a "material difference that would affect the merits of the class's . . . claims at trial." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 570 (S.D.N.Y. 2014).  For this independent reason, the Court should reject Kellogg's choice-of-law argument.

Third, while it is not Plaintiffs' burden to show this is the case, the states' unjust enrichment laws are substantially the same across the country.[9]  Indeed, due to these similarities, courts have certified nationwide unjust enrichment classes. "There is general agreement among

---

[8] Kellogg relies significantly upon *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008) (*see* Mem. at 15–16.), which is in accord with this proposition.  *See id.* at 147.

[9] *See* Exhibit A (chart showing unjust enrichment laws nationwide).

courts that the 'minor variations in the elements of unjust enrichment under the laws of the various states . . . are not material and do not create an actual conflict.'" *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015); *see also In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict.").

###### E.    Plaintiffs Have Standing to Seek Injunctive Relief.

Finally, Defendant argues that Plaintiffs lack standing to seek injunctive relief.  More specifically, that since "Plaintiffs themselves admit that they will not continue to purchase Cheez-It [Whole Grain] in the future," they cannot individually be harmed again and, *a fortiori*, lack standing. Def. Mem. at 16-18.  Defendant is wrong on the facts and the law.

First, Defendant plainly contradicts the allegations of the complaint.  Plaintiffs allege that they *would* purchase Cheez-It Whole Grain if Defendant ceased its deception and optimized the product consistent with its labeling ¶17 ("Mantikas knew that the Cheez-It Whole Grain crackers' labels were truthful and non-misleading, ***she would continue to purchase the products in the future***." (emphasis added)), ¶ 27 (same for Plaintiff Burns), ¶ 35 (same for Plaintiff Castle).  Many courts have held that plaintiffs have standing to obtain injunctive relief where they allege an intent and/or willingness to purchase a product again after deceptive marketing is remedied.[10]  Because in this case Plaintiffs intend and/or are willing to purchase in the future and allege as much, they have standing to bring injunctive claims.

---

[10] *See, e.g., Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (collecting cases); *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (noting plaintiffs "request to be relieved from false advertising by defendant in the future," and "stated an intent to purchase in the future" that the court "is devoid of any grounds to discount.").  The Second Circuit authority cited by Defendant is fully consistent with *Plaintiffs'* analysis here.  The plaintiffs in *Elkind, Hidalgo,* and *Tomasino*, expressly alleged that they would not purchase the challenged product in the future *even upon the correction of its deceptive labeling.  See* First Am. Class Action Compl. at ¶ 72, *Elkind v. Revlon Consumer Prods. Corp.*, No. 2:14-

22

Second, contrary to Defendant's assertions, a majority of courts find that plaintiffs have standing to bring claims of injunctive relief irrespective of allegations concerning future purchasing intent.  As this Court recently explained, "courts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is *misleading to a reasonable consumer*." *Ackerman*, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (emphasis added).  *Boswell v. Costco Wholesale Corp.*, No. 8:16-cv-00278-DOC, 2016 WL 3360701, at *11 (C.D. Cal. June 6, 2016) ("Plaintiffs need not allege they are willing to subject themselves to future injury to seek injunctive relief on behalf of a class.").

In analyzing standing, moreover, courts stress the important public policy underlying consumer class actions—that is, providing a vehicle to protect consumers, including those who remain unwitting about the fraud even after class representatives have learned.  Put simply, "[a]n injunction in connection with a class action is designed to afford protection of future consumers from the same fraud.  It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 443 (E.D.N.Y. 2015).   As stated in *Ackerman*, plaintiffs' knowledge of the fraud does not negate the fraud:

> ***defendants' allegedly deceptive conduct is ongoing.*** Plaintiffs seek to be relieved from defendants' misleading and deceptive practices in the future, and the fact that they discovered the alleged deception years ago does not render defendants' advertising or labeling any more accurate or truthful. ***This is the harm New York's and California's consumer protection statutes are designed to redress***.[11]

---

cv-02484-JS-AKT (E.D.N.Y. May 6, 2014), ECF No. 12; *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 296 (S.D.N.Y. 2015) (noting that plaintiff "asserts that regardless of whether [defendant's] allegedly deceptive practices are enjoined, [plaintiff] will refrain from purchasing the [challenged products]"); Am. Class Action Compl. at ¶¶ 19–21, *Tomasino v. Estee Lauder Cos., Inc*., No. 1:13-cv-04692-ERK-RML (E.D.N.Y. Oct. 15, 2013), ECF No. 8 (alleging no intent to purchase the challenged product in the future, even upon the correction of its deceptive marketing).

[11] *Ackerman*, 2013 WL 7044866, at *15 n.23 (emphasis supplied).  *See also Boswell*, 2016 WL 3360701, at *11 (noting "likelihood of repeat injury for the class as a whole since some class members do not have the same knowledge" as Plaintiffs).

23

A contrary finding would "eviscerate the intent of the California legislature in creating consumer protection statutes." *Delgado v. Ocwen Loan Servicing*, No. 13-cv-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014); *see also Belfiore*, 94 F. Supp. 3d at 445 ("To hold otherwise would denigrate the New York consumer protection statute").

As with all class claims, Plaintiffs seek to represent interests broader than their own. So too, their alleged injury "implicates the same concerns as the injury of those putative class members who will be harmed by their lack of knowledge of [Defendant's] conduct." *Harris v. Las Vegas Sand L.L.C.*, No. 2:12-cv-10858, 2013 WL 5291142, at *5 (C.D. Cal. Aug. 16, 2013) (citing *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). Plaintiffs have pled their intent to purchase Cheez It Whole Grain in the future once the deception ceases, and also have plead that a reasonable consumer would be misled by Defendant's advertising. For the foregoing reasons, they clearly have standing to represent unnamed consumer class members by way of their claims for injunctive relief here.

As recognized in *Ackerman v. Coca–Cola Co.*, "[t]o hold otherwise would "effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Ackerman*, 2013 WL 7044866, at *15. As explained by the court:

> If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing.

*Id.* at *15 (quoting *Henderson v. Gruma Corp.*, No. 10 CV 4173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011).

### III.     CONCLUSION

For the reason stated above, Defendant' Motion to Dismiss should be denied.

Date:  September 16, 2016                                        Respectfully Submitted,

                                                                By:  _/s Craig L. Briskin_____

                                                                **MEHRI & SKALET, PLLC**
                                                                *cbriskin@findjustice.com*
                                                                1250 Connecticut Avenue,
                                                                Northwest, Suite 300
                                                                Washington, DC  20036
                                                                Telephone: (202) 822-5100

                                                                **REESE LLP**
                                                                Michael R. Reese
                                                                *mreese@reesellp.com*
                                                                100 West 93rd Street, 16th Floor
                                                                New York, NY  10025
                                                                Telephone: (212) 643-0500

                                                                **CENTER FOR SCIENCE**
                                                                **IN THE PUBLIC INTEREST**
                                                                Maia Kats (admitted *pro hac vice*)
                                                                *mkats@cspinet.org*
                                                                1220 L Street, Northwest, Suite 300
                                                                Washington, DC  20005
                                                                Telephone: (202) 777-8381

                                                                *Counsel for Plaintiffs*