UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTEN MANTIKAS, KRISTIN BURNS, and LINDA CASTLE, individually and on behalf of all others similarly situated, | Case No. 2:16-cv-02552-SJF-AYS |
| Plaintiffs, | Hon. Sandra J. Feuerstein |
| v. | |
| KELLOGG COMPANY, | |
| Defendant. | |

## <u>REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT</u>

**JENNER & BLOCK LLP**

Kenneth K. Lee (NY Reg. No. 4056750)
klee@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: (213) 239-5100
Fax: (213) 239-5199

*-and-*

Dean N. Panos (admitted *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

*Attorneys for Defendant*
KELLOGG COMPANY

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.  The Complaint Must Be Dismissed Because Plaintiffs Have Not
       Plausibly Shown that the "Whole Grain" Label Is Likely to Mislead a
       Reasonable Consumer ................................................................................. 2

    II.  Plaintiffs' Claims are Preempted Under Federal Law ............................. 7

          a.  Kellogg's Conduct Does Not Run Afoul of Plaintiffs' Cited
             Regulations .......................................................................................... 7

          b.  Kellogg's "Made with Whole Grains" Statement Is an Explicitly
             Allowed Implied Nutrient Claim ......................................................... 8

          c.  Plaintiffs Do Not Deny that "Made with 8g of Whole Grain Per
             Serving" Is an Express Content Claim Under FDA Regulations ............ 10

    III.  Plaintiffs' Unjust Enrichment Claim Must Be Dismissed ................................. 10

          a.  Plaintiffs May Not Bring a Claim Under Michigan Law ............................ 10

          b.  Plaintiffs' Alleged Indirect Benefit Conferred Is Not Enough to
             Satisfy the Requirements of Unjust Enrichment in Michigan ..................... 12

    IV.  Plaintiffs Do Not Have Standing to Seek Injunctive Relief ............................. 14

          a.  Future Intentions Are Not Enough to Grant Standing ................................. 14

          b.  Plaintiffs' Public Policy Concerns Cannot Trump Article III
             Requirements ........................................................................................ 16

CONCLUSION ........................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A & M Supply Co. v. Microsoft Corp.*,
   No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008)..............................................13

*Ackerman v. Coca-Cola Co.*,
   No. 09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)......................................................6

*Ackerman v. Coca-Cola Co.*,
   No. 09-395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013)......................................5, 6, 15, 16

*Albert v. Blue Diamond Growers*,
   151 F. Supp. 3d 412 (S.D.N.Y. 2015)......................................................................................6

*Allstate Ins. Co. v. Hague*,
   449 U.S. 302 (1981)................................................................................................................11

*Atik v. Welch Foods, Inc.*,
   No. 15-5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) .........................................5, 6, 14

*Barron v. Snyder's-Lance, Inc.*,
   No. 13-62496, 2015 WL 11182066 (S.D. Fla. Mar. 20, 2015)................................................14

*Belfiore v. Procter & Gamble Co.*,
   94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ..............................................................................16

*Bonanno v. The Quizno's Franchise Co. LLC*,
   No. 06-02358, 2008 WL 638367 (D. Colo. Mar. 5, 2008) .....................................................11

*Campagna v. Language Line Servs., Inc.*,
   No. 08-02488, 2012 WL 1565229 (N.D. Cal. May 2, 2012)...................................................11

*Clothesrigger, Inc. v. GTE Corp.*,
   191 Cal. App. 3d 605 (Ct. App. 1987).....................................................................................11

*Coe v. Gen. Mills, Inc.*,
   No. 15-05112, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) .................................................8

*Collazo v. Wen by Chaz Dean, Inc.*,
   No. 15-01974, 2015 WL 4398559 (C.D. Cal. July 17, 2015)..................................................11

*Delgado v. Ocwen Loan Servicing*,
   No. 13-4427, 2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ..................................................16

*Ebner v. Fresh, Inc.*,
No. 13-56644, 2016 WL 5389307 (9th Cir. Sept. 27, 2016) ..................................................2, 4

*Elkind v. Revlon Consumer Prod. Corp.*,
No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ....................................................15

*Fenerjian v. Nongshim Co., Ltd*,
72 F. Supp. 3d 1058 (N.D. Cal. 2014) ...................................................................................13

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013).................................................................................................2, 4

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) .....................................................................................................4

*Hairston v. S. Beach Bev. Co., Inc.*,
No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012)...............................................2, 10

*Henderson v. Gruma Corp.*,
No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..................................................3

*In re Aftermarket Filters Antitrust Litig.*,
No. 08-4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ......................................................13

*In re Flonase Antitrust Litig.*,
610 F. Supp. 2d 409 (E.D. Pa. 2009) .....................................................................................12

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................................................12

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) ...................................................................................12

*In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*,
No. 12-5120, 2016 WL 1135368 (D.N.J. Mar. 22, 2016) ......................................................12

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011)..................................................................................11

*In re Refrigerant Compressors Antitrust Litig.*,
No. 09-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ...............................................13

*Khasin v. R. C. Bigelow, Inc.*,
No. 12_02204, 2016 WL 1213767 (N.D. Cal. Mar. 29, 2016)...............................................14

*Koehler v. Litehouse, Inc.*,
No. 12-04055, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012)................................................16

*Larsen v. Trader Joe's Co.*,
   No. 11-05188, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ................................................16

