UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KRISTEN MANTIKAS, KRISTIN BURNS, and
LINDA CASTLE, individually and on behalf of             **OPINION AND ORDER**
all others similarly situated,                           16-cv-2552 (SJF)(AYS)

                              Plaintiffs,

    -against-

KELLOGG COMPANY,

                              Defendant.
------------------------------------------------------------X

**FEUERSTEIN, District Judge:**

Plaintiffs Kristen Mantikas, Kristin Burns, and Linda Castle (collectively, "Plaintiffs") commenced this action against Defendant Kellogg Company ("Defendant" or "Kellogg"), individually and on behalf of all others similarly situated, seeking monetary and injunctive relief for, *inter alia*, Defendant's alleged violation of: (i) N.Y. Gen. Bus. Law §§ 349 and 350; (ii) Cal. Bus. & Prof. Code §§ 17200 and 17500; and (iii) Cal. Civ. Code § 1750. *See* Docket Entry ("DE") [1]. Presently before the Court is Defendant's motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiffs oppose. DE [17]. For the reasons set forth herein, Defendant's motion to dismiss is granted in its entirety.

**I.    BACKGROUND**

Unless otherwise noted, the following facts are drawn from the Complaint and are accepted as true for purposes of the instant motion.

**A.  Factual Background**

Defendant Kellogg is a Delaware corporation with a principal place of business located at One Kellogg Square, Battle Creek, Michigan. Compl., DE [1], ¶¶ 36-37. Kellogg manufactures, markets, and sells "Cheez-It Whole Grain" crackers (the "Crackers" or the "Product") in major retail stores nationwide. *Id.* at ¶ 1. Kellogg promotes the Crackers as "whole grain" crackers, and

1

the box in which the Crackers are sold states, *inter alia*, either "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" and either "MADE WITH 5g OF WHOLE GRAIN PER SERVING" or "MADE WITH 8g OF WHOLE GRAIN PER SERVING." *Id.* at ¶¶ 2, 50. Two (2) examples of the Crackers' packaging are seen below:

 

*Id.* at ¶ 50; *see also* Declaration of Kenneth Lee in Support of Defendant's Motion to Dismiss Class Action Complaint ("Lee Decl."), DE [17-2], Ex. A. According to Plaintiffs, "'[w]hole grains' are grains that include the entire grain seed—its endosperm, bran, and germ." Compl. ¶ 43. In contrast, "'[n]on-whole grains or 'refined grains' have been processed to remove their bran and germ, thereby removing the dietary fiber and most other nutrients." *Id.* at ¶ 44. According to Plaintiffs, "[c]onsumers, cognizant of the healthfulness of whole grains relative to non-whole grains, are increasingly purchasing whole grain products." *Id.* at ¶ 47. Plaintiffs allege that "Kellogg's 'WHOLE GRAIN' representation . . . is false and misleading, because the primary ingredient in Cheez-It Whole Grain crackers is enriched white flour." *Id.* at ¶ 3.

Plaintiff Mantikas is a resident of New York who purchased the Crackers approximately one (1) time per week from Stop and Shop and Target stores located in Glen Cove, New York. *Id.* at ¶¶ 10-11. Plaintiffs Burns and Church are residents of California. *Id.* at ¶¶ 18, 28. Burns

purchased the Crackers approximately one (1) time per week for several years from Safeway stores in San Jose, California, and Church purchased the Crackers a total of three (3) times from Ralph's Market in Torrance, California. *Id.* at ¶¶ 19, 29. Plaintiffs each purchased boxes of the Crackers that "contained the representation that they were 'WHOLE GRAIN' on the front" in "large" and "conspicuous" font. *Id.* at ¶¶ 12, 21, 30. Plaintiffs relied upon "the 'WHOLE GRAIN' representation in making [their] purchase decisions, and would not have purchased the products had [they] known they were not, in fact, predominantly whole grain." *Id.* at ¶¶ 13, 22, 31. According to Plaintiffs, they "paid for 'WHOLE GRAIN' Cheez-It crackers, but . . . received products that were not predominantly whole grain." *Id.* at ¶¶ 14, 23, 32. Plaintiffs allege that the crackers they received "were worth less than the crackers for which [they] paid," and that they were "injured in fact and lost money as a result of Defendant's improper conduct." *Id.* at ¶¶ 16, 26, 34. Plaintiffs further allege that they can no longer "purchase the products because [they] cannot be confident that the labeling of the product is, and will be, truthful and non-misleading." *Id.* at ¶¶ 17, 27, 35.

