17-2011
*Mantikas, et al. v. Kellogg Company*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2017

(Submitted: May 4, 2018          Decided: December 11, 2018)

Docket No. 17-2011

_____

KRISTEN MANTIKAS, KRISTIN BURNS, and LINDA CASTLE, individually and on
behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

KELLOGG COMPANY,

*Defendant-Appellee.*

_____

Before:

LEVAL, SACK, and DRONEY, *Circuit Judges*.

Plaintiffs appeal from a judgment of the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, *J*.) granting Defendant's motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs, consumers who purchased Cheez-It crackers labeled "whole grain" or "made with whole grain," filed a class action complaint against Defendant, Kellogg Company, alleging that the whole grain labels were false and misleading in violation of New York and California consumer protection laws. Plaintiffs alleged that the whole grain labels falsely communicated to consumers that the grain in whole grain Cheez-Its was predominantly whole grain, when in fact the primary grain ingredient was enriched white flour. The district court held that the whole grain labels would not mislead a reasonable consumer, and therefore

1

CERTIFIED COPY ISSUED ON 12/11/2018

17-2011
*Mantikas, et al. v. Kellogg Company*

1  dismissed Plaintiffs' complaint for failure to state a claim. Held, the district
2  court erred in dismissing Plaintiffs' complaint because, under the proper
3  standards for reviewing a motion to dismiss pursuant to Rule 12(b)(6),
4  Plaintiffs plausibly alleged that the whole grain labels would lead a
5  reasonable consumer to believe, incorrectly, that the grain in whole grain
6  Cheez-Its was wholly or predominantly whole grain. VACATED and
7  REMANDED.
8
9  MICHAEL R. REESE, George V. Granade,
10  Reese LLP, New York, N.Y., *for*
11  *Plaintiffs-Appellants*.
12
13  KENNETH K. LEE, Christina A. Aryafar,
14  Jenner & Block LLP, Los Angeles, CA,
15  Dean N. Panos, Jenner & Block LLP,
16  Chicago, IL, Kelly M. Morrison, Jenner
17  & Block LLP, Washington D.C. *for*
18  *Defendant-Appellee*
19
20  LEVAL, *Circuit Judge*:

21      Plaintiffs Kristen Mantikas, Kristin Burns, and Linda Castle

22  ("Plaintiffs") appeal from a judgment entered on August 21, 2017 in the

23  United States District Court for the Eastern District of New York (Sandra J.

24  Feuerstein, *J.*), granting Defendant Kellogg Company's motion to dismiss

25  Plaintiffs' complaint for failure to state a claim, as provided in Fed. R. Civ. P.

26  12(b)(6). Plaintiffs are residents of New York and California who purchased

27  Defendant's Cheez-It crackers that were labeled "whole grain" or "made with

28  whole grain." They filed a class action complaint (the "Complaint") against

17-2011
*Mantikas, et al. v. Kellogg Company*

1  Defendant alleging that the whole grain labels were false and misleading in

2  violation of New York and California consumer protection laws. They alleged

3  that such labeling would cause a reasonable consumer to believe that the

4  grain in whole grain Cheez-Its was predominantly whole grain, when, in fact,

5  it was not. The primary grain content was enriched white flour. The district

6  court dismissed the Complaint pursuant to Rule 12(b)(6). It held that the

7  whole grain labels would not mislead a reasonable consumer, and that

8  Plaintiffs therefore failed to state a claim.

9       We conclude that the district court erred in dismissing Plaintiffs'

10  complaint. Reviewed under the proper standards for a Rule 12(b)(6) motion,

11  the Complaint plausibly alleged that a reasonable consumer would be misled

12  by Defendant's whole grain labels to believe that the grain in whole grain

13  Cheez-Its was predominantly whole grain. Accordingly, we vacate the

14  judgment of the district court and remand for further proceedings.