*Lucas v. Jos. A. Bank Clothiers, Inc.*,
   No. 14-1631, 2015 WL 2213169 (S.D. Cal. May 11, 2015) ....................................................14

*McKinniss v. Sunny Delight Beverages Co.*,
   No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ...............................................5, 6

*Morgan v. Wallaby Yogurt Co., Inc.*,
   No. 13-00296, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014) ................................................16

*Mosely v. Vitalize Labs, LLC*,
   No. 13-2470, 2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015) ..................................................12

*National Consumer's League v. Doctor's Assocs., Inc.*,
   No. 2013 CA 006549 B, 2014 D.C. Super. LEXIS 15 (D.C. Super. Ct. Sept.
   12, 2014) .......................................................................................................................6

*National Consumers League v. Bimbo Bakeries USA*,
   No. 2013 CA 006548 B, 2015 D.C. Super. LEXIS 5 (D.C. Super. Ct. Apr. 2,
   2015) ..............................................................................................................................6

*Nguyen v. Medora Holdings, LLC*,
   No. 14-00618, 2015 WL 4932836 (N.D. Cal. Aug. 18, 2015) ...............................................16

*Nicosia v. Amazon.com, Inc.*,
   84 F. Supp. 3d 142, 157 (E.D.N.Y. 2015) ............................................................................15

*Nicosia v. Amazon.com, Inc.*,
   No. 15-423, 2016 WL 4473225 (2d Cir. Aug. 25, 2016) .......................................................15

*Parks v. Dick's Sporting Goods, Inc.*,
   No. 05-6590, 2006 WL 1704477 (W.D.N.Y. June 15, 2006) .................................................12

*Rahman v. Mott's LLP*,
   No. 13-3482, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) .............................................14, 17

*Red v. Kraft Foods, Inc.*,
   No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ....................................................4

*Romero v. Flowers Bakeries, LLC*,
   No. 14-05189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ...............................................4, 5, 6

*Sensible Foods, LLC v. World Gourmet, Inc.*,
   No. 11-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) .....................................................3

*Smith v. Glenmark Generics, Inc., USA*,
No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014)..............................12, 13, 14

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ....................................................4

*Storey v. Attends Healthcare Prods., Inc.*,
No. 15-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016) .........................................13, 14

*Valley Forge Christian College v. Americans United for Separation of Church
and State, Inc.*,
454 U.S. 464 (1982).................................................................................................................16

*Whitmore v. Arkansas*,
495 U.S. 149 (1990).................................................................................................................15

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) ....................................................................................................3

*Workman v. Plum Inc.*,
141 F. Supp. 3d 1035 (N.D. Cal. 2015) ....................................................................................3

STATUTES

21 U.S.C. § 343(a)(1).....................................................................................................................8, 9

OTHER AUTHORITIES

21 C.F.R. §101.13 .....................................................................................................................8, 9, 10

21 C.F.R. § 101.18 ............................................................................................................................7

21 C.F.R. §101.65.........................................................................................................................8, 9

21 C.F.R. § 102.5 ..............................................................................................................................7

## INTRODUCTION

Despite Plaintiffs' best efforts to complicate this case with supposed factual disputes, this lawsuit presents a very simple question:  Are the statements "Made with whole grain" and "Made with 8g of whole grain per serving" found on the front of the packaging of Cheez-It crackers truthful?  The answer is undisputedly yes — and this lawsuit must therefore be dismissed.

First, the statement "Made with whole grain" is a truthful statement because it is undisputed that Cheez-It crackers are indeed made with whole grains.  No fewer than eight district courts have recently dismissed similar "Made with . . ." lawsuits, ruling that such statements are true.  Plaintiffs in their opposition do not even try to distinguish most of these cases.  Instead, Plaintiffs argue that they somehow believed that the product had *100%* whole grains only and no other types of grains, even though the product was never advertised as "Made with 100% whole grain."

Even if this Court were to credit that strained reading, it would still be implausible because the *front* of the Cheez-it box in prominent font also discloses the exact amount of whole grains in each serving:  "Made with 8g of whole grain per serving." As the Second and Ninth Circuits have held, courts must review the packaging "as a whole" in assessing alleged false advertising claims at the pleading stage. And here, a reasonable consumer would understand these statements to mean what they say: Cheez-Its crackers are made with 8 grams of whole grains per serving — and nothing more.

Second, Plaintiffs' claims are preempted under the Nutrition Labeling and Education Act's (NLEA) broad preemption provision. "Made with whole grains" and "Made with 8g of whole grains per serving" are implied and express nutrient content claims, respectively, that are expressly allowed under FDA regulations.  Accordingly, Plaintiffs cannot use state law to challenge them as deceptive.  Plaintiffs try to argue that "Made with Whole Grains" is not an implied nutrient content claim, but FDA's regulation and case law make clear that it is indeed an implied nutrient content claim because it characterizes the amount of a particular nutrient (whole grain) in the product.  Notably, Plaintiffs do not dispute that "Made with 8g of whole grain per serving" is an express

1

nutrient content claim.  That concession alone dooms their case.  As the court in the *Hairston v. S. Beach Bev. Co., Inc.* case held, once a statement is preempted (here, "Made with 8g of whole grain per serving" here), the remaining statement ("Made with whole grain") cannot be actionable where the preempted statement provides the proper and full context (*i.e.*, how much whole grains are in the product).