### B. Procedural Background

By way of a May 19, 2016 Class Action Complaint, Plaintiffs commenced this purported class action against Kellogg, seeking both monetary and injunctive relief. DE [1]. Plaintiffs allege, *inter alia*, that they "read and relied on Kellogg's false and misleading labeling in purchasing Cheez-It Whole Grain crackers, including the representation that the crackers were 'WHOLE GRAIN.'" Compl. ¶ 57. According to Plaintiffs, "Kellogg deliberately capitalizes on foreseeable consumer misconceptions about Cheez-It Whole Grain crackers in its marketing and sales scheme," and has therefore "reaped, and continues to reap, increased sales and profits." *Id.* at ¶¶ 63, 65. Mantikas asserts causes of action arising under N.Y. Gen. Bus. Law §§ 349 and 350, both

3

individually and on behalf of a proposed subclass including all "persons residing in New York who have purchased Cheez-It Whole Grain crackers for their own use . . . since May 19, 2010." *Id.* at ¶ 68, 90-104. Burns and Castle assert causes of action arising under Cal. Bus. & Prof. Code §§ 17200 and 17500 and Cal. Civ. Code § 1750, both individually and on behalf of a proposed subclass including all "persons residing in California who have purchased Cheez-It Whole Grain crackers for their own use . . . since May 19, 2012." *Id.* at ¶¶ 69, 105-40. All Plaintiffs also assert a claim for unjust enrichment under Michigan law, both individually and on behalf of "[a]ll persons residing in the United States and its territories who have purchased Cheez-It Whole Grain crackers for their own use (which includes feeding their families), and not for resale, since May 19, 2010." *Id.* at ¶¶ 66-67, 82-89.

On October 7, 2016, Defendant filed the instant motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). DE [17]. With respect to Plaintiffs' claims arising under New York's and California's consumer protection laws,[1] Kellogg argues, *inter alia*, that because "Plaintiffs do not dispute that whole grains are indeed one of the ingredients in Cheez-It" crackers, Plaintiffs "have failed to plausibly show that a reasonable consumer would likely be deceived by the Cheez-It packaging." *See* Memorandum of Law in Support of Defendant's Motion to Dismiss Class Action Complaint ("Def.'s Mem."), DE [17-1], at 1. Defendant further argues that "Plaintiffs' state [consumer protection] law claims must also be dismissed because they are preempted under federal law." *Id.* at 10-13. With respect to Plaintiffs' claim for unjust enrichment under Michigan law, Defendant argues that: (i) as residents of New York and California, Plaintiffs lack standing to assert a claim arising under Michigan law; (ii) Plaintiffs' allegations fail to state

---

[1] For purposes of the instant Opinion and Order, reference to New York's consumer protection law includes N.Y. Gen. Bus. Law §§ 349 and 350. Reference to California's consumer protection law includes Cal. Bus. & Prof. Code §§ 17200 and 17500 and Cal. Civ. Code § 1750.

4

a plausible claim for unjust enrichment; and (iii) Plaintiffs' attempt to apply Michigan law to a nationwide class is improper. *Id.* at 13-16. In opposition to the instant motion, Plaintiffs argue, *inter alia*, that "[a] reasonable consumer would rely on the large-print representations on the front of the box as an accurate description of its contents," and that "Defendant intends to convey that the grain in Cheez-It Whole Grain is from whole grain and not refined grain and, consequently, a healthy and nutritious product." *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Class Action Complaint ("Pls.' Opp'n"), DE [17-3], at 1.

## II. LEGAL STANDARD

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citations omitted); *see also Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) ("The court's consideration on a

motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.").

## III. DISCUSSION

As discussed above, Plaintiffs assert causes of action for: (i) violation of New York's and California's consumer protection laws; and (ii) unjust enrichment under Michigan law. *See* Compl. ¶¶ 82-134. Plaintiffs also seek injunctive relief pursuant to Cal. Civ. Code § 1750. *Id.* at ¶¶ 135-41. Applying the standards outlined above, and for the reasons set forth herein, Defendant's motion to dismiss Plaintiffs' Complaint is granted in its entirety.