15                                **BACKGROUND**

16       The Complaint alleges as follows. Defendant produces Cheez-It

17  crackers and sells the brand in a variety of flavors, including "original" and

18  "whole grain." During the relevant time period, Defendant packaged and

17-2011
*Mantikas, et al. v. Kellogg Company*

1    sold the "whole grain" variety in two boxes, each with slightly different

2    labeling.  One version contained the words "WHOLE GRAIN" in large print

3    in the center of the front panel of the box, and "MADE WITH 5G OF WHOLE

4    GRAIN PER SERVING" in small print on the bottom. The other version

5    contained the words "MADE WITH WHOLE GRAIN" in large print in the

6    center of the box, with "MADE WITH 8G OF WHOLE GRAIN PER SERVING" in

7    small print on the bottom. Both versions also contained a "Nutrition Facts"

8    panel on the side of the box, which revealed in much smaller print that a

9    serving size of the snack was 29 grams and that the first ingredient on the

10   ingredients list was "enriched white flour." "Whole wheat flour" was listed

11   on the ingredients list as either the second or third ingredient. As required by

12   federal regulation, the ingredients were listed in order of their predominance,

13   with the primary ingredient listed first. *See* 21 C.F.R § 101.4 (generally

14   requiring ingredients to be listed "in descending order of predominance by

15   weight").

4

17-2011
*Mantikas, et al. v. Kellogg Company*

 

1

2

3        Plaintiffs purchased one or both versions of the Cheez-Its labeled

4    "WHOLE GRAIN," believing on the basis of that label that the grain content

5    was predominantly whole grain. Contrary to their belief, however, the grain

6    content was not predominantly whole grain, but rather enriched white flour.

7    Plaintiffs assert that they would not have purchased the crackers had they

8    known that the grain content was not predominantly whole grain.  Plaintiffs

9    filed the Complaint in the United States District Court for the Eastern District

10   of New York, asserting claims for false advertising and deceptive business

11   practices in violation of New York and California consumer protection laws,[1]

---

[1] In particular, Plaintiffs asserted claims for "deceptive acts or business practices in the conduct of any business" in violation of N.Y. Gen. Bus. Law § 349(a), "[f]alse advertising in the conduct of any business" in violation of N.Y. Gen. Bus. Law § 350, "unlawful, unfair or fraudulent business act or practice"

17-2011
*Mantikas, et al. v. Kellogg Company*

1   as well as for unjust enrichment under Michigan law. They sought

2   declaratory and injunctive relief, as well as monetary damages, on behalf of a

3   putative class of all persons residing in the United States and its territories

4   who purchased whole grain Cheez-Its since May 19, 2010.

5         Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(6).

6   It argued that the "MADE WITH WHOLE GRAIN" version of the Cheez-Its

7   packaging was not false and misleading, because that statement was factually

8   accurate and, in addition, was qualified by the more detailed "MADE WITH 8G

9   OF WHOLE GRAIN PER SERVING" label. Defendant did not specifically

10   address whether the "WHOLE GRAIN" version of the packaging was false

11   and misleading. Defendant also argued that Plaintiffs' claims were preempted

12   by federal law, that Plaintiffs failed to state a claim for unjust enrichment

13   under Michigan law, and that Plaintiffs lacked standing to pursue injunctive

14   relief because they failed to allege any likelihood of continuing or future

15   harm.

---

in violation of Cal. Bus. & Prof. Code § 17200, "false or misleading
advertising" in violation of Cal. Bus. & Prof. Code § 17500, and a claim for
injunctive relief under Cal. Civ. Code § 1750.  [A27-35]

1    The district court granted Defendant's motion. It held, first, that both

2    the "MADE WITH WHOLE GRAIN" and "WHOLE GRAIN" labels would not

3    mislead a reasonable consumer, because both statements were true and were

4    qualified by further accurate language detailing the number of grams of

5    whole grain per serving. The court dismissed Plaintiffs' Michigan law unjust

6    enrichment claim for lack of standing, a ruling which Plaintiffs do not appeal.