Third, Plaintiffs — who are California and New York citizens suing in New York— cannot bring an unjust enrichment claim under Michigan law.  Courts have repeatedly held that plaintiffs cannot assert such out-of-state claims.

Fourth, Plaintiffs lack standing for their injunctive relief claim because there is no imminent threat that they will be allegedly duped again, now that they know that Cheez-It crackers do not have 100% whole grains exclusively.  Plaintiffs raise public policy objections, but courts have rightly held that such concerns cannot trump Article III requirements.

## ARGUMENT

### I.    The Complaint Must Be Dismissed Because Plaintiffs Have Not Plausibly Shown That the "Whole Grain" Label Is Likely to Mislead a Reasonable Consumer.

Plaintiffs' lawsuit must be dismissed because their claim that a reasonable consumer would be deceived about the amount of whole grains in Cheez-It Whole Grain crackers is simply not plausible.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("To prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish that [the] allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances."); *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *6 (9th Cir. Sept. 27, 2016) (affirming dismissal of false advertising claims because "Plaintiff [could not] plausibly allege that [defendant's] design and packaging is deceptive").

Plaintiffs object to the phrase of "Made with whole grain," arguing that they believed that the product contained "100% whole grain" exclusively (even though the product was never advertised as having "100% whole grain" only).  But it is undisputed that Cheez-It Whole Grain crackers are, in fact, made with whole grains.  As set forth in Kellogg's motion to dismiss, over a

half-dozen courts in similar cases dismissed "made with …" lawsuits, ruling that such statements are factually true.  For example, in *Henderson v. Gruma Corp.*, the court held that the phrase "With Garden Vegetables" on the label of defendant's guacamole product was unlikely to deceive a reasonable consumer because "[t]he product does in fact contain vegetables that can be grown in a garden."  No. 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) ("The labeling statement does not claim a specific amount of vegetables in the product, but rather speaks to their presence in the product, which is not misleading.").  Likewise, in *Workman v. Plum Inc.*, the court held that a reasonable consumer would not be deceived by the packaging of defendant's puree pouches and fruit bars because the ingredients pictured on the front panel – though not the only, or most prominent ingredients – were "actually present in the product."  141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015); *see also Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2012 WL 566304, at *6 (N.D. Cal. Feb. 21, 2012) (holding that use of the word "apple" in the name of defendant's Apple Straws product was not deceptive because "that the product contains pureed apples."); *see also* Kellogg's Memo. ISO Mot. to Dismiss, at 6-8.

Plaintiffs fail to distinguish these cases in their Opposition, and instead misconstrue the Ninth Circuit's decision in *Williams v. Gerber Products Co.* to argue that the challenged "Whole Grain" label must be evaluated in isolation, without reference to the package *as a whole*.  Opp., at 4.  Plaintiffs' reading of *Williams* is wrong — and has been rejected by other courts.  *Williams* stands for the unremarkable proposition that a company cannot make a false representation on the front of the box and then try to cure it by telling the truth on the back.  In that case, the plaintiffs alleged that the packaging of Gerber's Fruit Juice Snacks for toddlers was deceptive because it juxtaposed the words "fruit juice" alongside images of oranges, peaches, strawberries, and cherries, when in fact, none of those fruits was actually in the product.  552 F.3d 934, 936 (9th Cir. 2008).  And in light of this affirmative misrepresentation on the front of the packaging, the court rejected the use of the ingredients list on the back of the packaging as a "shield for liability," explaining that a reasonable consumer is not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the

box." *Id.* at 939.  As the Ninth Circuit itself recently clarified in *Ebner*, "*Williams* stands for the proposition that if the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception."  2016 WL 5389307, at *5; *see also Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("[A] close reading of *Williams* and its progeny discloses that … the case merely bars a defendant from correcting an affirmative misrepresentation on the front packaging through a back of the box ingredient list.'"); *Romero v. Flowers Bakeries, LLC*, No. 14-05189, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016) (agreeing with *Red*'s reading of *Williams*).   Here, unlike in *Williams*, no affirmative misrepresentation is alleged.

And when the Cheez-It cracker box is viewed in the context of the entire product packaging — including the *entire* front of the packaging — it is clear that the whole grain statements on the Cheez-It box would not mislead a reasonable consumer.[1]  The exact whole grain content of each serving of crackers is clearly disclosed on the *front* panel of the box in bold, high-contrast font: "MADE WITH 8g OF WHOLE GRAIN PER SERVING."  *See*, Decl. of Kenneth K. Lee, Ex. A. The Nutrition Facts panel on the side of the box further discloses that a serving size is 28 grams. *Id.*  And just below, the ingredients list shows that whole wheat flour is the third-most ingredient by weight, whereas enriched flour is listed first.  *Id.*  Under Second and Ninth Circuit case law, Plaintiffs cannot cast a blind eye to other statements on the front of the Cheez-It box ("Made with

---

[1] As the Second and Ninth Circuits have both recognized, in assessing whether a product label is likely to deceive a reasonable consumer, "it is necessary to consider not only the allegedly misleading statement but also the surrounding context based on the content of the entire label or advertisement at issue."  *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015); *see Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial… under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception.); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (dismissing consumer protection claims because "[a]ny ambiguity that [plaintiff] would read into any particular statement is dispelled by the promotion as a whole.").

8g whole grain per serving"), and fixate on "Made with whole grain" to the exclusion of other statements.