### A. New York and California Consumer Protection Claims

To state a claim under either New York's or California's consumer protection laws, a plaintiff must allege "that a reasonable consumer could have been misled by defendants' conduct." *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("[T]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances.") (internal quotation omitted); *Larin v. Bank of Am., N.A.*, 617 F. App'x 651, 652 (9th Cir. 2015) ("[The plaintiff's] claims under the [California] Consumer Legal Remedies Act, Unfair Competition Law, and False Advertising Law are evaluated under a 'reasonable consumer standard' by which [the plaintiff] must show that members of the public are likely to be deceived.") (internal quotation omitted); *Atik v. Welch Foods, Inc.*, No. 15-CV-5405, 2016 WL 5678474, at *4 (E.D.N.Y. Sept. 30, 2016) ("Under both California and New York law, a plaintiff must establish that a reasonable consumer would likely be misled by the alleged misrepresentation."). The Second Circuit has held

that, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013); *see also Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014) (holding that the defendant's challenged conduct must be "materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances") (internal quotation omitted). Therefore, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Belfiore v. Proctor & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (internal quotation omitted); *see also Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label."). Although the "reasonable consumer" determination is generally a question of fact, *see Morrow v. Ann Inc.*, No. 16 Civ. 3340, 2017 WL 363001, at *7 (S.D.N.Y. Jan. 24, 2017), "in rare situations a court may determine, as a matter of law, that the alleged violations of the [consumer protection laws] are simply not plausible." *Segedie v. Hain Celestial Grp., Inc.*, No. 14 Civ. 5029, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) (quoting *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014)); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (holding that dismissal was appropriate where "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived").

Plaintiffs fail to state a claim arising under either New York's or California's consumer protection laws, as the phrases "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN," when considered in the entire context of the Crackers' packaging, would neither mislead nor deceive a reasonable consumer. As an initial matter, Plaintiffs' argument that "[i]t is well-established that a retailer cannot make any representations it wants on the front of its packaging as long as it corrects

7

itself in small print on the side of the box," *see* Pls.' Opp'n at 6, misses the mark, as the front of the Crackers' packaging contains not only factually accurate statements, but also includes additional information providing further context for such truthful statements. Specifically, in addition to the factually accurate statement that the Crackers are "MADE WITH WHOLE GRAIN," the front of the packaging also states that the Crackers are either "MADE WITH 5g OF WHOLE GRAIN PER SERVING" or "MADE WITH 8g OF WHOLE GRAIN PER SERVING." *See* Compl. ¶ 50; Lee Decl. Ex. A. Therefore, Kellogg has not made "any representation it wants on the front of its packaging," leaving consumers to refer to the "small print on the side of the box" in order to know the Crackers' true whole grain content. Pls.' Opp'n at 6. Furthermore, as the Crackers' packaging conspicuously states that the Crackers are made with either five (5) or eight (8) grams of whole grain per serving, Defendant neither misrepresents that its Crackers are one hundred percent (100%) whole grain nor suggests that they are predominantly whole grain. Although "a representation need not be false to mislead a reasonable consumer," *see Romero v. Flowers Bakeries, LLC*, No. 14-CV-5189, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016), a reasonable consumer would not be misled by a product's packaging that states the exact amount of the ingredient in question. *See, e.g.*, *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015) (granting the defendant's motion to dismiss where the product at issue did "not display any affirmative misrepresentations"); *Red v. Kraft Foods, Inc.*, No. 10-CV-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (granting the defendants' motion to dismiss, and holding that, "[t]he fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables"). As the Product's packaging truthfully states that the Crackers are made with whole grain, and specifies

8

the exact amount of whole grain per serving, the Crackers' packaging would neither deceive nor mislead a reasonable consumer.

Relying upon *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) and *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010), Plaintiffs argue that "Defendant's statement that its product is 'WHOLE GRAIN' is false and misleading, which Defendant knew or should have known was false and misleading, and which has a capacity or [*sic*] deceive or confuse a reasonable customer." Pls.' Opp'n at 6. In *Williams*, the product's packaging displayed fruits that were not actually ingredients in the fruit snacks at issue and contained the phrase "made with real fruit juice and other all natural ingredients." 552 F.3d at 941. Although the district court held that "the Snacks' packaging was 'not likely to deceive a reasonable consumer as a matter of law," the Ninth Circuit reversed the district court, stating that it "disagree[d] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at 939. Relevant here, in holding that the plaintiffs "could plausibly prove that a reasonable consumer would be deceived by the Snack's packaging," the Ninth Circuit observed: (i) that "the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product"; and (ii) the statement "made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appear[ed] to be false." *Id.* at 939-40.