7    Finally, the court concluded that, because Plaintiffs failed to show that the

8    packaging was misleading, they could not demonstrate injury and therefore

9    lacked standing to pursue injunctive relief. Having dismissed the Complaint

10   on other grounds, the district court expressly did not consider Defendant's

11   alternative argument that Plaintiffs' state law claims were preempted by

12   federal law. The district court granted Plaintiffs leave to amend. Plaintiffs

13   instead requested a final judgment, which the court entered on August 21,

14   2017. Plaintiffs brought this appeal.

15                                **DISCUSSION**

16   We review de novo the grant of a motion to dismiss pursuant to Rule

17   12(b)(6), accepting the factual allegations in the complaint as true and

18   drawing all reasonable inferences in the plaintiffs' favor. *Fink v. Time Warner*

7

17-2011
*Mantikas, et al. v. Kellogg Company*

1   *Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). "To survive a motion to dismiss, a

2   complaint must contain sufficient factual matter, accepted as true, to state a

3   claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4   (2009) (internal quotation marks omitted).

5        To state a claim for false advertising or deceptive business practices

6   under New York or California law, a plaintiff must plausibly allege that the

7   deceptive conduct was "likely to mislead a reasonable consumer acting

8   reasonably under the circumstances." *Fink*, 714 F.3d at 741 (citing *Freeman v.*

9   *Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego Laborers' Local 214 Pension*

10  *Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). "[I]n determining

11  whether a reasonable consumer would have been misled by a particular

12  advertisement, context is crucial." *Id.* at 742. We therefore consider the

13  challenged advertisement as a whole, including disclaimers and qualifying

14  language. *See Fink*, 714 F.3d at 742 ("[U]nder certain circumstances, the

15  presence of a disclaimer or similar clarifying language may defeat a claim of

16  deception."); *Freeman*, 68 F.3d at 289–90.

17        The district court held that Plaintiffs failed to state a claim for relief

18  because, in the context of the entire Cheez-Its packaging, a reasonable

8

1    consumer would not be misled by the whole grain representations. The court

2    relied on the fact that although the Cheez-Its boxes were conspicuously

3    labeled "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN," the boxes

4    accurately displayed, on the front panel, the precise number of grams of

5    whole grain per serving ("MADE WITH 5G [OR 8G] OF WHOLE GRAIN PER

6    SERVING"). The court reasoned that because the crackers in fact contained

7    whole grain, and because the front of each box clarified exactly *how much*

8    whole grain was in the product, a reasonable consumer was not likely to

9    believe that the crackers were made of predominantly whole grain. *Mantikas*

10    *v. Kellogg*, No. 16-cv-2552, 2017 WL 2371183, at *4-5 (E.D.N.Y. May 31, 2017).

11    After all, the court emphasized, "a reasonable consumer would not be misled

12    by a product's packaging that states the exact amount of the ingredient in

13    question." *Id.* at 4.

14        Although the district court is correct that an allegedly misleading

15    statement must be viewed "in light of its context on the product label or

16    advertisement as a whole," *id.* at 3 (quoting *Belfiore v. Proctor & Gamble Co.*,

17    311 F.R.D. 29, 53 (E.D.N.Y. 2015)), the court misapplied that principle to

18    Plaintiffs' claims in this case. Plaintiffs' core allegation is that the statements

17-2011
*Mantikas, et al. v. Kellogg Company*

1  "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" are misleading

2  because they communicate to the reasonable consumer that the grain in the

3  product is predominantly, if not entirely, *whole* grain. Contrary to the

4  reasonable expectations communicated by the large, bold-faced claims of

5  "WHOLE GRAIN," however, the grain in the product is predominantly

6  enriched white flour. While the disclosures on the front of the box relied on

7  by the district court ("MADE WITH 5G [OR 8G] OF WHOLE GRAIN PER

8  SERVING") do set forth accurately the *amount* of whole grain in the crackers

9  per serving, they are nonetheless misleading because they falsely imply that

10  the grain content is entirely or at least predominantly whole grain, whereas in

11  fact, the grain component consisting of enriched white flour substantially

12  exceeds the whole grain portion.