The recent decision in *Romero v. Flowers Bakeries, LLC* is instructive here.  In that case, the plaintiff alleged that the packaging of defendant's Honey Wheat and Whitewheat breads were deceptive because they included the word "wheat" in the product name, as well as the phrases "wholesome wheat," "healthy grains," or "Healthy White," alongside images of wheat stalks and honey pots.  No. 14-05189, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016).  The Court dismissed plaintiff's UCL, FAL, and CLRA claims, holding that "no reasonable consumer would understand the packaging, taken as a whole, to mean that the breads 'contains a significant amount of whole wheat'" – particularly since the packaging clearly stated "ENRICHED BREAD."  *Id.*; *see also McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034, 2007 WL 4766525, at *3-4 (C.D. Cal. Sept. 4, 2007) (holding that "no reasonable consumer, upon review of the label as a whole" would be deceived by the use of fruit names and images on Sunny D beverages because the product label truthfully identified that the product contains 2% or less of concentrated fruit juice.).  Likewise, here, the totality of the packaging, including the front of the box, makes clear that Cheez-It crackers are not made of whole grains exclusively.

The cases relied upon by Plaintiffs in their Opposition support the proposition that a challenged product label must be considered in its entirety.  In those cases, a review of the product label as a whole led the court to conclude that a reasonable consumer was likely to be misled.  In *Atik v. Welch Foods, Inc.*, the court held that the packaging of Welch's Fruit Snacks created false impression that the product contained a significant amount of fruit because: (i) the label "Made with REAL Fruit" was surrounded by pictures of fruit; (ii) the statements "100% Vitamin C" and "25% Vitamins A & E" suggested that those vitamins were from the fruits themselves; and (iii) the assertion that "this tradition of wholesome goodness come Welch's Fruit Snacks, made with real fruit and fruit juices" again suggested a high amount of fruit content.  No. 15-5405, 2016 WL 5678474, at *2 (E.D.N.Y. Sept. 30, 2016) (adopting Magistrate Judge's Aug. 5, 2016 report and recommendation).  Similarly, in *Ackerman v. Coca-Cola Co.*, the court held that the VitaminWater

label was likely to mislead consumers into believing that the beverage contained *only* vitamins and water because it included the phrases "vitamins + water = all you need," and "vitamins + water = what's in your hand," as well as the product description "nutrient enhanced water beverage."  No. 09-0395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010); *see also Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412 (S.D.N.Y. 2015) (holding that the packages of two brands of almond milk were likely to mislead a reasonable consumer into concluding that the products contained a significant amount of almonds because of number of almonds pictured on the label and the description of the product as "almond milk made from real almonds.").

Here — unlike in *Atik*, *Ackerman*, and *Albert* — the Cheez-It Whole Wheat box is unlikely to create any confusion as to the whole wheat content of the crackers, given the prominent disclosure on the *front* panel informing consumers that each serving contains 8g of whole grain. This case is far more akin to *Romero*, *McKinniss* and other cases cited in Kellogg's motion to dismiss, since any ambiguity is swiftly dispelled by the disclosure on the front panel, as well as the disclosures in the Nutrition Facts and ingredients list.[2]

---

[2] Plaintiffs' reliance on two state court decisions, *National Consumer's League v. Doctor's Assocs., Inc.*, No. 2013 CA 006549 B, 2014 D.C. Super. LEXIS 15 (D.C. Super. Ct. Sept. 12, 2014) and *National Consumers League v. Bimbo Bakeries USA*, No. 2013 CA 006548 B, 2015 D.C. Super. LEXIS 5 (D.C. Super. Ct. Apr. 2, 2015) is inapposite for similar reasons.  In *Doctor's Assocs., Inc.*, the D.C. Superior Court held that a the manner in which Subway markets its 9-Grain Wheat and Honey Oat breads could have a tendency to mislead a reasonable consumer," particularly "[i]n light of Subway's extensive marketing of its healthy offerings."  2014 D.C. Super. LEXIS 15, at *19-20.  Likewise, in *Bimbo Bakeries USA*, the court held that the packaging of Thomas' Light Multi-Grain Hearty Muffins and Sara Lee Classic Honey Wheat bread could lead to consumer confusion given that the packages and product names were "confusingly similar" to those of defendant's healthier products.  2015 D.C. Super. LEXIS 5, at *1-2.  Here, there are no allegations that Kellogg markets Cheez-It crackers as a "healthy" product, or that consumers will confuse Cheez-Its for some other whole wheat product.  Further, any potential confusion regarding the whole wheat content of the Cheez-It crackers is readily dispelled by the disclosures on the front and side panels.

II.     **Plaintiffs' Claims are Preempted Under Federal Law.**

Unable to convincingly rebut that "Made with whole grain" and "Made with 8g whole grain per serving" are nutrient content statements expressly allowed under FDA regulations, Plaintiffs try to change the subject and respond that Cheez-It Whole Grain box violates numerous other federal regulations. Plaintiffs further assert that the claims on the Cheez-It box are not properly characterized as implied nutrient content claims. As discussed below, however, the Cheez-It Whole Grain packaging does not violate any of the cited regulations and, in any event, the statements are permissible content claims and therefore cannot be subject to the state law attacks.