In *Ackerman*, the plaintiffs alleged that the packaging and advertising for the beverage "vitaminwater" would be misleading to a reasonable consumer. 2010 WL 2925955, at *15-16. Specifically, the plaintiffs alleged that a reasonable consumer may be misled by: (i) the description

9

of the product as a "Nutrient Enhanced Water Beverage"; (ii) phrases on the product's label and advertising materials including "vitamins + water = all you need," "vitamins + water = what's in your hand," and "this combination of zinc and fortifying vitamins can . . . keep you healthy as a horse"; (iii) the product's flavor names such as "rescue" and "defense"; and (iv) statements that the product was "specially formulated" with various vitamins and nutrients to provide specific benefits depending upon the flavor. *Id.* at *5. Viewing "each allegedly misleading statement in light of its context on the label and in connection with the marketing of vitaminwater as a whole," the court held that it could not "conclude as a matter of law that a reasonable consumer could not be misled into believing that vitaminwater is a product that may help maintain healthy dietary practices and fail to appreciate that the product is not solely composed of vitamins and water." *Id.* at *15. In denying the defendants' motion to dismiss, the court held:

> The potential for confusion by consumers is heightened by the presence of (1) claims in vitaminwater's labeling, such as "vitamins + water = all you need" or "vitamins + water = what's in your hand"; (2) the description of the product as a "nutrient enhanced water beverage"; (3) the fact that several varieties of the product explicitly use the word "healthy" in connection with claims about vitaminwater's nutritional benefits; and (4) the inclusion of at least one health claim suggesting that a nutrient in vitaminwater may reduce the risk of a specific class of diseases.

*Id.* Like the court in *Williams*, the court in *Ackerman* held that "the presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [a product's] labeling and marketing." *Id.* at *16.

Unlike the products at issue in *Williams* and *Ackerman*, the Crackers' packaging in this action neither contained any affirmative misrepresentations nor incorrectly suggested that the Crackers contained certain ingredients. To the contrary, as discussed above, the front of the Crackers' box contained factually truthful statements regarding the Crackers' ingredients and provided additional information regarding the exact amount of whole grain per serving. To that end, whereas the court in *Ackerman* held that, because of the product's packaging and advertising,

10

a reasonable consumer may have "fail[ed] to appreciate that [vitaminwater was] not solely composed of vitamins and water," *see* 2010 WL 2925955, at *15, no reasonable consumer would believe that the Crackers were *solely* composed of whole grain, as the front of the Product's box explicitly stated otherwise. Similarly, unlike both *Williams* and *Ackerman*, where reference to the product's ingredient list was necessary to learn the true contents of the products, the front of the Crackers' box in this action only identified ingredients that were actually in the Crackers and provided an explicit, factually accurate statement regarding the amount of whole grain in each serving of the Crackers. Therefore, neither *Williams* nor *Ackerman* support Plaintiffs' allegations that the Product's packaging would be misleading to a reasonable consumer. *See also Workman*, 141 F. Supp. 3d at 1036 ("Plaintiff's reliance on *Williams v. Gerber* is inapposite because that action involved an affirmative misrepresentation."); *Red*, 2012 WL 5504011, at *4 ("[T]he instant case is distinguishable from *Williams* in that the case at bar does not concern affirmative misrepresentations . . . .").

Based upon the foregoing, Plaintiffs fail to state a claim arising under either New York's or California's consumer protection laws as the Crackers' packaging would not mislead or deceive a reasonable consumer.[2] Therefore, Kellogg's motion to dismiss Plaintiffs' second, third, fourth, fifth, and sixth causes of action is granted.

### B. Unjust Enrichment

Plaintiffs also assert a claim for unjust enrichment under Michigan law. Compl. ¶¶ 82-89. According to Plaintiffs, "[a]s a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of Cheez-It Whole Grain crackers, Defendant unjustly enriched itself at the expense of Plaintiffs and the Class members, through Plaintiffs' and the Class

---

[2] Having determined that the Crackers' packaging was not deceptive, the Court need not address Defendant's additional argument that Plaintiffs' state consumer protection law claims are preempted by federal law.

11

members' payment of the purchase price for the crackers." *Id.* at ¶ 85. In moving to dismiss Plaintiffs' claim for unjust enrichment, Kellogg argues: (i) that "Plaintiffs lack standing to bring an unjust enrichment claim under Michigan law because they are citizens of New York or California and purchased Cheez-Its in their home states"; (ii) Plaintiffs fail to allege that they conferred a direct benefit on Defendant as required to state a claim for unjust enrichment; and (iii) Plaintiffs' attempt to apply Michigan law to a nationwide class is improper. Def.'s Mem. at 13-16. Because the Court concludes that Plaintiffs lack standing to bring an unjust enrichment claim under Michigan law, the Court need not reach Defendant's latter two (2) arguments.