13       Defendant contends that a reasonable consumer still would not be

14  deceived by the "WHOLE GRAIN" claims, because the side panel of the

15  packaging discloses further detail about the product's ingredients.

16  Specifically, the Nutrition Facts panel reveals that a serving size of Cheez-Its

17  is 29 grams and the list of ingredients names "enriched white flour" as the

18  first (and thus predominant) ingredient. Neither of these disclosures cures the

17-2011
*Mantikas, et al. v. Kellogg Company*

1  deceptive quality of the "WHOLE GRAIN" claims as alleged by Plaintiffs.

2  First, the specification that 29 grams is the total weight of a serving does not

3  adequately dispel the inference communicated by the front of the package

4  that the grain in "whole grain" crackers is predominantly whole grain

5  because it does not tell what part of the 29-gram total weight is grain of any

6  kind. Such serving size information clarifies the amount of whole grain as a

7  proportion of a total serving, but it does not indicate the ratio of whole grain

8  to white flour.

9       Moreover, we cannot conclude that these disclosures on the side of the

10  box render Plaintiffs' allegations of deception implausible. "[R]easonable

11  consumers should [not] be expected to look beyond misleading

12  representations on the front of the box to discover the truth from the

13  ingredient list in small print on the side of the box." *Williams v. Gerber Prods.*

14  *Co.*, 552 F.3d 934, 939 (9th Cir. 2008). "Instead, reasonable consumers expect

15  that the ingredient list contains more detailed information about the product

16  that *confirms* other representations on the packaging." *Id.* at 939-40 (emphasis

17  added). We conclude that a reasonable consumer should not be expected to

18  consult the Nutrition Facts panel on the side of the box to correct misleading

17-2011
*Mantikas, et al. v. Kellogg Company*

1   information set forth in large bold type on the front of the box. Plaintiffs

2   plausibly allege that the Nutrition Facts panel and ingredients list on whole

3   grain Cheez-Its—which reveals that enriched white flour is the predominant

4   ingredient—contradict, rather than confirm, Defendant's "whole grain"

5   representations on the front of the box.

6         Defendant points us to several district court decisions, each dismissing

7   a case on the pleadings, in which consumers alleged that food product labels

8   asserting that the food was "made with" various ingredients misled them to

9   believe that the stated ingredient was the dominant, or at least a major,

10  ingredient. Those cases differ materially from ours because of the form of

11  deception alleged. In most of those cases, plaintiffs claimed that a product

12  label was deceptive because it led consumers to believe, incorrectly, the

13  product contained a significant quantity of a particular ingredient. *See, e.g.,*

14  *Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV 17-01875, 2017 WL 4286577, at

15  *2 (C.D. Cal. Sept. 20, 2017) (allegation that the packaging misled consumers

16  to believe that the products "contain more fruit and vegetable content than

17  they really do"); *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1034 (N.D. Cal.

18  2015) (allegation that the packaging was misleading for implying that the

12

1   pictured ingredients were the most prominent); *McKinniss v. Sunny Delight*

2   *Beverages Co.*, No. CV 07-02034, 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4,

3   2007) (allegation that a product label misleadingly communicated that a

4   beverage contained "substantial amounts of fruit"). In contrast, our Plaintiffs

5   allege that the labelling of whole grain Cheez-Its is deceptive because it

6   implies that, of the grain content in the product, most or all of it is whole

7   grain, as opposed to less nutritious white flour.