### a.   Kellogg's Conduct Does Not Run Afoul of Plaintiffs' Cited Regulations.

Plaintiffs assert that Kellogg is in violation of a number of technical FDA regulations. This is, simply put, not true. For example, Plaintiffs assert that the common or usual name of Cheez-Its is "baked snack crackers whole grain" or "backed snack crackers made with whole grain," and that Kellogg runs afoul of 21 C.F.R. § 102.5(c) because of this. Opp., at 11. In order to make this assertion, Plaintiffs craft a new name for Cheez-Its, which are properly titled "Cheez-Its Baked Snack Cracker." If Plaintiffs are attempting to manufacture a new name based on the box of the Whole Grain Cheez-Its, they must take into account the "Made with 8g of Whole Grain" label as well (which they do not do at all here). Manufactured noncompliance is different than actual noncompliance. Plaintiffs attempt a similar renaming of Cheez-It Baked Snack Crackers in their argument concerning 21 C.F.R. § 102.5(b). Plaintiffs' assertions are, therefore, wrong again.

Plaintiffs additionally argue that Kellogg runs afoul of 21 C.F.R. § 101.18(b). But § 101.18(b) merely states that labeling "may" be misleading if the name of a multi-ingredient product suggests the name of one ingredient but not all of them. First, even if it were true that the statements on the Cheez-It box could be considered misleading, they are still expressly allowed nutrient content claims, so preemption applies and any state law claim based off of this general regulation cannot stand. Secondly, to claim that the name or statements on the Cheez-It box are

misleading is off-base when the exact amount of whole grain is stated on the front of the box, *e.g.*, "Made with 8g of Whole Grain."

Plaintiffs still claim that, even if the whole grain statement were a nutrient content claim, it would still be subject to the "catch-all anti-consumer deception provision of 21 U.S.C. § 343(a)(1)." Opp., at 15.  This sets the preemption doctrine on its head. Contrary to Plaintiffs' argument, if a nutrient content claim is expressly allowed by the FDA, then any cause-of-action challenging that allowed nutrient content claim is preempted. The catch-call provision is intended to capture deceptive claims that are not expressly allowed under the FDA regulations.   As discussed below, however, the statements on the Cheez-It box are expressly permitted implied and express content claims and therefore do not fall under the reach of § 343.  *See Coe v. Gen. Mills, Inc.*, No. 15-05112, 2016 WL 4208287, at *4 (N.D. Cal. Aug. 10, 2016) ("These claims would be governed by specific federal regulations and therefore could not form the basis of a claim under § 343(a).").

  **b. Kellogg's "Made with Whole Grains" Statement Is an Explicitly Allowed Implied Nutrient Claim.**

Plaintiffs claim that "Made with Whole Grain" is not an implied nutrient content claim, citing 21 C.F.R. §101.65 (b) and (b)(3) as support.  But § 101.65(b) specifically states (emphasis added):

> Label statements that are not implied claims. Certain label statements about the nature of a product are not nutrient content claims **unless such statements are made in a context that would make them an implied claim under § 101.13(b)(2).** The following types of label statements are generally not implied nutrient content claims and, as such, are not subject to the requirements of § 101.13 and this section:, however, that certain label statements that are usually not content claims *may* be made implied nutrient content

claims if they "are made in a context that would make them an implied claim under § 101.13(b)(2)."

§ 101.13(b)(2)(i) lists the following as an implied nutrient content claim:

> Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran")

Despite Plaintiffs' protestations to the contrary, their entire complaint is based on the idea that various "whole grain" statements suggest that an ingredient — in this case, whole grain — is present in a high amount.  Opp., at 6 ("Kellogg represents that Cheez-It is "WHOLE GRAIN" to create the impression that the product is composed substantially or entirely of whole grain, and consumers purchase the product to obtain the nutritional benefits that whole grain foods provide."). Further, 21 C.F.R. § 101.65(c)(3) expressly describes the standard for claims involving "made with," (emphasis added):

> Claims may be made that a food contains **or is made with an ingredient** that is known to contain a particular nutrient, or is prepared in a way that affects the content of a particular nutrient in the food, if the finished food is either "low" in or a "good source" of the nutrient that is associated with the ingredient or type of preparation.

By Plaintiffs' own allegations, "Made with whole grain" constitutes an implied nutrient content claim because it implies that the Cheez-Its have a certain amount of whole grain. In other words, Plaintiffs' claims that assorted "Whole Grain" statements are misleading cannot fall under the reach of §343 precisely because they are, by Plaintiffs' own allegations, permissible implied content claims.  This additionally means that, because the nutritional statements are either permitted implied content claims as discussed above, or permitted express content claims as discussed below, any state law claims are preempted.

9

### c. Plaintiffs Do Not Deny that "Made with 8g of Whole Grain Per Serving" Is an Express Content Claim Under FDA Regulations.

Plaintiffs do not contest that "Made with 8g of whole grain per serving" is an acceptable express nutrient content claim. At best, they reference that no context is provided for how much 8g is. Opp., at 14 n. 3. But 21 C.F.R. §101.13(i)(3) explicitly allows "the label or labeling of a product" to "contain a statement about the amount or percentage of a nutrient if . . . . the statement does not in any way implicitly characterize the level of the nutrient in the food and is not false or misleading in any respect (**e.g., "100 calories" or "5 grams of fat"**), in which case no disclaimer is required." (emphasis added). Kellogg's claim about the 8 grams of whole grain is nearly identical to the example given in the regulations of a permissible express content claim.