The issue of standing "is a threshold issue that 'determine[s] the power of the court to entertain the suit.'" *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975)). To demonstrate standing, the plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). To adequately allege "the irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992), a plaintiff must allege "(1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012); *see also Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 220 (E.D.N.Y. 2015) (holding that, to demonstrate standing, "a plaintiff needs to 'show that the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress'") (quoting *Palmieri v. Town of Babylon*, 277 F. App'x 72, 75 (2d Cir.

2008)). Where the plaintiff lacks standing, "a court has no subject matter jurisdiction to hear their claim." *Mahon*, 683 F.3d at 62.

Relevant here, the Supreme Court has held, "[t]hat a suit may be a class action adds nothing to the question of standing . . . ." *Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 2183 (1996). Rather, in the case of a class action, there must be "a named plaintiff sufficient to establish jurisdiction over each claim advanced." *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013); *see also Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir. 1994) ("For federal courts to have jurisdiction over any of these claims, only one named plaintiff need have standing with respect to each claim."); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012) ("For each claim asserted in a class action, there must be at least one class representative . . . with standing to assert that claim.") It is well established that, "[a] putative class representative lacks standing to bring a claim if he or she did not suffer the injury that gives rise to that claim." *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 790 (S.D.N.Y. 2011). Therefore, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Mahon*, 683 F.3d at 64; *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010) ("At this preliminary stage of the litigation, the only relevant standing inquiry is that of the named plaintiffs.").

Plaintiffs—who are residents of, and who purchased the Crackers in, New York and California—lack standing to assert a claim for unjust enrichment under Michigan law in this Court. In reaching this conclusion, the Court relies upon the holdings in *Mosley v. Vitalize Labs, LLC*, No. 13-CV-2470, 2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015) and *Stoltz v. Fage Dairy*

13

*Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015). In *Mosley*, the named plaintiff—a resident of California who purchased the product at issue in California—asserted claims arising under the consumer protection laws of California, New York, and New Jersey. 2015 WL 5022635, at *8. The defendants argued that the plaintiff lacked standing to assert claims arising under New York's and New Jersey's consumer protection laws because the plaintiff "allegedly purchased [the product at issue] only in his home state of California." *Id.* In holding that the plaintiff lacked standing to assert claims arising under the consumer protection laws of New York and New Jersey, the court observed that "defendants' position on this issue enjoys overwhelming support in the courts of this Circuit and others." *Id.*; *see also In re HSBC Bank, USA, N.A.*, 1 F. Supp. 3d at 50 ("[T]he Court finds that [the] named Plaintiffs lack standing to bring claims under state laws to which Plaintiffs have not been subjected—that is, those states aside from California and New York."); *Temple v. Circuit City Stores, Inc.*, No. 06-CV-5303, 2007 WL 2790154, at *7 (E.D.N.Y. Sept. 25, 2007) (granting the defendant's motion to dismiss the plaintiffs' claims arising under the laws of states other than Tennessee for lack of standing where the plaintiffs did not "allege they were harmed within any other state's jurisdiction"). The court further held that the plaintiff's "attempt to invoke the laws of New Jersey and New York, based on the fact that defendants make sales in those states or are headquartered there, lacks merit." *Mosley*, 2015 WL 5022635, at *8. Therefore, the court held that the "plaintiff's claims under the consumer protection laws of New Jersey and New York . . . must be dismissed for lack of standing because [the plaintiff] allegedly purchased [the product at issue] only in his home state of California." *Id.* at *9.

In *Stoltz*, the plaintiffs—who were residents of New York, New Jersey, Pennsylvania, California, Florida, and Michigan—asserted claims arising under the consumer protection laws of