8         In addition, in most of the cases Defendant cites, plaintiffs alleged they

9   were misled about the quantity of an ingredient that obviously was not the

10  products' primary ingredient. For example, in *Red v. Kraft Foods, Inc.*, plaintiffs

11  claimed they were misled by the label "made with real vegetables" to believe

12  that the crackers contained a larger amount of vegetables than they in fact

13  did. No. CV 10-1028, 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012). The

14  court observed that a reasonable consumer would not be misled by the

15  representation, because such a consumer would "be familiar with the fact of

16  life that a cracker is not composed of primarily fresh vegetables." *Id.* at *2-3;

17  *see also Manchouck v. Mondelez Int'l Inc.*, No. CV 13-02148, 2013 WL 5400285, at

18  *2 (N.D. Cal. Sept. 26, 2013) (dealing with a similar claim involving labeling of

13

17-2011
*Mantikas, et al. v. Kellogg Company*

1    cookies asserting that they were made with "real fruit"); *Henderson v. Gruma*

2    *Corp.*, No. CV 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011)

3    (involving a packaging claim that a vegetable dip was made "With Garden

4    Vegetables").

5          In our case of Cheez-Its crackers, in contrast, reasonable consumers are

6    likely to understand that crackers are typically made predominantly of grain.

7    They look to the bold assertions on the packaging to discern what *type* of

8    grain. The representation that a cracker is "made with whole grain" would

9    thus plausibly lead a reasonable consumer to conclude that the grain

10   ingredient was entirely, or at least predominately, whole grain. That same

11   consumer, confronted with the claim that a cracker is "made with real

12   vegetables," likely would not likely conclude that the cracker was made

13   predominantly of vegetables.

14         Moreover, the rule that Defendant contends emerges from these district

15   court decisions—that, as a matter of law, it is not misleading to state that a

16   product is made with a specified ingredient if that ingredient is in fact

17   present—would validate highly deceptive advertising and labeling. Such a

18   rule would permit Defendant to lead consumers to believe its Cheez-Its were

17-2011
*Mantikas, et al. v. Kellogg Company*

1    made of whole grain so long as the crackers contained an iota of whole grain,

2    along with 99.999% white flour. Such a rule would validate highly deceptive

3    marketing.

4         We conclude that Plaintiffs, as required to survive a Rule 12(b)(6)

5    motion to dismiss, "state a claim to relief that is plausible on its face." *Iqbal*,

6    556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads

7    factual content that allows the court to draw the reasonable inference that the

8    defendant is liable for the misconduct alleged." *Id.* Plaintiffs have adequately

9    alleged such factual content. They allege that the conspicuous "WHOLE

10    GRAIN" and "MADE WITH WHOLE GRAIN" claims on the front and center of

11    the Defendant's packaging communicates to the reasonable consumer the

12    false message that the grain content of the crackers is exclusively, or at least

13    predominately whole grain; that this false message is not dispelled by the

14    information that each cracker is "MADE WITH 8G [OR 5G] G OF WHOLE GRAIN

15    PER SERVING,"  which fails to communicate that the quantity of enriched white

16    flour exceeds the quantity of whole grain; and that the misleading quality of

17    the message is not effectively cured by implicitly disclosing the predominance

18    of enriched white flour in small print on an ingredients list on the side of the

17-2011
*Mantikas, et al. v. Kellogg Company*

1   package. These are sufficient factual allegations to state a claim that

2   Defendant's conduct was, plausibly, deceptive. A reasonable consumer

3   would likely be deceived by the labeling alleged in the complaint. The district

4   court's conclusion to the contrary was error.[2]

5                                   **CONCLUSION**

6          The judgment of the district court in favor of Defendant is VACATED,

7   and the case is REMANDED for further proceedings.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[2] Because the district court's holding that Plaintiffs were not entitled to injunctive relief was premised entirely on its conclusion that Plaintiffs had failed to state a claim that the packaging was deceptive, we vacate that holding. *Mantikas*, 2017 WL 2371183, at *7 ("As Plaintiffs have failed to demonstrate that the Crackers' packaging was deceptive, they are unable to demonstrate that they have suffered an injury in fact."). The district court did not discuss Defendant's argument that Plaintiffs lacked standing to pursue injunctive relief because they failed to allege a likelihood of continuing or future harm, and we decline to address it in the first instance on appeal. For the same reason, we do not address Defendant's argument that Plaintiffs' claims are preempted by federal law.