Because "Made with 8g of whole grain per serving" is clearly allowed — and any challenge against it preempted — Plaintiffs are forced to attempt to claim that "made with whole grains" read alone is misleading. In other words, Plaintiffs' claim becomes "based on a single out-of-context phrase found in one component" of the label, which "cannot support" a state law claim concerning unfair labeling. *Hairston v. S. Beach Bev. Co., Inc.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (ruling that once a particular statement is preempted, the remaining statement cannot be actionable because it cannot be read in isolation). This is not a case where "Made with 8g of Whole Grain" is hidden on the side or back panel. It sits prominently on the front and therefore is an integral portion of any statement made concerning whole grains on the front of the box.

### III.   Plaintiffs' Unjust Enrichment Claim Must Be Dismissed.

Plaintiffs — who are New York or California citizens — attempt to salvage their Michigan unjust enrichment claim, but their defenses of this claim are off-base.

### a. Plaintiffs May Not Bring a Claim Under Michigan Law.

The first issue is whether Plaintiffs may even avail themselves to Michigan law. If Plaintiffs cannot, then their claim for unjust enrichment under Michigan law must necessarily fail. Plaintiffs

do not contest that the named plaintiffs live in states other than Michigan and that the injuries occurred in states other than Michigan. Instead, they argue that because Kellogg is headquartered in Michigan and the alleged misrepresentations which caused the alleged injuries emanated from Michigan, this confers upon Plaintiffs the ability to sue using Michigan law.

The cases Plaintiffs cite are distinguishable because they involve out-of-state plaintiffs suing in-state corporations in *that particular state*. *Collazo v. Wen by Chaz Dean, Inc.*, No. 15-01974, 2015 WL 4398559 (C.D. Cal. July 17, 2015) concerned a California corporation being sued by out-of-state Plaintiffs in California. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 317 (1981) involved a suit brought in Minnesota over an injury that occurred in Minnesota against a company that routinely did business in Minnesota. *Bonanno v. The Quizno's Franchise Co. LLC*, No. 06-02358, 2008 WL 638367 (D. Colo. Mar. 5, 2008) involved a Colorado company being sued in Colorado over a fraud arising out of conduct in Colorado. *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (Ct. App. 1987) involved a number of companies, many of whom were located in California and being sued in California. Here, Plaintiffs are non-Michigan citizen who were injured outside of Michigan, yet they seek relief under Michigan law in a non-Michigan court.

Plaintiffs state that the court's analysis in *Campagna v. Language Line Servs., Inc.*, No. 08-02488, 2012 WL 1565229, at *2 (N.D. Cal. May 2, 2012) is "on point." Opp., at 18. If anything, *Campagna* supports Kellogg's position. The court there granted a motion to dismiss claims by out-of-state employees, including the Iowa resident mentioned by Plaintiffs in their brief, because there was a presumption against applying California law to out-of-state plaintiffs. *Campagna*, 2012 WL 1565229 at *4. As the court in *Campagna* correctly noted, the exact styling of the motion — whether under 12(b)(1), 12(b)(6), or 12(c) — may be subject to dispute, but what actually "matters is the substance of the request, not the movant's characterization of the request." *Id*. at *2 n. 2. Instead, the court looked at the root of the motion, the fact that out of state individuals were attempting to avail themselves to California law, and decided accordingly.

To determine standing, courts should look at where the plaintiffs reside and where the alleged injury took place. *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.").[3] Plaintiffs spend a significant amount of time focusing on Kellogg's contacts with Michigan, but this misses the point. Plaintiffs themselves have no contacts with Michigan, and therefore cannot avail themselves to the laws of Michigan. Plaintiffs are not suing in Michigan. Plaintiffs may generally only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state. *Cf. Mosely v. Vitalize Labs, LLC,* No. 13-2470, 2015 WL 5022635, at *8 (E.D.N.Y. Aug. 24, 2015) ("Finally, plaintiff's attempt to invoke the laws of New Jersey and New York, based on the fact that defendants make sales in those states or are headquartered there, lacks merit."). Because Plaintiffs have no connection with Michigan, their Michigan unjust enrichment claim must be dismissed.

### b. Plaintiffs' Alleged Indirect Benefit Conferred Is Not Enough to Satisfy the Requirements of Unjust Enrichment in Michigan.

Plaintiffs deny that Michigan law requires a direct benefit to be conferred by a plaintiff onto a defendant, but the weight of the authority rejects Plaintiffs' proposition. *See, e.g.*, *Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19,

---

[3] *See also, e.g.*, *In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, No. 12-5120, 2016 WL 1135368, at *20 (D.N.J. Mar. 22, 2016) (same); *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) ("Plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state."); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 418 (E.D. Pa. 2009) ("Because no named Plaintiff has alleged injury in Florida or sufficient contact with Florida, the named Plaintiffs have not stated a claim under Florida's consumer protection statute."); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1027 (N.D. Cal. 2007) (" Again, there is no named plaintiff from those states who has suffered injury as a result of defendants' conduct, so those claims must be dismissed."); *Parks v. Dick's Sporting Goods, Inc.*, No. 05-6590, 2006 WL 1704477, at *2 (W.D.N.Y. June 15, 2006) ("Plaintiff, Daniel Parks, lacks standing to assert state-law claims arising under the laws of states other than New York, since he was never employed by defendant anywhere other than New York.").

2014) ("Notably, caselaw does not specifically state that the benefit must be received *directly* from the plaintiff, but these decisions make it clear that it must.").[4]   While there are limited exceptions to the direct benefit rule, such as "where the plaintiff is a subcontractor and the defendant is a party that hired the general contractor," "[o]rdinarily, a plaintiff can establish the first element of the unjust enrichment claim only by proof that the plaintiff *directly* conferred a benefit on the defendant." *Storey v. Attends Healthcare Prods., Inc.*, No. 15-13577, 2016 WL 3125210, at *12 (E.D. Mich. June 3, 2016). *Storey* also mentions a "direct interaction" exception, which stands as a slightly broader exception and is wholly inclusive of the general contractor exception. *Id.* at *12. Plaintiffs here allege no direct interaction between the parties, as at best there was a one-sided transmission of the alleged deceptive marketing. *See also Smith*, 2014 WL 4087968 at *1 (fact that purchase was made through pharmacy meant benefit too attenuated); *Storey*, 2016 WL 3125210 at *12-13 ("Plaintiffs have failed to state a claim for unjust enrichment under Michigan law because they have not alleged that they directly conferred a benefit on Defendant.  The instant case is a case involving consumer plaintiffs and a remote manufacturer.  Whatever benefit Plaintiffs conferred on Defendant they conferred indirectly . . . there is no allegation of direct

_____

[4] *See also, e.g.*, *Fenerjian v. Nongshim Co., Ltd*, 72 F. Supp. 3d 1058, 1088 (N.D. Cal. 2014) ("[T]he transactions and relationships between the indirect purchaser plaintiffs and the defendants are too attenuated to state an unjust enrichment claim under Michigan law.");  *In re Refrigerant Compressors Antitrust Litig.*, No. 09-02042, 2013 WL 1431756, at *26 (E.D. Mich. Apr. 9, 2013) (dismissing unjust enrichment count because "[o]nly the direct purchasers conferred a direct benefit on Defendants by paying Defendants artificially inflated prices for Hermetic Compressors" and plaintiffs were not direct purchasers); *In re Aftermarket Filters Antitrust Litig.*, No. 08-4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010) ("Plaintiffs are unable to allege that they have conferred a benefit on defendants except to argue that they are the ultimate end users. Any benefit that plaintiffs have conferred, however, would be on others in the chain of distribution from whom they purchased, not on defendants. Only the direct purchasers have conferred a direct benefit on defendants." The court went on to dismiss an unjust enrichment claim brought under Michigan law.); *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) ("Plaintiff here can point to no similar direct contact between Microsoft and the indirect purchasers in the class they seek to have certified. Nor can they show that Microsoft received any direct payment or other benefit from those purchasers. We conclude that the unjust enrichment doctrine does not apply under the facts alleged by plaintiff here.").

interaction between Plaintiffs and Defendants.").  Here, any alleged purchases were made through a third party, just as in *Smith* and *Storey*.  There are no allegations of close, direct interaction such as what might be expected between a subcontractor, a general contractor, and a principal.  Absent some sort of direct interaction between the parties, the unjust enrichment claim must be dismissed.

**IV.**    **Plaintiffs Do Not Have Standing to Seek Injunctive Relief.**

Plaintiffs argue two points concerning injunctive relief: first, that an intent to purchase a reformulated product in the future grants standing to pursue injunctive relief, and second, that public policy concerns support a finding of standing.  Neither is persuasive.

**a.    Future Intentions Are Not Enough to Grant Standing.**

Plaintiffs argue that their alleged intention to buy a reformulated Cheez-It product in the future grants them standing to seek injunctive relief despite the fact that they have no intention of purchasing an allegedly deceptively labeled product ever again.  Opp., at 22.  Such an argument misses the point that the key inquiry is about harm, not intent to purchase, and intent to purchase is not enough to demonstrate harm.  *See Rahman v. Mott's LLP*, No. 13-3482, 2014 WL 5282106, at *6 (N.D. Cal. Oct. 15, 2014) ("Absent showing a likelihood of future harm, a plaintiff may not manufacture standing for injunctive relief simply by expressing an intent to purchase the challenged product in the future.").[5]  Plaintiffs' allegation that they will only purchase a

_____

[5] This position is supported by a laundry list of cases in different districts.  *See, e.g.*, *Atik v. Welch Foods, Inc.*, 2016 WL 5678474, at *6 ("Plaintiffs also allege that they would resume purchasing the Products in the future but only if the representations on the Products' labels were 'truthful and non-deceptive.' These allegations are insufficient to establish a likelihood of future injury because Plaintiffs cannot rely on past injury.") (citation omitted);  *Khasin v. R. C. Bigelow, Inc.*, No. 12_02204, 2016 WL 1213767, at *5 (N.D. Cal. Mar. 29, 2016) ("Second, standing for injunctive relief in this case requires more than simply declaring an intent to purchase the Green Tea Products in the future. Even if Khasin were to satisfactorily demonstrate a future intent to purchase the products, he has not established a likelihood of suffering the same harm he has alleged."); *Lucas v. Jos. A. Bank Clothiers, Inc.*, No. 14-1631, 2015 WL 2213169, at *4 (S.D. Cal. May 11, 2015) ("An interest in purchasing a product in the future, without more, isn't sufficient to establish standing if the plaintiffs are not 'realistically threatened by a repetition of the violation.'") (quoting *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir.2006));  *Barron v. Snyder's-Lance, Inc.*, No. 13-62496, 2015 WL 11182066, at *10-11 (S.D. Fla. Mar. 20, 2015) (desire to purchase

reformulated product essentially amounts to an admission that they will not be harmed in the future by the allegedly deceptive behavior.

Plaintiffs rely on *Ackerman v. Coca-Cola Co.*, No. 09-395, 2013 WL 7044866, at *15 n. 23 (E.D.N.Y. July 18, 2013), but numerous courts have ignored *Ackerman* on the injunctive relief issue while noting that they were bound by applicable Supreme Court and Second Circuit precedent that conflicts with *Ackerman*.  *See Elkind v. Revlon Consumer Prod. Corp.*, No. 14-2484, 2015 WL 2344134, at *3 n.2 (E.D.N.Y. May 14, 2015) ("Plaintiffs point to and the Court is aware of a number of cases that suggest that the requirement of a future or continuing injury is not applicable in those cases where injunctive relief is sought in the consumer context. *See, e.g., Ackerman v. Coca–Cola Co.,* No. 09-0395, 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013) (citing cases). Because *Lyons*[] remains binding precedent, however, the Court remains bound by its holding."); *see also Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 157 at n. 10 (E.D.N.Y. 2015*), aff'd in part, vacated in part, remanded,* No. 15-423, 2016 WL 4473225 (2d Cir. Aug. 25, 2016) ("Several courts have declined to follow *Lyons* in consumer protection cases. . . . This Court declines to follow these cases because *Lyons* remains binding precedent.") (citing *Ackerman* as an example of a nonconforming court).  On reviewing *Nicosia*, the Second Circuit reaffirmed that there must be a threat of future harm in order to seek injunctive relief.  *Nicosia v. Amazon.com, Inc.*, No. 15-423, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016) ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").  Because Plaintiffs do not adequately allege future harm, and because *Lyons*, not *Ackerman*, is the controlling case, Plaintiffs' request for injunctive relief must be dismissed.

---

"compliant" version of product in the future irrelevant for standing because this would not result in any potential harm, and therefore no future harm alleged).

### b.  Plaintiffs' Public Policy Concerns Cannot Trump Article III Requirements.

Plaintiffs describe a number of public policy concerns in support of their contention that Plaintiffs must be allowed to seek injunctive relief despite their apparent lack of future harm. Plaintiffs are, simply put, wrong that public policy concerns can ever outweigh a lack of Article III jurisdiction.  *See Whitmore v. Arkansas*, 495 U.S. 149, 161 (1990) ("It is not for this Court to employ untethered notions of what might be good public policy to expand our jurisdiction in an appealing case."); *see also, e.g.*, *Nguyen v. Medora Holdings, LLC*, No. 14-00618, 2015 WL 4932836, at *7 (N.D. Cal. Aug. 18, 2015) ("And no matter their wisdom or fairness, courts and legislatures don't get to create exceptions to Article III.").

Plaintiffs contend that preventing them from seeking injunctive relief would eviscerate the purpose of the state consumer protection statutes and make it difficult to find suitable plaintiffs. Opp., at 24.  Such justifications to expand standing on public policy grounds have been expressly rejected by the Supreme Court.  *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 489 (1982) ("The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing.") (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974)) (internal quotation marks omitted); *see also Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-00296, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) ("While granting an injunction would undoubtedly further the California legislature's intent of protecting consumers, a federal court's power to grant relief is limited by the authority granted by the United States Constitution as interpreted by the courts.").  Because Plaintiffs' arguments concerning public policy have been rejected at the highest level of the judiciary, they may not properly serve as a justification to find standing in the current case.

Plaintiffs largely rely on three cases to argue that public policy concerns may factor into the Article III standing analysis – *Ackerman*, 2013 WL 7044866 at *15 n. 23, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015), and *Delgado v. Ocwen Loan Servicing*, No. 13-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014).  In reaching their conclusions,

these three cases rely heavily on *Koehler v. Litehouse, Inc.*, No. 12-04055, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) and *Larsen v. Trader Joe's Co.*, No. 11-05188, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012), both of which made the "eviscerate" argument in support of a public policy-fueled broad interpretation of Article III standing.  Judge Susan Illston — who wrote both *Litehouse* and *Larsen* — later changed her reasoning and endorsed the principle that "the power of the federal courts is limited, and that power does not expand to accommodate the policy objectives underlying state law."  *Rahman v. Mott's LLP*, No. 13-3482, 2014 WL 5282106, at *6 (N.D. Cal. Oct. 15, 2014) (quoting *Garrison v. Whole Foods Mkt. Grp., Inc.*, 13-05222, 2014 WL 2451290 at * 5 (N.D. Cal. June 2, 2014)).  Plaintiffs are thus left citing cases which rely on out-of-circuit opinions which are no longer supported, if not specifically overturned.  There is simply no legitimate reason to find Article III standing on public policy grounds.  Therefore, the Court should deny Plaintiffs' request for injunctive relief.

## **CONCLUSION**

For the foregoing reasons, the Complaint must be dismissed.

Dated:  October 7, 2016                                    Respectfully submitted,

                                                          JENNER & BLOCK LLP

                                                          By:____/s/ Dean Panos_____
                                                          Dean Panos

                                                          Attorneys for Defendant
                                                          KELLOGG COMPANY