their home states as well as claims for negligent misrepresentation and unjust enrichment "under the laws of all fifty states and the District of Columbia." 2015 WL 5579872, at *2. The defendant moved to dismiss the plaintiffs' claims for negligent misrepresentation and unjust enrichment under the laws of states other than New York, New Jersey, Pennsylvania, California, Florida, and Michigan, arguing that "Plaintiffs cannot assert claims under the laws of states that are not the subject of any particularized allegations that support a connection and the requisite standing as to each state." *Id.* at *13. In opposition, the plaintiffs argued that they were "entitled to assert claims under the laws of all fifty states and the District of Columbia because . . . Defendants marketed and sold the [product at issue] to 'hundreds of thousands of customers nationwide,' engaged in a nationwide marketing campaign, and deceived Plaintiffs 'and other consumers nationwide.'" *Id.* In granting the defendant's motion to dismiss, the court observed that "there are no parties before the Court who have alleged standing to assert claims" under the laws of the District of Columbia and all states other than New York, New Jersey, Pennsylvania, California, Florida, and Michigan. *Id.* at *12-13. The court held that "Plaintiffs cannot assert claims under the laws of states for which they have not established standing," and therefore dismissed the plaintiffs' claims for negligent misrepresentation and unjust enrichment arising "under the laws of the District of Columbia and all states other than New York, New Jersey, Pennsylvania, California, Florida and Michigan . . . ." *Id.*

Similar to the plaintiffs in *Mosley* and *Stoltz*, the named Plaintiffs in this action are unable to assert claims arising under the laws of a state in which they neither reside nor purchased the Crackers at issue. In opposition to the instant motion, Plaintiffs argue that they "may assert an unjust enrichment claim under Michigan law against Defendant because: (i) its headquarters are in Michigan; (ii) its misrepresentations concerning the 'Whole Grain' Cheez-It products originated

15

in, and emanated from, Michigan; and (iii) its misrepresentations concerning the Cheez-It products directly led to Plaintiffs' injuries." Pls.' Opp'n at 17. According to Plaintiffs, "[t]hese connections between Plaintiffs' injuries and Michigan are sufficient to enable Plaintiffs to invoke Michigan law." *Id.* However, in *Mosley*, the court rejected a similar argument, holding that an "attempt to invoke the laws of [other states], based on the fact that the defendants make sales in those states or are headquartered there, lack[ed] merit." 2015 WL 5022635, at *8; *see also Thomas*, 811 F. Supp. 2d at 800 (observing that New York's consumer protection law "was not intended to police the out-of-state transactions of New York companies"); *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008) (holding that the plaintiff could not assert a claim arising under New Jersey's consumer protection law despite the fact that the defendant was headquartered in New Jersey). As Plaintiffs do not identify any connection they had to Michigan other than the fact that the allegedly deceptive and misleading practices originated in, and emanated from, Michigan, and because a plaintiff "may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state," *In re HSBC Bank, USA, N.A.*, 1 F. Supp. 3d at 49, Plaintiffs lack standing to bring a claim against Kellogg for unjust enrichment under Michigan law. *See Mosley*, 2015 WL 5022635, at *8; *Stoltz*, 2015 WL 5579872, at *1.

Based upon the foregoing, Defendant's motion to dismiss Plaintiffs' claim for unjust enrichment under Michigan law is granted. Plaintiffs are granted leave to replead their claim for unjust enrichment pursuant to the law of the states in which they reside. *See Stoltz*, 2015 WL 5579872, at *13 (dismissing the plaintiffs' claims without prejudice and granting leave to replead under the laws of the states in which the plaintiffs resided).

### C. Injunctive Relief

Finally, Plaintiffs seek injunctive relief in the form of an order: "(1) enjoining Kellogg from continuing to engage in the deceptive practices described [in the Complaint]; (2) requiring Kellogg to provide public notice of the true nature of Cheez-It Whole Grain crackers; and (3) enjoining Kellogg from such deceptive business practices in the future." Compl. ¶ 139. A party seeking injunctive relief "must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). As Plaintiffs have failed to demonstrate that the Crackers' packaging was deceptive, they are unable to demonstrate that they have suffered an injury in fact. *See Atik*, 2016 WL 5678474, at *6 ("[I]n order to be injured by an allegedly deceptive misrepresentation, Plaintiffs must actually be personally deceived by the misrepresentation."); *Comer v. Kemp*, 824 F. Supp. 1113, 1126 (W.D.N.Y. 1993) ("[T]his court can find no injury in fact and no threat of future injury capable of remedy through affirmative injunctive relief."), *vacated on other grounds sub nom. Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994). Therefore, Plaintiffs are not entitled to injunctive relief, and Defendant's motion to dismiss Plaintiffs' seventh cause of action is granted.

### IV. CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is granted in its entirety. Plaintiffs are granted leave to file an amended complaint within thirty (30) days of the date of this Opinion and Order.

Dated: Central Islip, New York
      May 31, 2017

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge